**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
John J. Nelson (SBN 317598)
280 S. Beverly Drive, Penthouse
Beverly Hills, CA 90212
Tel: (858) 209-6941
jnelson@milberg.com

**FREED KANNER LONDON AND MILLEN LLC**
Jonathan M. Jagher (pro hac vice)
923 Fayette Street
Conshohocken, PA 19428
(610) 234-6486
Jjagher@fklmlaw.com

*Counsel for Plaintiff and the Putative Class*

*[Additional counsel listed on signature page]*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JUSTIN BREWER, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CVS HEALTH CORPORATION, CVS PHARMACY, INC., CRITEO CORP., and MEDALLIA, INC.<br><br>Defendants. | Case No. 2:25-cv-04689-MWC-E<br>Hon. Michelle Williams Court<br><br>**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS, OR, IN THE ALTERNATIVE, TO STRIKE CLASS ALLEGATIONS**<br><br>Date: September 26, 2025<br>Time: 1:30 p.m.<br>Courtroom: 6A, 6th Floor |

## TABLE OF CONTENTS

I. INTRODUCTION .......... 1
II. FACTUAL BACKGROUND .......... 3
III. MOTION TO DISMISS .......... 4
A. Legal Standard .......... 4
B. Plaintiff Adequately Alleges His Claims Based on CVS' Disclosure of Personal or Sensitive Information .......... 5
C. Plaintiff Adequately Alleges Each of his Claims .......... 7
1. CIPA Section 631 .......... 7
a. CVS Disclosed the Contents of Plaintiff's Communications. .......... 8
b. Plaintiff's Communications Were Intercepted in Transit. .......... 10
c. Plaintiff Was Injured. .......... 12
2. CIPA Section 632 .......... 13
3. Invasion of Privacy Under California's Constitution and Common Law Intrusion of Seclusion .......... 14
4. Breach of Confidence .......... 15
5. Negligence and Negligence *Per Se* .......... 16
6. California UCL .......... 17
IV. MOTION TO STRIKE CLASS ALLEGATIONS .......... 19
V. CONCLUSION .......... 21

# TABLE OF AUTHORITIES


**CASE(S)** **PAGE(S)**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................ 4, 14

*Bates v. Bankers Life & Cas. Co.*,
848 F.3d 1236 (9th Cir. 2017) ........................................ 19

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)........................................ 4

*Berryman v. Merit Prop. Mgmt., Inc.*,
152 Cal. App. 4th 1544 (2007) ........................................ 17

*Branca v. Ocwen Loan Servicing, LLC*,
No. CV 13-7502 BRO (Ex), 2013 U.S. Dist. LEXIS 201815 (C.D. Cal. Dec. 27, 2013) ........................................ 17

*Brown v. Google LLC*,
2021 U.S. Dist. LEXIS 244695 (N.D. Cal. Dec. 22, 2021)........................................ 12

*Byars v. Goodyear Tire & Rubber Co.*,
654 F. Supp. 3d 1020 (C.D. Cal. 2023) ........................................ 6, 9

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021)........................................ 18

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014)........................................ 11

*Cholakyan v. Mercedes-Benz USA, LLC*,
796 F. Supp. 2d 1220 (C.D. Cal. 2011) ........................................ 19

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023)........................................ 6, 7

*Cousin v. Sharp Healthcare*,
No. 22-cv-2040-MMA-DDL, 2023 WL 8007350 (S.D. Cal. Nov. 17, 2023) ............. 2

*D'Angelo v. Penny OpCo, LLC*,
No. 23-cv-0981-BAS-DDL, 2023 WL 7006793 (S.D. Cal. Oct. 24, 2023).............. 11

*Doe v. Call-On Doc Inc.*,
No. 24cv2095-GPC(KSC), 2025 WL 1677632 (S.D. Cal. Jun. 13, 2025)............ 9, 10

*Doe v. GoodRx Holdings, Inc.*,
2025 U.S. Dist. LEXIS 140287 (N.D. Cal. July 22, 2025) ....................................... 13

*Doe v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024)............................................................... 14

*Doe v. Meta Platforms, Inc.*,
No. 22-CV-03580-WHO, 2023 WL 5837443 (N.D. Cal. Sept. 7, 2023)................ 2, 6

*Doe v. Microsoft Corp.*,
No. C23-0718-JCC, 2023 WL 8780879 (W.D. Wash. Dec. 19, 2023)..................... 19

*Doe v. Regents of Univ. of Cal.*,
No. 23-CV-00598-WHO, 2023 WL 3316766 (N.D. Cal. May 8, 2023)..................... 2

*Doe v. Tenet Healthcare Corp.*,
No. 1:23-cv-01106-DC-CKD, 2025 U.S. Dist. LEXIS 109134 (E.D. Cal. June 9, 2025) ....................................................................................................... 12

*Harrill v. Emanuel Med. Center*,
No. 2:24-cv-01672-DC-CKD, 2025 WL 1635428 (E.D. Cal. Jun. 9, 2025).. 10, 14, 16

*Howard v. Lab. Corp. of Am.*,
No. 1:23-cv-00758, 2024 WL 4250677 (M.D.N.C. Aug. 8, 2024)............................ 6

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........................................................................ 8, 14

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015)................................................................................. 8

*In re Google Inc. Gmail Litig.*,
No. 13-MD-02430-LHK, 2013 U.S. Dist. LEXIS 172784 (N.D. Cal. Sept. 26, 2013) ....................................................................................................... 12

*In re Google RTB Consumer Privacy Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022) ........ 15

*In re Grp. Health Plan Litig.*,
No. 23-CV-267 (JWB/DJF), 2023 WL 8850243 (D. Minn. Dec. 21, 2023) ........ 2

*In Re Meta Healthcare Pixel Litig.*,
No. 22-CV-03580-WHO, 2024 WL 333883 (N.D. Cal. Jan. 29, 2024) ........ 1, 2

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ........ 11, 15, 16

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*,
613 F. Supp. 3d 1284 (S.D. Cal. 2020) ........ 18

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ........ 15

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ........ 8, 9

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 20203) ........ 6, 9

*Ji v. Naver Corp.*,
2023 WL 6466211 (N.D. Cal. Oct. 3, 2023) ........ 18

*Kamar v. RadioShack Corp.*,
375 F. App'x 734 (9th Cir. 2010) ........ 20

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ........ 14

*King v. Hard Rock Café Int'l (USA), Inc.*,
No. 2:24-cv-01119-DC-CKD, 2025 WL 1635419 (E.D. Cal. Jun. 9, 2025) ........ 10

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2022) ........ 11

*Kwikset Corp. v. Sup. Ct.*,
51 Cal.4th. 310 (2011) ........ 18

*Lyons v. Coxcom, Inc.*,
718 F. Supp. 2d 1232 (S.D. Cal. 2009) ..... 20

*Mason v. Spring EQ LLC*,
No. 5:24-cv-01833 MWC (AGRx), 2025 U.S. Dist. LEXIS 31895 (C.D. Cal. Jan. 22, 2025) ..... 19

*Matera v. Google Inc.*,
No. 15-cv-04062, 2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) ..... 16

*McDonald v. Kiloo ApS*,
385 F. Supp. 3d 1022 (N.D. Cal. 2019) ..... 15

*Mehta v. Robinhood Fin. LLC*,
No. 21-cv-01013-SVK, 2021 WL 6882392 (N.D. Cal. Sept. 8, 2021) ..... 17

*Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d (N.D. Cal. 2024) ..... 18, 19

*Meyer v. Nat'l Tenant Network, Inc.*,
10 F. Supp. 3d 1096 (N.D. Cal. 2014) ..... 19

*Moghadam v. Alleviate Tax, LLC*,
No. 8:24-1810-MWC (DFMx), 2025 U.S. Dist. LEXIS 33878 (C.D. Cal. Feb. 24, 2025) ..... 20

*NovelPoster v. Javitch Canfield Grp.*,
140 F. Supp. 3d 938 (N.D. Cal. 2014) ..... 11

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) ..... 20

*Pioneer Elecs., Inc. v. Sup. Ct. of L.A.*,
40 Cal. 4th 360 (2007) ..... 15

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ..... 9

*Revitch v. New Moosejaw, LLC*,
No. 18-cv-06827-VC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ..... 8, 9

*Rodgriguez v. Autotrader.com, Inc.*,
No. 2:24-cv-08735, 2025 WL 65409 (C.D. Cal. Jan. 8, 2025) .................................. 12

*Rubio v. Cap. One Bank*,
613 F.3d 1195 (9th Cir. 2010) ........................................................................... 17

*Schreiber Distrib. Co. v. Serv-Well Furniture Co*.,
806 F.2d 1393 (9th Cir. 1986) ........................................................................... 21

*Shah v. Cap. One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025)............................................................... 6

*Sonneveldt v. Mazda Motor of Am., Inc*.,
No. 8:19-cv-01298-JLS-KES, 2022 U.S. Dist. LEXIS 219297 (C.D. Cal. Oct. 21, 2022) ........................................................................................................ 20

*St. Aubin v. Carbon Health Tech., Inc*.,
No. 24-cv-00667-JST, 2024 WL 4369675, n.4 (N.D. Cal. Oct. 1, 2024) .................. 10

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) ............................................................................ 4

*Tietsworth v. Sears*,
720 F. Supp. 2d 1123 (N.D. Cal. 2010)............................................................... 19

*Torres v. Prudential Fin., Inc.*,
No. 22-cv-07465 (CRB), 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025).................. 11

*Toy v. Life Line Screening of Am. Ltd.,*
No. 23-cv-04651-RFL, 2024 U.S. Dist. LEXIS 88872 (N.D. Cal. Mar. 19, 2024) ... 17

*Turner v. Google LLC*,
2024 WL 3052969 (N.D. Cal. June 18, 2024)........................................................ 18

*Turner v. Google LLC,*
2024 WL 4933345 (N.D. Cal. Dec. 2, 2024)......................................................... 18

*Valenzuela v. Nationwide Mut. Ins. Co.*,
686 F. Supp. 3d 969 (C.D. Cal. 2023) ................................................................ 11

*Yastrab v. Apple Inc.*,
No. 5:14-cv-01974-EJD, 2015 WL 1307163 (N.D. Cal. Mar. 23, 2015) .................. 19

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. Aug. 25, 2023) .................. 2

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .................. 8

**STATUTES**

Cal. Bus. & Prof. Code § 17200 .................. 17

Cal. Penal Code 631 .................. 7, 12, 14

Cal. Penal Code 631(a) .................. 7

Cal. Penal Code 632 .................. 13, 14

Cal. Penal Code 632(a) .................. 13

Cal. Penal Code 632(c) .................. 13, 14

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Using hidden tracking tools embedded on its website, www.cvs.com (the "Website"), Defendants CVS Health Corporation and CVS Pharmacy, Inc. (collectively "CVS") intercepted Plaintiff Brewer's ("Plaintiff")[1] and Class Members' communications and forced their web browsers to send confidential and highly sensitive personally identifiable information ("PII") and personal health information ("PHI") (collectively, "Private Information") to undisclosed third parties such as Adobe, Inc. ("Adobe"), Defendant Criteo Corp. ("Criteo"), and Defendant Medallia, Inc. ("Medallia," collectively with Adobe and Criteo, "Third-Party Trackers") without Plaintiff's or Class Members' knowledge or consent. The information CVS intercepted and impermissibly disclosed to those third parties included medical conditions, immunization and vaccine appointments, prescriptions, and other Private Information, including their activity searching for and purchasing sensitive healthcare products. CVS used the tracking technologies in question, such as Adobe's software development kit ("Adobe Trackers"), Criteo's embedded code ("Criteo Trackers"), and Medallia's embedded code ("Medallia Trackers," collectively with Adobe Trackers and Criteo Trackers, "Tracking Technologies"), to boost its marketing efforts and resulting profits by sharing Private Information despite protections offered to its patients by state law, federal law, and industry standards.

CVS' motion to dismiss or strike class allegations (ECF No. 45-1, the "Motion" or "Mot.") ignores the actual allegations in the First Amended Class Action Complaint (ECF No. 33, the "FAC") and the recent decisions of numerous courts in California and throughout the country that have sustained similar complaints at the motion to dismiss stage. *See, e.g.*, *In Re Meta Healthcare Pixel Litig.*, No. 22-CV-03580-WHO, 2024 WL

---

[1] Plaintiff Getz voluntarily dismissed his claims. ECF No. 51. CVS' motion to dismiss is directed solely to Plaintiff Brewer. *See* ECF No. 45-1.

333883, at *3 (N.D. Cal. Jan. 29, 2024) ("*Meta Pixel III*"); *In re Grp. Health Plan Litig.*, No. 23-CV-267 (JWB/DJF), 2023 WL 8850243, at *2 (D. Minn. Dec. 21, 2023); *Cousin v. Sharp Healthcare*, No. 22-cv-2040-MMA-DDL, 2023 WL 8007350 (S.D. Cal. Nov. 17, 2023) ("*Cousin II*"); *Doe v. Meta Platforms, Inc.*, No. 22-CV-03580-WHO, 2023 WL 5837443 (N.D. Cal. Sept. 7, 2023) ("*Meta Pixel II*"); *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 975, 977 (N.D. Cal. Aug. 25, 2023); *Doe v. Regents of Univ. of Cal.*, No. 23-CV-00598-WHO, 2023 WL 3316766 (N.D. Cal. May 8, 2023). In addition, the U.S. Department of Health and Human Services ("HHS") and the Federal Trade Commission ("FTC") have independently concluded that tracking technologies on healthcare websites share PHI, and therefore entities like CVS may not disclose or share that information with third parties.[2]

The FAC clearly and sufficiently alleges that: (1) the Tracking Technologies are embedded on CVS' Website; (2) the Tracking Technologies intercept patients' communications with CVS and force patients' web browsers to duplicate those communications and disclose them to third parties like Adobe, Criteo, and Medallia; (3) Plaintiff used CVS' Website to communicate Private Information, including searching for specific products relevant to his specific medical conditions; and (4) CVS intercepted,

---

[2] *See Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates*, U.S. Health & Hum. Servs. https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html (last visited Aug. 27, 2025) ("Tracking technologies on a regulated entity's unauthenticated webpage that addresses specific symptoms or health conditions, such as pregnancy or miscarriage, or that permits individuals to search for doctors or schedule appointments without entering credentials may have access to PHI in certain circumstances."); *FTC-HHS Joint Letter re: Use of Online Tracking Technologies*, https://www.ftc.gov/system/files/ftc_gov/pdf/FTC-OCR-Letter-Third-Party-Trackers-07-20-2023.pdf (last visited August 27, 2025). ("Impermissible disclosures of an individual's personal health information" include "where an individual seeks medical treatment"; disclosure of such information without a consumer's authorization violates FTC Act and FTC's Health Breach Notification Rule). FAC ¶¶ 81-82.

recorded, and disclosed Plaintiff's confidential Private information to third parties. CVS' Motion should be denied.

## II. FACTUAL BACKGROUND

CVS, a retail giant with over 36 million customers, maintains an online (i) pharmacy, (ii) retail store for over-the-counter medical products, (iii) vaccination center, and (iv) health clinic. ¶¶ 1, 23.[3] Through the Website, users can search for and purchase over-the-counter medicine and merchandise that treat medical conditions, ¶¶ 41-52; schedule vaccine and "MinuteClinic" appointments, ¶¶ 53-59; and manage and refill prescriptions, ¶¶ 60-62. Unbeknownst to Plaintiff and others who used CVS' website to manage their health care, CVS embedded Tracking Technologies into the pages of its Website. ¶¶ 23-76. The Tracking Technologies are invisible pieces of code embedded in a web page that track how a visitor moves through and interacts with a website. ¶¶ 7, 23-25, 40. The Third-Party Trackers CVS sends Personal Information to are in the business of monetizing personal information for marketing and advertising purposes. ¶¶ 5-6, 37. With CVS' help, the Third-Party Trackers collect information from Website users to assimilate into datasets and build user profiles that allow advertisers to target them based on certain desired characteristics. ¶¶ 37, 63-69, 70-76.

To visit CVS' website, a patient must first enter the web address, www.cvs.com, into their computer's browser, which then sends a request to CVS' server for the contents of the webpage. ¶ 36. Upon receiving that request, CVS' server returns to the browser the webpage and any code that is embedded in the webpage, in this case the Tracking Technologies. ¶¶ 36, 40, 63-69, 70-76. From that point on, the Tracking Technologies instruct the browser to track users as they navigate through the website and send each communication the user makes both to the user's intended recipient, CVS, and also to the Third-Party Trackers. *Id*. The Tracking Technologies embedded by CVS also send Third-

[3] References to "¶ __" or "¶¶ __" are references to the FAC unless otherwise noted.

Party Trackers identifying information (*e.g.*, Adobe Identifiers) that uniquely identify users across devices and touchpoints. ¶¶ 29-35, 43, 47-50, 55, 59, 61-63, 67-69, 70, 73, 75-76. This is true even if the user proceeds as a "guest" on the Website. *E.g.*, ¶¶ 43, 50.

The contents of the communications thereby disclosed to the Third-Party Trackers include (i) which buttons a patient clicks, including to purchase medical products; (ii) the exact text of their search queries; (iii) the titles of webpages they visit and medical products they view; (iv) vaccine and "MinuteClinic" appointment scheduling information, including the name of the vaccine and the symptoms for which treatment is sought or the medical procedure requested; and (v) and information about prescriptions managed including the name of the drug involved. ¶¶ 40-62. As a result, each time a user visits CVS' website to manage their health, CVS uniquely identifies that person, catalogs the details of sensitive health information about the user obtained from the user's Website activities, and sends that data to third parties to help them advertise and market products.

## III. MOTION TO DISMISS

### A. Legal Standard

To survive a motion to dismiss, a complaint must contain sufficient factual matter, "accepted as true," to "state a claim of relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility, however, is not certainty or probability. It "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *BellAtl. Corp. v. Twombly,* 550 U.S. 544, 555-56 (2007).

In other words, a complaint may advance even if it appears that "actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* Thus, plaintiffs do not need to substantiate their claims at the pleadings stage, and the complaint "may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *implausible*." *Starr v. Baca*, 652 F.3d 1202,

1216-1217 (9th Cir. 2011) (emphasis in original).

### B. Plaintiff Adequately Alleges His Claims Based on CVS' Disclosure of Personal or Sensitive Information

The FAC meticulously details CVS' implementation of the Tracking Technologies on the Website and their operation, including which personal information they systematically disclose to Third-Party Trackers, ¶¶ 23-76, and Plaintiff's use of the Website, including information he submitted, ¶¶ 102-10. Specifically, on multiple occasions from his home in San Jacinto, California, Plaintiff used the Website to search for and review sensitive health-related products on the Website, including using the Website to run product searches for over-the-counter medical products relating to his serious medical condition and relating to his private sexual health. ¶¶ 102-03. Plaintiff also clicked on and viewed the corresponding product search results after searching for these medications. ¶ 103. Plaintiff details exactly how CVS uses those Tracking Technologies to disclose *all* keyword searches, including those he ran when searching for products related to his serious medical condition and private sexual health. ¶¶ 41-44. Likewise, the FAC explains that CVS disclosed *all* product clicks, views, and purchases, including the products Plaintiff clicked on and viewed for his serious medical condition and sexual health, and the products he purchased for his sexual health. ¶¶ 45-52. Consistent with CVS' surreptitious disclosures, after searching for products related to his medical condition, Plaintiff received targeted advertising on other webpages relating to his medical condition and symptoms. ¶ 104. After purchasing health products related to his private sexual health, Plaintiff was also targeted with advertisements for similar sexual health products. *Id*.

CVS improperly urges dismissal of Counts IV-VI because Plaintiff did not allege the name of his serious medical condition or the name of products he browsed and purchased relating to his sexual health. Mot at 6. Plaintiff is not required to divulge the particular "name" of his serious medical condition or the "title" of the specific sexual health products he purchased because such details are irrelevant to the sufficiency of his

complaint. Either the law recognizes the sensitivity of disclosure of medical conditions and sexual health purchases or it does not; the "names" of the particular medical condition and medicine are irrelevant to the sufficiency of Plaintiff's claims. *See James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 956 (N.D. Cal. 20203) (citing *Byars v. Goodyear Tire & Rubber Co.*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023) ("There is no requirement that [plaintiff] specifically allege the exact contents of her communications with Goodyear": "Plaintiff merely needs to show that the contents were not record information such as her name and address.")); *Howard v. Lab. Corp. of Am.*, No. 1:23-cv-00758, 2024 WL 4250677, at *9 (M.D.N.C. Aug. 8, 2024) (rejecting CVS' argument under *Cousin I* where the plaintiffs merely alleged that they used the website to "to conduct searches on the website regarding a variety of sensitive medical issues"); *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1044-45 (N.D. Cal. 2025) (finding *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117 (S.D. Cal. 2023) ("*Cousin I*") inapplicable where plaintiffs alleged "they put their personal and financial information, including employment information, bank account information, citizenship status, and credit card preapproval or eligibility" into the defendant's website).

Tellingly, CVS has articulated no need for the specific name of the sensitive medical condition Plaintiff searched for or the private sexual health product Plaintiff searched for and purchased. It cannot articulate such a need, as Plaintiff alleges an appropriate category of sensitive health information (*i.e.*, sexual health products). *Cf. Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1081 (N.D. Cal. 2023) (where plaintiffs generally alleged that they used a patient portal, "plaintiffs are required to amend to *describe the types or categories* of sensitive health information […]. That basic amendment (*which can be general enough to protect plaintiffs' specific privacy interests*) will allow these privacy claims to go forward") (emphases added).

CVS' reliance on *Cousin I* and its progeny is off the mark. In *Cousin I*, the court held that the plaintiffs did not explain their "personal participation" in the conduct at issue and dismissed all claims with leave to amend. 681 F. Supp. 3d sat 1123-24. Unlike in

*Cousin I* and CVS' related authority, Plaintiff here alleged that he visited the Website between July 2024 and July 2025 to research and search for, click on, and view products related to his own sensitive medication condition, as well as to search for and purchase products related to his private sexual health. ¶¶ 102-04. Moreover, there is nothing "hypothetical" about Plaintiff's allegations, which include detailed forensics showing the exact portions of the Website where Plaintiff conducted his searches and viewed and purchased his products, and which specify that CVS' conduct directly resulted in impermissible interceptions of *all* such activity. ¶¶ 41-52, 67-69, 73-75. The FAC likewise details the Tracking Technologies' use of unique identifiers to compile Plaintiff's browsing history across different devices and webpages, including the Website, into an identity graph unique to Plaintiff, which is then used by CVS and other third parties to specifically target Plaintiff with real time advertisements based on his browsing history, including his private medical information, even if Plaintiff uses the Website as a guest. ¶¶ 24-40, 41-76.[4]

As such, Plaintiff has sufficiently alleged both the personal information he communicated to CVS and the disclosure of that information to the Third-Party Trackers.

**C. <u>Plaintiff Adequately Alleges Each of his Claims</u>**

**1. CIPA Section 631**

As set forth above, the FAC details CVS' liability under Section 631(a) of CIPA for aiding and conspiring with the Third-Party Trackers to track and intercept Plaintiff's and Class Members' private communications while accessing the Website. Courts

---

[4] Nor is the FAC "redacted." Plaintiff withheld the value of several unique identifiers or other fields appearing in the web traffic that may be used to identify Plaintiff's consulting expert—the identity of whom is privileged. Plaintiff's withholdings of the substantive values of these fields do not impact the substance of any of the FAC's allegations. For example, the value of the kndct_<Org_Id>_AdobeOrg_identity & Id Value and other unique identifiers assigned to Plaintiff's consulting expert is of no consequence to the adequacy of Plaintiff's allegations.

routinely sustain allegations under such circumstances. *See Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1083 (C.D. Cal. 2021) (finding a violation of 631(a) because "a conversationalist is betrayed equally by a wiretapper and by the willing conversation participant who surreptitiously allows that third party to wiretap"); *Revitch v. New Moosejaw, LLC*, No. 18-cv-06827-VC, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) ("Although Moosejaw cannot be liable for eavesdropping on its own communications with Revitch, the complaint adequately alleges that Moosejaw violated section 631 by enabling NaviStone's wrongdoing."); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 608 (9th Cir. 2020) ("[S]imultaneous, unknown duplication and communication of GET requests do not exempt a defendant from liability under the party exception.").

**a. CVS Disclosed the Contents of Plaintiff's Communications.**

As CVS concedes, search terms and descriptive URLs are contents of a communication under Section 631(a). *See* Mot. at 10. *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108-09 (9th Cir. 2014) ("[A] user's request to a search engine for specific information could constitute a communication such that divulging a URL containing that search term to a third party could amount to disclosure of the contents of a communication."); *see also In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 137 (3d Cir. 2015) ("If an address, phone number, or URL is . . . part of the substantive information conveyed to the recipient, then by definition it is 'content.'").

As set forth above, the FAC alleges that Plaintiff used the Website to search for over-the-counter medications relating to his medical condition and sexual health, click on and view the corresponding product pages after performing his searches, and to ultimately purchase sexual health products after viewing them on the Website. ¶ 103. The FAC also details—with both screenshots of the Website and corresponding web traffic, how the Tracking Technologies intercept *any* search term Plaintiff ran, including by transmitting to the Third-Party Trackers the exact URL of the search results that

expressly include the search terms (*e.g.*, "www.cvs.com/search?searchTerm=aspirin."). ¶¶ 41-44, 67, 73.

Likewise, when clicking on or purchasing over-the-counter products, the Tracking Technologies intercept the URL of the page, disclosing that Plaintiff has clicked on or is purchasing the product, and the URL of the product and Product ID, disclosing the exact identity of the product clicked-on or purchased, and the fact of purchase. ¶¶ 45-52, 68, 74. For example, for all the products that Plaintiff clicked, the descriptive URL and product ID were intercepted: "www.cvs.com/shop/aspirin-regimen-bayer-81mg-enteric-coated-tablets-pain-reliever-fever-reducer-300-ct-prodid-1012066." ¶ 51. Importantly, the Tracking Technologies intercept this information for *all* products Plaintiff clicked on or purchased. ¶¶ 49, 51. Each of these acts are substantive communications under § 631 as they reflect "a person's intended message to another (*i.e.*, the 'essential part' of the communication, the 'meaning conveyed,' and the 'thing one intends to convey')." *In re Zynga*, 750 F.3d at 1106; *see also Revitch*, 2019 WL 5485330, at *1 ("Revitch requested information from Moosejaw by clicking on items of interest; Moosejaw responded by supplying that information. This series of requests and responses—whether online or over the phone—is communication."); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024).

CVS regurgitates its same argument that, because Plaintiff did not allege the specific name of his serious medical condition or the specific name of the sexual health product he purchased, the Court is somehow unable to determine whether the Tracking Technologies intercepted the "contents" of users' communications versus mere record information. CVS' argument ignores the details of Plaintiff's use of the Website and of the Website's systemic and uniform interceptions of the contents of those communications. *See James*, 701 F. Supp. 3d at 956; *Byars*, 654 F. Supp. 3d at 1027; *See also Doe v. Call-On Doc Inc.*, No. 24cv2095-GPC(KSC), 2025 WL 1677632, at *11 (S.D. Cal. Jun. 13, 2025) (accepting allegations of general "types" of information sought when seeking treatment on website and finding "contents" intercepted, without requiring

disclosure of the specific symptoms, medications, or surgical history plaintiff conveyed).

CVS' authority is inapposite. In *Harrill v. Emanuel Med. Center*, No. 2:24-cv-01672-DC-CKD, 2025 WL 1635428, at *4, 9-10 (E.D. Cal. Jun. 9, 2025), the plaintiff alleged that she used the website to search for information related to "actual or potential" health conditions (whereas Plaintiff's searches related to his actual health conditions), did not describe the types of searches she performed (Plaintiff viewed and purchased, for example, sexual health products), and she did not even allege she visited the "Find a Doctor" page. Likewise, the plaintiff in *King v. Hard Rock Café Int'l (USA), Inc.*, No. 2:24-cv-01119-DC-CKD, 2025 WL 1635419, at *4 (E.D. Cal. Jun. 9, 2025) "vaguely allege[d] that her communications with [d]efendant's [w]ebsite included 'guest records' that were intercepted", whereas Plaintiff specifically alleged his use of the Website to search for, view, and purchase sexual healthcare products, and that the Website uniformly intercepts every such search, view, and purchase, including his search for private sexual healthcare products. Nor can CVS discredit the FAC's searches or web traffic as "hypothetical" because it "contains examples of actual searches, including screenshots." *St. Aubin v. Carbon Health Tech., Inc.*, No. 24-cv-00667-JST, 2024 WL 4369675, at *4, n.4 (N.D. Cal. Oct. 1, 2024).

**b. Plaintiff's Communications Were Intercepted in Transit.**

Contrary to CVS' contentions, Plaintiff repeatedly alleges that the Tracking Technologies *do* intercept communications with the Website contemporaneously while they are in transit. ¶ 138 ("The Tracking Technologies are designed so that they transmit each of the user's actions taken on the webpage to the Third-Party Trackers contemporaneously with the user making the communications. Thus, the communications were intercepted *while they were in transit* to the intended recipient, CVS, and before they reached CVS' server, or *while they were being sent* from any place within California.") (emphasis added); ¶¶ 136, 155. Courts routinely find that online trackers like those at issue here intercept communications in transit. *See, e.g.*, *Call-On DOC Inc.*, 2025 WL 1677632, at *12 (finding interceptions occurred in transit where plaintiff

alleged that Google Analytics' tracking code and TikTok Pixel sent simultaneous transmissions of her information and intercepted plaintiff's information in real time); *Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 978 (C.D. Cal. 2023) (similar); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022) (in which Meta does not dispute that its pixel tracker intercepts communications contemporaneously).

Regardless, at the motion to dismiss stage, a plaintiff is not required to allege how and when their communications are captured, and "a pleading standard to the contrary would require the CIPA plaintiff to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant and its third-party recorded." *D'Angelo v. Penny OpCo, LLC*, No. 23-cv-0981-BAS-DDL, 2023 WL 7006793, at *8 (S.D. Cal. Oct. 24, 2023).

CVS argues that "given the high speed of the internet," online trackers cannot possibly intercept communications in transit. This is plainly inaccurate, and courts routinely find that online trackers similar to the Tracking Technologies here intercept communications while in transit. *See supra*.

The authority CVS cites does not say otherwise and does not otherwise weigh against finding contemporaneous interception adequately pled here. Plaintiff's allegations do not concern emails, as in *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938 (N.D. Cal. 2014); the burdens of summary judgment at issue in *Torres v. Prudential Fin., Inc.*, No. 22-cv-07465 (CRB), 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) are irrelevant here; and *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 872-83 (9th Cir. 2022) involved an authorized party giving his login credentials to an unauthorized person for use in manually reviewing a website, which is not factually analogous at all to the Tracking Technologies' operations here. In any event, any of CVS' disputes regarding the Tracking Technologies' functionality are properly resolved after discovery. *See, e.g.*, *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 841 (N.D. Cal. 2014) ("While Facebook may ultimately produce evidence showing that the messages

were actually accessed while in storage, not during transmission, that issue [] would be better addressed as part of a motion for summary judgment with a more developed factual record.").

**c. Plaintiff Was Injured.**

Plaintiff and Class Members allege they were injured by CVS' disclosure of their confidential PHI to third parties. No independent injury beyond that is required under CIPA, Section 637.2. *See In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2013 U.S. Dist. LEXIS 172784, at *65-66 (N.D. Cal. Sept. 26, 2013).

CVS cites *Rodgriguez v. Autotrader.com, Inc.*, No. 2:24-cv-08735, 2025 WL 65409, at *3 (C.D. Cal. Jan. 8, 2025) for the proposition that whether the right to privacy is implicated for a CIPA claim depends on the "sort of information revealed." Mot. at 13. However, disclosure of health and medication-related communications has consistently been held to implicate the right to privacy under CIPA, Section 631. *See, e.g.*, *Doe v. Tenet Healthcare Corp.*, No. 1:23-cv-01106-DC-CKD, 2025 U.S. Dist. LEXIS 109134, at *32 (E.D. Cal. June 9, 2025) (Plaintiffs "each allege facts showing they used Defendants' Web Properties, submitted personal information, and Defendants invaded their privacy rights by disclosing their information to third parties without consent."). Here, Plaintiff plausibly alleges facts to support he revealed to CVS sensitive PHI in confidence but CVS surreptitiously disclosed it to third parties. He alleges he used the Website to "research over-the-counter medical products relating to a serious medical condition affecting [him]," and "received targeted advertisements as he browsed online webpages, both on the Website and on other websites . . . for medications relating to that medical condition and related symptoms." ¶¶ 103-04. CVS' argument this is not injury under CIPA, Section 631, is without support.[5]

---

[5] In addition, Plaintiff plausibly alleges injury to the value of his PHI, where it had economic value to CVS and the third parties to which CVS disclosed it. *Brown v. Google*

### 2. CIPA Section 632

CVS argues Plaintiff fails to allege he engaged in any confidential communications as defined by Section 632(a). Mot. at 14. CVS mischaracterizes Plaintiff's allegations as merely "cursorily alleg[ing] that he 'reasonably expected his communications with CVS via the Website to be confidential.'" *Id.* at 15 (quoting ¶ 107); *see* Cal. Penal Code 632(c) (A "confidential communication" is "any communication carried on in circumstances as may reasonably indicate that any party to the communication desired it to be confined to the parties thereto[.]"). To the contrary, Plaintiff does not rely on a subjective expectation of privacy as to his Website communications, but supports his allegations with objective facts that he used the Website to "research over-the-counter medical products relating to a serious medical condition affecting [him]," "searched for these over-the-counter products on the Website and viewed the corresponding product pages after performing his searches," and later "saw advertisements for medications relating to that medical condition and related symptoms." ¶¶ 104-05. In addition, he used the Website to search for and purchase sexual health products and later saw advertisements for similar products. *Id.*

These allegations more than meet Plaintiff's pleading burden to show his communications were reasonably confidential. *See Doe v. GoodRx Holdings, Inc.*, 2025 U.S. Dist. LEXIS 140287, at * (N.D. Cal. July 22, 2025) ("Plaintiffs' interactions with the GoodRx platform—by seeking discounts on specific prescriptions, seeking treatment for specific conditions, and disclosing symptoms—constitute confidential communications."). Plaintiff need not name at the pleading stage the "specific health-related condition" or "specific products he allegedly browsed or purchased on the Website," as CVS argues, Mot. at 15, to meet his pleading burden of "more than a sheer

---

*LLC*, 2021 U.S. Dist. LEXIS 244695, at *17 (N.D. Cal. Dec. 22, 2021). ¶ 104 (PHI used by CVS for commercial purpose in re-targeting ads to Plaintiff of health-related products he searched for and purchased); ¶¶ 86-92 (outlining commercial value of PHI).

possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

Moreover, CVS' argument that its conduct does not sufficiently implicate Plaintiff's right to privacy to trigger an injury under CIPA, Section 631, is wrong for the same reasons discussed *supra* in Section III.C.1.c. with respect to CIPA, section 632.

**3. Invasion of Privacy Under California's Constitution and Common Law Intrusion of Seclusion**

Given the overlap in the constitutional and common law privacy claims, courts consider them together and ask whether (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive. *Doe v. Google LLC*, 741 F. Supp. 3d 828, 844 (N.D. Cal. 2024). Plaintiff has met his pleading burden as to each.

First, as already discussed in the context of the CIPA claim, Plaintiff Brewer had a reasonable expectation of privacy when researching and purchasing medical products on the Website. CVS cites *Harrill*, 2025 WL 1635428, but that case is wholly distinguishable because the plaintiff there did "not specifically allege that her searches related to the provision of healthcare, patient status, or otherwise included PHI." *Id.* at *18. In contrast, Plaintiff Brewer's allegations of viewing "over-the-counter medical products relating to a serious medical condition affecting [him]" and of purchasing "private sexual health products," ¶¶ 102-03, relate to the provision of healthcare and are PHI under the HIPAA definition ("relates to the past, present or future physical or mental health or condition of an individual" and "can be used to identify the individual"). ¶ 78.

Second, Plaintiff sufficiently pleads the conduct was highly offensive and should be permitted to bring his claim to a jury. "[T]he highly offensive analysis focuses on the degree to which the intrusion is unacceptable as a matter of public policy." *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 606 (9th Cir. 2020). California courts recognize that health-related information and information about the purchase of medical products is particularly sensitive. *See, e.g.*, *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 942 (N.D. Cal. 2023) (denying motion to dismiss because allegations of disclosure of "health-related" information went beyond "'routine commercial behavior'

of collecting contact information for sending advertisements."). Moreover, even without PHI, the tracking and sharing of the minutiae of Plaintiff's browsing activities still rises to the level of highly offensive where consumers do not anticipate that degree of sharing. *McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1035 (N.D. Cal. 2019) (finding that surreptitiously tracking users and gathering data to be used in targeted advertising violated social norms and privacy interests); *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1214 (C.D. Cal. 2017) (finding that plaintiffs plausibly alleged that defendant's collection of plaintiffs' video viewing history "amount[ed] to a highly offensive intrusion").

Regardless, "[c]ourts are generally hesitant to decide claims of this nature at the pleading stage." *In re Meta Pixel Healthcare Litig.* 647 F. Supp. 3d at 799; *In re Google RTB Consumer Privacy Litig.,* 606 F. Supp. 3d 935, 946 (N.D. Cal. 2022) ("Whether the conduct was highly offensive can rarely be resolved at the pleading stage."); *Pioneer Elecs., Inc. v. Sup. Ct. of L.A.,* 40 Cal. 4th 360, 370 (2007) (holding a party's allegations must "show *no* reasonable expectation of privacy or an *insubstantial impact* on privacy interests" to be dismissed as a matter of law (emphases added)).

**4. Breach of Confidence**

To state a claim for breach of confidence under California law, a plaintiff must demonstrate that "(1) [he or she] conveyed 'confidential and novel information' to the defendant; (2) the defendant had knowledge that the information was being disclosed in confidence; (3) there was an understanding between the defendant and the plaintiff that the confidence be maintained; and (4) there was a disclosure or use in violation of the understanding." *B.K. v. Desert Care Network*, No. 2:23-cv-05021 SPG (PDx), ECF No. 49, at *19-20 (C.D. Cal. Feb. 1, 2024). Recent case law has upheld these claims as plausibly pled in the context of disclosure of PHI through website tracking software. For example, in *Desert Care Network*, website tracking technology disclosed PHI to third parties, and the court found that "[p]laintiffs have adequately alleged a violation in

information disclosed in confidence to [d]efendants." *Id.* at *19-20.

Here, Plaintiff adequately alleges all four elements. First, Plaintiff conveyed confidential facts that reveal his serious medical condition and treatment. ¶¶ 102-03. The PHI disclosed was novel because the Website communications were created through Plaintiff's interactions with the Website and not preexisting data about Plaintiff. Second, CVS had knowledge because it encouraged Plaintiff and Class Members to communicate their confidential PHI via the Website. ¶¶ 1, 41, 103. Third, CVS did not seek Plaintiff's and Class Members' consent or even disclose its practices, but disclosed the PHI to third parties "for [its] own economic benefit and without Plaintiff's and Class Members' knowledge or consent." ¶ 177. And fourth, the third parties, in turn, used Plaintiff's PHI for advertising purposes, including re-targeting advertisements to Website users. ¶ 104. This states a breach of confidence claim.

**5. Negligence and Negligence *Per Se***

CVS argues that the negligence claim fails because (1) it has no duty to protect "online browsing information," and (2) Plaintiff has not established he has been damaged by CVS' negligent acts. Mot. at 18-20. CVS' unsupported arguments are unavailing. First, Plaintiff has alleged CVS' duty to safeguard Private Information sufficient for a common law negligence claim or negligence *per se* claim under California law. ¶¶ 176, 206-07. This duty arose, not only under HIPAA and corresponding HHS regulations, ¶¶ 78-84, but also under CIPA itself. ¶¶ 19-22 (citing *Matera v. Google Inc.*, No. 15-cv-04062, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 795. Moreover, CVS' repeated statements in the Motion to Dismiss that Plaintiff pleads no facts about his interactions with the website and the sensitive PHI he disclosed are simply untrue, where Plaintiff Brewer's numerous supporting facts about the reasonable confidentiality of the PHI he disclosed through his Website interactions are outlined repeatedly *supra*. ¶¶ 102-07.

Second, CVS argues Plaintiff's negligence claim fails because he does not allege "appreciable, nonspeculative, present injury." Mot. at 20. CVS is incorrect that no damage has been done to Plaintiff cognizable for a negligence claim, where his intangible property (his PHI) has been accessed without his consent. *See, e.g.*, *Mehta v. Robinhood Fin. LLC*, No. 21-cv-01013-SVK, 2021 WL 6882392, at *5 (N.D. Cal. Sept. 8, 2021) (loss of sensitive personal information and loss of control over such information establish negligence damages). Beyond this, Plaintiff also alleges he has suffered actual harm where his PHI has already plausibly been misused by third parties including Adobe, Criteo, and/or Medallia. ¶¶ 26, 38, 104 (PHI used for targeted advertising). These are sufficient injuries to support Plaintiff's negligence claim, and CVS' motion to dismiss this claim should be denied.

**6. California UCL**

California's Unfair Competition Law ("UCL") prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "A business act or practice may violate the UCL if it is either unlawful, unfair, or fraudulent. Each of these three adjectives captures a separate and distinct theory of liability." *Rubio v. Cap. One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) (citations and quotation marks omitted).

To state a claim under the 'unlawful' prong, Plaintiffs must establish a violation of another law. *Branca v. Ocwen Loan Servicing, LLC*, No. CV 13-7502 BRO (Ex), 2013 U.S. Dist. LEXIS 201815, at *42 (C.D. Cal. Dec. 27, 2013) (citing *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007)). Here, because Plaintiff has adequately pled violations of CIPA, invasion of privacy, breach of confidence, and negligence/negligence *per se*, Plaintiff states a claim under the UCL. *Branca*, 2013 U.S. Dist. LEXIS 201815, at *42.

Plaintiff has separately stated a claim under the "unfair" prong of the UCL. *See, e.g.*, *Toy v. Life Line Screening of Am. Ltd.,* No. 23-cv-04651-RFL, 2024 U.S. Dist. LEXIS 88872, at *7 (N.D. Cal. Mar. 19, 2024) ("As for the unfair prong, Toy alleges that Life Line's intentional use of hidden and undisclosed tracking pixels offended public

policy . . . and constitute immoral unethical, oppressive, and unscrupulous activities that caused substantial injury. The complaint plausibly alleges violations of the unlawful and unfair prongs of the UCL.") (internal record citations and quotations omitted).

As to injury, there are "innumerable ways in which economic injury from unfair competition may be shown." *Kwikset Corp. v. Sup. Ct.*, 51 Cal.4th. 310, 322–23 (2011). For example, UCL standing can be based on: (1) invasion of privacy; (2) being deprived of the benefit of the bargain; and (3) loss of payment for data taken. *Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 987, 1023–25 (N.D. Cal. 2024).

***First***, Plaintiff's allegations of invasion of privacy themselves give rise to actionable injury. *See Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 1024 ("Privacy harms involving personal data can constitute an injury to money or property sufficient to provide standing under the UCL[.]"); *Turner v. Google LLC*, 2024 WL 3052969, at *7 (N.D. Cal. June 18, 2024) (same).

***Second***, by alleging that he would not have used CVS' services, including the Website, had he known CVS was breaching confidentiality and disclosing his personally identifying information to third parties, Plaintiff alleges benefit-of-the-bargain damages. ¶ 169; *Ji v. Naver Corp.*, 2023 WL 6466211, at *9 (N.D. Cal. Oct. 3, 2023) (UCL standing existed where plaintiffs alleged "collection and use of [] data deprived [plaintiffs] of the benefit of their bargain"); *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 613 F. Supp. 3d 1284, 1301 (S.D. Cal. 2020) (benefit of the bargain is cognizable damage theory).

***Third***, Plaintiff alleges that CVS harmed him by taking his property. ¶ 169 (alleging lost money or property, including access to private and personal data. The FAC alleges that property has financial value. ¶¶ 86-92. While there is some split in authority, *see Turner v. Google LLC,* 2024 WL 4933345, at *6 (N.D. Cal. Dec. 2, 2024) (describing the split and citing cases), Plaintiff submits the better-reasoned cases find that these types of harms establish standing. *Calhoun v. Google LLC* (N.D. Cal. 2021) 526 F. Supp. 3d 605, 636 ("plaintiffs who suffer[] a loss of their personal information suffer[] economic

injury and have [UCL] standing"); *Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 1023–25 (UCL standing from "diminished value" and being deprived of the "right to exclude" others from one's taken data); *Doe v. Microsoft Corp.*, No. C23-0718-JCC, 2023 WL 8780879, at *13 (W.D. Wash. Dec. 19, 2023) (recognizing diminution of value of personal information as harm under UCL).

Accordingly, Plaintiffs' UCL 'unlawful' and 'unfair' claims are well-pled.

## IV. MOTION TO STRIKE CLASS ALLEGATIONS

"Striking class allegations prior to a formal certification motion is generally disfavored because the factual record is usually undeveloped." *Mason v. Spring EQ LLC*, No. 5:24-cv-01833 MWC (AGRx), 2025 U.S. Dist. LEXIS 31895, at *8-9 (C.D. Cal. Jan. 22, 2025) (citing *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1245 (C.D. Cal. 2011)) (stating "it is in fact rare to [strike class allegations] in advance of a motion for class certification," and holding "it is premature to determine if this matter should proceed as a class action" because discovery has not begun); *Meyer v. Nat'l Tenant Network, Inc.*, 10 F. Supp. 3d 1096, 1104 (N.D. Cal. 2014) (declining to consider the adequacy of class allegations on a motion to strike); *Yastrab v. Apple Inc.*, No. 5:14-cv-01974-EJD, 2015 WL 1307163, at *8 (N.D. Cal. Mar. 23, 2015) ("[I]n general, class allegations are not tested at the pleading stage and are instead scrutinized after a party has filed a motion for class certification."). "A decision to grant a motion to strike class allegations . . . is the functional equivalent of denying a motion to certify a case as a class action." *Bates v. Bankers Life & Cas. Co.*, 848 F.3d 1236, 1238 (9th Cir. 2017). Therefore, striking class allegations is only appropriate "when no class action can *possibly* be maintained on the face of the pleading." *See Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010) (emphasis added).

This case is not one of the rare exceptions. The issues Defendants raise with Plaintiff's class allegations are either factual and will be further elucidated through the course of discovery, or are simply wrong on the law. For example, CVS takes issue with the fact that the class could potentially include individuals who have no "injury" or could

not assert a claim, but to define the class as requiring an injury and valid claim would create an impermissible "fail-safe" class. *Moghadam v. Alleviate Tax, LLC*, No. 8:24-1810-MWC (DFMx), 2025 U.S. Dist. LEXIS 33878, at *9 (C.D. Cal. Feb. 24, 2025) (defining a fail-safe class as "when the class itself is defined in a way that precludes membership unless the liability of the defendant is established" (quoting *Kamar v. RadioShack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010)). In any event, "the presence of uninjured individuals within the class does not dictate that individual issues predominate and certification is improper." *Sonneveldt v. Mazda Motor of Am., Inc.*, No. 8:19-cv-01298-JLS-KES, 2022 U.S. Dist. LEXIS 219297, at *85-86 (C.D. Cal. Oct. 21, 2022) (citing *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 (9th Cir. 2022) (en banc)).

Plaintiff also defines "Private Information" in the FAC. ¶ 3. To the extent there is a factual or legal dispute as to what specific categories of information should be considered PHI or PII (*i.e.*, the two components of Private Information), that will depend on: (1) what specific information CVS is tracking and sharing, as developed in discovery; and (2) which types of information courts and legislatures have defined as personal or protected—as is the case with *every* data privacy case. CVS has failed to show it will be *impossible* for Plaintiff to meet his class certification burden and show CVS collected information that would be considered Private Information, as Plaintiff has defined it.

Finally, Plaintiff Brewer alleges that, like the rest of the class, he visited the Website, entered Private Information into the Website, and had that Private Information tracked by the Tracking Technologies without his consent. ¶¶ 102-04. It is, ultimately, immaterial whether this illegal tracking occurred when a patient searched for medical products as opposed to scheduling a vaccine appointment: the injury and course of conduct are precisely the same. Brewer is therefore typical of the class he seeks to represent and the rare and drastic remedy of striking class allegations is not appropriate. *Lyons v. Coxcom, Inc.*, 718 F. Supp. 2d 1232, 1236 (S.D. Cal. 2009) ("The Court concludes that it cannot determine from the face of the pleadings that a class is not

certifiable as a matter of law, as there are factual and legal issues yet to be determined. The issues raised by Defendant are better suited for a determination at the class certification stage.”).

## V. CONCLUSION

For all the above reasons, Plaintiff respectfully submits that CVS’ Motion should be denied in full. However, if the Court deems any of the claims inadequately pleaded, Plaintiff requests leave to amend. There has been no prior judicial evaluation of the pleadings and CVS cannot demonstrate bad faith, dilatory motive, or prejudice. *Schreiber Distrib. Co. v. Serv-Well Furniture Co*., 806 F.2d 1393, 1401 (9th Cir. 1986).

Dated: September 5, 2025 By: */s/ John J. Nelson*

JOHN J. NELSON
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
280 S. Beverly Drive, Penthouse
Beverly Hills, CA 90212
Telephone: 868-209-6941
Facsimile: (865) 522-0049
jnelson@milberg.com

Jonathan M. Jagher (*pro hac vice*)
**FREED KANNER LONDON & MILLEN LLC**
923 Fayette St.
Conshohocken, PA 19428
Telephone: (224) 632-4500
Facsimile: (224) 632-4521
jjagher@fklmlaw.com

Nicholas R. Lange (*pro hac vice*)
**FREED KANNER LONDON & MILLEN LLC**
100 Tri-State International Drive, Suite 128
Lincolnshire, IL 60069
Telephone: (224) 632-4510
Facsimile: (224) 632-4521

nlange@fklmlaw.com

Jeff Ostrow (*pro hac vice*)
**KOPELOWITZ OSTROW P.A.**
1 W. Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Telephone: (925) 332-4200
Facsimile: (954) 525-4300
ostrow@kolawyers.com

*Counsel for Plaintiff and the Putative Classes*

**L.R. 11-6.2 Certificate of Compliance**

The undersigned counsel certifies that this memorandum contains 6,914 words and complies with the word limit of L.R. 11-6.1.

Dated: September 5, 2025

MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC

By: */s/ John J. Nelson*
JOHN J. NELSON
Attorneys for Plaintiff