**KELLEY DRYE & WARREN LLP**
Rebecca B. Durrant (SBN 350444)
350 South Grand Avenue, Suite 3800
Los Angeles, CA 90071
Telephone: (212) 808-7551
Facsimile: (213) 547-4901
rdurrant@kelleydrye.com

**KELLEY DRYE & WARREN LLP**
Lauri A. Mazzuchetti (*pro hac vice*)
Whitney M. Smith (*pro hac vice*)
7 Giralda Farms, Suite 340
Madison, New Jersey 07940
Telephone: (973) 503-5900
Facsimile: (973) 503-5950
lmazzuchetti@kelleydrye.com
wsmith@kelleydrye.com

**KELLEY DRYE & WARREN LLP**
Stephanie A. Carroll (*pro hac vice*)
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Telephone: (212) 808-7800
Facsimile: (212) 808-7897
scarroll@kelleydrye.com

*Counsel for Defendants*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**NEIL GETZ** and **JUSTIN PLAINTIFF,** individually and on behalf of all others similarly situated,

Plaintiffs,

v.

**CVS HEALTH CORPORATION, CVS PHARMACY, INC., et al.,**

Defendants.

Case No. 2:25-cv-04689-MWC-E

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STRIKE CLASS ALLEGATIONS**

[Hon. Michelle Williams Court]

Hearing: Friday, September 26, 2025
Time: 1:30 p.m.
Location: Courtroom 6A

# TABLE OF CONTENTS


**Page**

**I.** INTRODUCTION ........ 1

**II.** ARGUMENT—MOTION TO DISMISS UNDER RULE 12(B)(6) ........ 1

- **A.** Plaintiff Fails to Allege Disclosure of His Personal Information ........ 1
- **B.** Plaintiff's CIPA Section 631(a) Claim Fails ........ 3
  - **1.** No Contents of a Communication ........ 3
  - **2.** No Interception in Transit ........ 3
  - **3.** No Injury ........ 4
- **C.** Plaintiff's CIPA Section 632 Claim Fails ........ 5
- **D.** Plaintiff's Claim for Invasion of Privacy under the California Constitution and Common Law Fails ........ 6
- **E.** Plaintiff's Breach of Confidence Claim Fails ........ 7
- **F.** Plaintiff's Negligence and Negligence *Per Se* Claim Fails ........ 8
  - **1.** No Duty ........ 8
  - **2.** No Appreciable, Nonspeculative and Present Injury ........ 9
- **G.** Plaintiff's UCL Claim Fails ........ 9

**III.** ARGUMENT—MOTION TO STRIKE CLASS ALLEGATIONS ........ 11

- **A.** The Proposed Class Definitions Are Still Impermissibly Broad ........ 11
- **B.** Plaintiff Still Fails to Satisfy Typicality Under Rule 23 ........ 12

**IV.** CONCLUSION ........ 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aguilar v. Hartford Accident & Indem. Co.*,
2019 WL 2912861 (C.D. Cal. Mar. 13, 2019) ........ 9

*B.K. v. Desert Care Network*,
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) ........ 7

*Barnett v. Gipson*,
2021 WL 4352910 (C.D. Cal. July 28, 2021) ........ 8, 9

*Doe v. Call-On Doc Inc.*,
2025 WL 1677632 (S.D. Cal. June 13, 2025) ........ 4

*Doe v. GoodRx Holdings, Inc.*,
2025 WL 2052302 (N.D. Cal. July 22, 2025) ........ 5, 6

*Doe v. Tenet Healthcare Corp.*,
2025 WL 1635956 (E.D. Cal. June 9, 2025) ........ 4, 5

*Griffith v. TikTok, Inc.*,
2024 WL 4308813 (C.D. Cal. Sept. 9, 2024) ........ 3

*Griffith v. TikTok, Inc.*,
2024 WL 5279224 (C.D. Cal. Dec. 24, 2024) ........ 10

*Gutierrez v. Converse Inc.*,
2025 WL 1895315 (9th Cir. July 9, 2025) ........ 3

*Harrill v. Emanuel Med. Ctr.*,
2025 WL 1635428 (E.D. Cal. June 9, 2025) ........ 2, 6

*Howard v. Lab. Corp. of Am.*,
2024 WL 4250677 (M.D.N.C. Aug. 8, 2024) ........ 2

*In re Honda Idle Stop Litig.*,
347 F.R.D. 528 (C.D. Cal. 2024) ........ 11

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) ........ 10

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017)....................7

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023)....................2

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023)....................6

*McDonald v. Kiloo ApS*,
385 F. Supp. 3d 1022 (N.D. Cal. 2019)....................6, 7

*Mehta v. Robinhood Fin. LLC*,
2021 WL 6882392 (N.D. Cal. Sept. 8, 2021)....................9

*Melgar v. CSK Auto, Inc.*,
681 Fed. Appx. 605 (9th Cir. 2017)....................11

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods, LLC*,
31 F. 4th 651 (9th Cir. 2022)....................11

*Popa v. Microsoft Corp.*,
2025 WL 2448824 (9th Cir. Aug. 26, 2025)....................7

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024)....................3, 4, 8, 10

*Shah v. Cap. One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025)....................2

*St. Aubin v. Carbon Health Tech, Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024)....................4

**Statutes**

Cal. Penal Code § 637.2....................5

**Other Authorities**

Fed. R. Civ. P. 23(a)....................12

CVS[1] submits this reply in support of its motion to dismiss the FAC, or in the alternative, to strike the class allegations (the "Motion" or "Mot.").

## I. INTRODUCTION

CVS's Motion demonstrated multiple fatal deficiencies in Plaintiff's claims, including most notably, the absence of any specific allegations about Plaintiff's own interactions with the Website or the disclosure of his "personal health information." In response, Plaintiff's opposition ("Opposition" or "Opp.") broadly asserts that the "FAC meticulously details . . . Plaintiff's use of the Website." Irrespective of this declaration, Plaintiff fails to allege that he actually engaged in many of the core interactions underpinning his claims, such as scheduling vaccine or MinuteClinic appointments or managing prescriptions. In further disregard of his own limited Website interactions, Plaintiff proclaims himself and the putative class as CVS "patients" in an unsupported attempt to bolster any asserted privacy interest.

Rather than addressing his pleading failures, Plaintiff relies upon irrelevant or mischaracterized authority to argue that what he has alleged is adequate. Plaintiff, however, is not entitled to sidestep established requirements, particularly where, as here, he cites no compelling support to do so. The purpose of a complaint is to plead facts sufficient to plausibly state a claim, not to allege broad conclusions with the hopes of filling in the requisite factual bases later. As set forth in the Motion and below, the FAC fails to state a claim and should be dismissed. Should the Court not dismiss the FAC outright, the Court should strike Plaintiff's class allegations as it is plain that he cannot satisfy Rule 23.

## II. ARGUMENT—MOTION TO DISMISS UNDER RULE 12(B)(6)

### A. Plaintiff Fails to Allege Disclosure of His Personal Information

Plaintiff's claims are predicated upon an alleged disclosure of personal health information. (FAC ¶¶ 103–04.) Plaintiff, however, has not alleged facts to support

[1] All terms not otherwise defined herein shall have the same meaning as in the Motion.

that he even provided such information to CVS—much less that this information was disclosed outside of CVS. (*Id.*) To survive this Motion, Plaintiff must allege his actual interactions with the Website and connect them to the subsequent targeted ads he allegedly received. His failure to do so is a fatal deficiency as to each and every claim.

Where, as here, a plaintiff fails to allege the information purportedly disclosed, courts will not hesitate to dismiss such privacy-based claims. (Mot. 7–8) (collecting cases). The Opposition does not meaningfully engage with the cases CVS cites, some of which were decided in recent months. Instead, Plaintiff relies upon inapposite cases to argue that he is excused from pleading such basic information. (Opp. 6.) For instance, *Shah v. Capital One Financial Corporation* did not involve any alleged disclosure of medical conditions or products, but rather plaintiffs' "personal and financial information, including employment information, bank account information, citizenship status and credit card preapproval or eligibility[.]" *See* 768 F. Supp. 3d 1033, 1044–45 (N.D. Cal. 2025). *James v. Walt Disney Company* similarly did not involve the alleged disclosure of any sensitive information. *See* 701 F. Supp. 3d 942, 945 (N.D. Cal. 2023). In fact, the only case Plaintiff cites for this proposition is an out of circuit case against LabCorp, involving claims by individuals much more likely to be "patients" who would have shared private information with LabCorp. *See Howard v. Lab. Corp. of Am.*, 2024 WL 4250677, at *1 (M.D.N.C. Aug. 8, 2024). None of these cases allow Plaintiff to avoid basic pleading obligations, as he seeks to do here.

Nor can Plaintiff maintain his claim based on the purported receipt of unspecified ads that he again speculates resulted from vague interactions with the Website. (*See* FAC ¶ 104.) Courts require facts to establish some sort of nexus between the alleged interaction and alleged subsequent targeting. (Mot. 6–9.) This is not information that Plaintiff claims to need from CVS and he may protect any alleged privacy interest by filing under seal or pseudonym. *See Harrill v. Emanuel Med. Ctr.*, 2025 WL 1635428, at *7 n.4 (E.D. Cal. June 9, 2025) (instructing plaintiff to "request to redact/seal" details that "could reveal sensitive or private information").

**B. Plaintiff's CIPA Section 631(a) Claim Fails**

**1. No Contents of a Communication**

The Motion explains that Plaintiff does not plausibly allege that CVS disclosed the contents of his communications. (Mot. 9–11.) In response, Plaintiff misrepresents CVS's position, claiming that "CVS concedes [that] search terms and descriptive URLs are contents of a communication[.]" (Opp. 8.) CVS makes no such concession.

To the contrary, the Motion emphasizes that "not every piece of information allegedly collected and transmitted by [the defendant] can be construed as 'contents' for the purpose of" a CIPA claim. *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024); (Mot. 10–11.) This is why it is critical for Plaintiff to allege the information he purportedly provided to CVS. While Plaintiff argues that he is not required to plead the exact contents of any communications (*see* Opp. 6, 9) (citing *James*, 701 F. Supp. 3d at 956), courts have increasingly recognized that the nature of the communication is central to the merits of a Section 631(a) claim. *See Walgreen Co.*, 733 F. Supp. 3d at 902–03; *Griffith v. TikTok, Inc.*, 2024 WL 4308813, at *7 (C.D. Cal. Sept. 9, 2024) (analyzing the "nature of the information collected" and finding plaintiffs failed to show that the disclosed browsing history-based URLs contained sensitive information). Without more, Plaintiff's Section 631(a) claim requires speculation as to the "nature of the information" allegedly collected and disclosed, and whether that information qualifies as "contents" under the statute.

**2. No Interception in Transit**

Plaintiff must also allege that the contents of *his* communications were intercepted in transit. *See Gutierrez v. Converse Inc.*, 2025 WL 1895315, at *1 (9th Cir. July 9, 2025) (finding that plaintiff must prove defendant "read or attempted to read *her* chat message") (emphasis in original). In lieu of such allegations, Plaintiff broadly asserts that "[t]he FAC details—with both screenshots of the Website and corresponding web traffic, how the Tracking Technologies intercept *any* search term Plaintiff ran[.]" (Opp. 8.) Yet, the examples relied upon do not establish a disclosure

of *Plaintiff's* searches, views, or purchases on the Website, as required to state a claim. (FAC ¶¶ 42–52, 67–68, 73–74.)

Plaintiff argues that he sufficiently alleged the interception of contents of communication. (Opp. 8–10.) Yet, in many of the cases he relies upon, the plaintiffs alleged the specific information they provided to the websites, how it was plausibly linked to their identity (*e.g.*, overlapping account information), and the specific subsequent targeted advertisement. *See, e.g.*, *Doe v. Call-On Doc Inc.*, 2025 WL 1677632, at *3, 4 (S.D. Cal. June 13, 2025) (plaintiff alleged using the website to treat "various health conditions, including an upper respiratory infection," and to do so, answering questions, such as "full name, gender, height, weight, symptoms, dates of exposure . . . medications, and surgical history"); *Walgreen Co.*, 733 F. Supp. 3d at 893 (plaintiffs alleged using the website to purchase Monistat and diabetes test kits to treat yeast infections and diabetes); *St. Aubin v. Carbon Health Tech, Inc.*, 2024 WL 4369675, *11 (N.D. Cal. Oct. 1, 2024) (plaintiff alleged using the website to schedule COVID-19 vaccinations and book urgent care appointments).

In contrast, Plaintiff's claims about his *own* information's alleged interception are much more limited. He provides no screenshots or web traffic to cover his own searches for over-the-counter products and sexual health products on the Website. (FAC ¶¶ 102–110.) Nor does he provide any information that could plausibly link his identity to those purported searches, or that he even input any identifiable information. (*Id.*) Instead, Plaintiff stakes his CIPA claim on information with no relevance to his interaction with the Website or his purported health condition, which is insufficient.

**3. No Injury**

Under CIPA, only a person injured by a violation can recover. (Mot. 12.) Relying on *Doe v. Tenet Healthcare Corp.*, 2025 WL 1635956 (E.D. Cal. June 9, 2025), Plaintiff claims that his injury allegations are sufficient because the "disclosure of health and medication-related communications has consistently been held to implicate the right to privacy under CIPA, Section 631." (Opp. 12.) But in *Tenet*,

patient-plaintiffs alleged that their medical providers disclosed to Meta the specific health conditions input or viewed on the providers' websites. *Id.* at *5–6. While Plaintiff claims to have shopped for over-the-counter products on the Website related to his purported "medical condition and sexual health" (Opp. 8), he does not allege that any of his sensitive or identifying information was actually disclosed. Thus, Plaintiff fails to identify any "confidential PHI" allegedly disclosed or demonstrate how any alleged disclosure caused him to suffer harm. *See* Cal. Penal Code § 637.2.

**C. Plaintiff's CIPA Section 632 Claim Fails**

Plaintiff's Section 632 claim is fatally flawed and the Opposition again fails to rebut CVS's arguments in support of dismissal. CVS does not "mischaracterize" Plaintiff's allegations of privacy expectations as cursory—they simply are. (*See* Opp. 13.) The FAC offers no support for any objectively reasonable expectation that Plaintiff's communications with the Website were confidential. (*See* Mot. 14–15.) Plaintiff attempts to save his claim by arguing he alleged "objective facts"—that he viewed and purchased over-the-counter medical and sexual health products, and later saw an ad related to his undisclosed condition. (Opp. 13.) But these allegations say nothing about whether Plaintiff expected the information allegedly shared on the Website "to be confined to the parties" of the communication—a key element of Section 632 claims, as the Opposition concedes. (*Id.*) (quoting Cal. Penal Code 632(c)).

Plaintiff's reliance on *Doe v. GoodRx Holdings, Inc.* is misplaced. (Opp. 13.) *GoodRx* involved specific prescription-related communications, often made when seeking care from a medical provider. 2025 WL 2052302, at *14 (N.D. Cal. July 22, 2025). By contrast, Plaintiff does not allege that (i) he was a patient, (ii) CVS was his healthcare provider when he browsed products on the Website, (iii) he disclosed any prescription information, or (iv) that he actually disclosed any personally identifiable information. (FAC ¶¶ 103–04.) Simply put, the FAC is devoid of allegations establishing "[h]ealth-related communications with a medical provider," nor any facts

that suggest Plaintiff's interactions with the Website were confidential under Section 632. *See GoodRx*, 2025 WL 2052302, at *14 (citation omitted).

**D. Plaintiff's Claim for Invasion of Privacy under the California Constitution and Common Law Fails**

Plaintiff's constitutional and common law privacy claims fail because he alleges neither a reasonable expectation of privacy nor conduct that is highly offensive. Plaintiff's vague references to viewing or purchasing over-the-counter and sexual health products on the Website do not support a protectable privacy interest. (Mot. 15–16.) Plaintiff attempts to distinguish *Harrill* by misrepresenting the case's holding and recharacterizing his similar allegations as personal health information. (*Compare* Opp. 14 ("[T]he [*Harrill*] plaintiff [] did 'not specifically allege that her searches related to the provision of healthcare, patient status, or otherwise included PHI") *with Harrill*, 2025 WL 1635428, at *2 (alleging that plaintiff utilized the "Website's search function . . . to search for information related to symptoms or conditions she was experiencing")). This effort fails because like *Harill*, Plaintiff asserts that he visited the Website to view and purchase "over-the-counter medical products" and "sexual health products" relating to a "serious medical condition"—conduct that does not implicate a cognizable privacy interest. (*See* FAC ¶ 103.)

Plaintiff further undercuts his own argument regarding "highly offensive" conduct by mischaracterizing his own authority—specifically *Katz-Lacabe v. Oracle America, Inc.*, *McDonald v. Kiloo ApS*, and *In re Vizio, Inc., Consumer Privacy Litigation.* (*See* Opp. 14.) For instance, in *Katz-Lacabe*, it was not defendant's purported "disclosure of 'health-related' information" that went beyond "routine commercial behavior" (*id.*), but an alleged accumulation of "a vast repository of personal data," which included "sensitive health and personal safety information," and information related to "race and politics." 688 F. Supp. 3d 928, 942 (N.D. Cal. 2023). Similarly, the highly offensive conduct in *McDonald* stemmed from the collection and disclosure of behavioral data from a children's gaming app, "result[ing]

in minor users being shown targeted advertisements" and continued tracking of users to see their responses to the ads. 385 F. Supp. 3d 1022, 1035 (N.D. Cal. 2019) (*compare id. with* Opp. 14) (stating *McDonald* held "that surreptitiously tracking users and gathering data to be used in targeted advertising violated social norms and privacy interests"). Moreover, *In re Vizio* found the collection of a "vast array of information" in video viewing history to be highly offensive where Vizio ignored consumer opt-outs, re-enabled collection after software updates, and buried opt-out options. 238 F. Supp. 3d 1204, 1233 (C.D. Cal. 2017); (*compare id. with* Opp. 14 ("[P]laintiffs plausibly alleged that defendant's collection of plaintiffs' video viewing history 'amount[ed] to a highly offensive intrusion'")).

Plaintiff's failure to accurately characterize the case law he relies upon only underscores his inability to allege any similar conduct by CVS that could be deemed highly offensive. *See Popa v. Microsoft Corp.*, 2025 WL 2448824, at *5 (9th Cir. Aug. 26, 2025) (finding plaintiff failed to allege that website tracking "caused her to experience any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law").

**E. Plaintiff's Breach of Confidence Claim Fails**

Plaintiff cannot salvage his breach of confidence claim by relying on *B.K. v. Desert Care Network*. (*See* Opp. 15–16.) *B.K.* alleged unauthorized disclosures of patients' personal health information to Meta by their providers via the Meta pixel embedded on their websites. 2024 WL 1343305, at *1–2 (C.D. Cal. Feb. 1, 2024). Even if Plaintiff made similarly specific allegations about his own "serious health condition" (he does not), Plaintiff's alleged experience is fundamentally different from the plaintiffs in *B.K.*—he does not, and cannot, allege that CVS acted as his healthcare provider or that he was a CVS patient. Notably, the court in *B.K.* expressly relied on the existence of a patient-provider relationship in sustaining the breach of confidence claim. *See id.* at *10.

Moreover, Plaintiff attempts to salvage his breach of confidence claim with

unpled allegations, introduced for the first time in his Opposition. *See, e.g., Barnett v. Gipson*, 2021 WL 4352910, at *2 n.2 (C.D. Cal. July 28, 2021) ("[T]he Court does not consider this allegation because the Court cannot consider new allegations raised by Plaintiff for the first time in an Opposition to a Motion to Dismiss."). Plaintiff now claims that "[t]he PHI disclosed was novel because the Website communications were created through Plaintiff's interactions with the Website and not preexisting data about Plaintiff." (Opp. 16.) But this assertion is absent from the FAC, and as such, is inappropriate to raise in his Opposition. *See Barnett*, 2021 WL 4352910, at *2 n.2.

Plaintiff also argues that "CVS had knowledge" that the information was confidential because CVS "encouraged" Website users like Plaintiff to use the Website's search bar. (Opp. 16.) The suggestion that by merely including a search bar on the Website, CVS "encouraged" Website users to share their confidential and sensitive information is unsupported and illogical. Moreover, Plaintiff does not allege that CVS has acknowledged or agreed to treat the resulting search bar inputs as confidential health information—particularly in the case of an unauthenticated website user like Plaintiff, who is merely browsing products on the Website.

### F. Plaintiff's Negligence and Negligence *Per Se* Claim Fails

#### 1. No Duty

Plaintiff's Opposition does not meaningfully address his failure to plead a common law or regulatory duty to support his negligence claim. (*See* Opp. 16.) Plaintiff merely repeats that CVS owed him a common law "duty to safeguard" his information (*id.*), ignoring that the Central District rejected this very argument in *R.C. v. Walgreen Co.*, 733 F. Supp. 3d at 897.

Plaintiff's reliance on purported regulatory duties fares no better. In particular, he fails to allege that CVS disclosed any personally identifiable information—a threshold requirement for invoking HIPAA and HHS guidance. (Mot. 19–20.) Although Plaintiff acknowledges that personal health information must be personally identifiable to warrant regulatory protection (*see* FAC ¶¶ 78, 83), he nonetheless relies

on "the reasonable confidentiality of the PHI he disclosed on the Website" to state a negligence claim. (Opp. 16.) But that does not transform the allegedly disclosed information into protected personal health information. (Mot. 19–20.) Accordingly, neither HIPAA nor HHS guidance can support Plaintiff's negligence *per se* claim.

Plaintiff also attempts—for the first time in his Opposition—to base his negligence *per se* claim on alleged CIPA violations. (*See* Opp. 16.) This new theory is procedurally improper, *see Barnett*, 2021 WL 4352910, at *2 n.2, and substantively defective, as Plaintiff cannot state a viable CIPA claim. (*See* Section II.B.1–2, *supra*.)

**2. No Appreciable, Nonspeculative and Present Injury**

Plaintiff's arguments with respect to damages are equally deficient. Plaintiff first asserts that the mere unauthorized access to his personal information is sufficient to constitute injury for purposes of a negligence claim. (*See* Opp. 17) (citing *Mehta v. Robinhood Fin. LLC*, 2021 WL 6882392, at *5 (N.D. Cal. Sept. 8, 2021)). But unlike *Mehta*, where plaintiffs alleged theft of personal and financial information, Plaintiff alleged no facts that would support the "loss of control over the use of [his] identity." *Id.* at *5. Nor could he reasonably do so, given that he fails to allege that CVS purportedly disclosed *any* identifying information. Regardless, "an alleged loss of control of [] medical information and personal information is also insufficient to establish damages for a negligence claim." *Aguilar v. Hartford Accident & Indem. Co.*, 2019 WL 2912861, at *2 (C.D. Cal. Mar. 13, 2019).

Next, Plaintiff claims that he "suffered actual harm" where his information has been "plausibly misused" by third parties for targeted advertising. (Opp. 17.) This argument is unsupported, conclusory, and—again—raised for the first time in his Opposition with respect to damages for his negligence claim. *See Barnett*, 2021 WL 4352910, at *2 n.2. These new claims are insufficient to establish the damages element of Plaintiff's negligence claim, and as such, his claim should be dismissed.

**G. Plaintiff's UCL Claim Fails**

Plaintiff admits he is required to allege an economic injury to support his UCL

claim, but mischaracterizes what qualifies as such an injury. (Opp. 18) (alleging "invasion of privacy" as one of three bases for economic injury). As explained in Plaintiff's own cited authority, *In re Meta Pixel Tax Filing Cases*, courts in the Ninth Circuit recognize three types of economic injury sufficient to confer UCL standing in cases involving privacy harms: (1) benefit of the bargain, (2) diminution of value, or (3) right to exclude, under which plaintiffs assert "they were deprived of their right to exclude the defendant from their intangible personal property." 724 F. Supp. 3d 987, 1024–25 (N.D. Cal. 2024) ("*Meta Tax*").

As detailed in the Motion, Plaintiff fails to allege an economic injury under the first two theories—benefit of the bargain or diminution of value. (Mot. 21.) Instead of addressing the Motion's arguments, Plaintiff restates the legal standards for both theories and summarily concludes that his claims suffice. (*See* Opp. 18.) They do not. Plaintiff's benefit of the bargain theory fails as Plaintiff alleges only that he "purchased sexual health products." (*See* FAC ¶ 103.) Plaintiff does not claim that he was denied a service promised as part of this purchase. *See Walgreen Co.*, 733 F. Supp. 3d at 903–04. Simply put, Plaintiff received what he bargained for. (*See* Mot. 21.) Plaintiff's allegations regarding a diminution of value likewise fail because Plaintiff does not allege that he "either 'attempted or intended to participate' in the market" for his highly sensitive personal data, "or otherwise to derive economic value from [his] PII." *Meta Tax*, 724 F. Supp. 3d at 1024; (*see also* Mot. 21).

Finally, the right to exclude theory is inapplicable here. Not only do property rights require exclusive possession or control (a claim notably absent from the FAC), but Plaintiff does not allege that CVS collected or disclosed any of his sensitive or personally identifiable information. *See Griffith v. TikTok, Inc.*, 2024 WL 5279224, at *12 (C.D. Cal. Dec. 24, 2024) (analyzing personal information as property with respect to statutory larceny and conversion claims). Plaintiff's failure to plead rudimentary information is fatal to any allegation that CVS deprived him of the right to exclude others from accessing his personal information.

Even assuming Plaintiff alleged an economic injury (he does not), his UCL claim would still fail, as he does not allege any unlawful, unfair, or fraudulent conduct sufficient to support a claim. (*See* Sections II.A and II.B.1–5, *supra*; Mot. 21.)

## III. ARGUMENT—MOTION TO STRIKE CLASS ALLEGATIONS

### A. The Proposed Class Definitions Are Still Impermissibly Broad

Plaintiff misstates both CVS's argument and the law in his attempt to salvage his impermissibly broad class definitions. Plaintiff claims that CVS is attempting "to define the class as requiring an injury and valid claim," which would "create an impermissible 'fail-safe' class." (Opp. 19–20.) Plaintiff's use of the phrase "valid claim" is a red herring. CVS is not attempting to define class membership in a manner that requires a valid claim or "presupposes success on the merits." *Melgar v. CSK Auto, Inc.*, 681 Fed. Appx. 605, 607 (9th Cir. 2017). Instead, CVS highlights that Plaintiff's definition includes individuals, "a great number of members who for some reason could not have been harmed." *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods, LLC*, 31 F. 4th 651, 669 n.14 (9th Cir. 2022).

Despite Plaintiff's claims to the contrary, limiting the proposed class definition to those who may have suffered an injury by way of objective criteria would not result in a class definition that hinges on the outcome of the litigation. *See In re Honda Idle Stop Litig.*, 347 F.R.D. 528, 540 (C.D. Cal. 2024) (rejecting fail-safe challenge where "[n]o liability findings at trial would change" class membership). Indeed, as demonstrated by the dismissal of his co-plaintiff, Neil Getz, the proposed class undoubtedly includes individuals who have agreed to arbitrate claims with CVS. (Dkt. 51.) Moreover, although Plaintiff is correct that the presence of uninjured class members alone does not automatically preclude certification under Rule 23 (Opp. 20), he fails to consider the reality that, absent a more definite class definition, "individualized questions" regarding "the injury status of class members" will necessarily "predominate over common questions," among other issues. *See Olean*, 31 F. 4th at 668; (*see* Mot. 23–24) (describing the various ways in which uninjured

class members would be swept into the proposed definitions). Because the class definitions remain impermissibly broad, the Court should strike the proposed definitions entirely.

**B. Plaintiff Still Fails to Satisfy Typicality Under Rule 23**

Plaintiff glosses over CVS's arguments regarding typicality under Rule 23, claiming it is "immaterial" whether the alleged disclosure occurred "when a patient searched for medical products as opposed to scheduling a vaccine appointment[.]" (Opp. 20.) This argument is fundamentally flawed. Plaintiff's framing of all Website users as CVS "patients," regardless of their particular interaction with the Website or other CVS services, exemplifies his attempt to reduce the FAC's nuanced claims into a broad, one-size-fits-all category. Plaintiff does not allege that when he browsed the Website, he was a patient, or that CVS was his healthcare provider. (Mot. 6–9.) Moreover, the patient-provider context is a key element to a privacy claim that stems from an alleged disclosure of personal health information. (*See* Section II.B.3–5, *supra*.) Plaintiff cannot therefore serve as class representative, given the likelihood that his claims and interests may diverge from those of the class. *See* Fed. R. Civ. P. 23(a); (Mot. 24–25).

Furthermore, Plaintiff's assertion that the "injury and course of conduct" for users' varying interactions with the Website is "precisely the same" is simply untrue. (*See* Opp. 20); (Mot. 25) (outlining the different types of information allegedly disclosed with each interaction). Given the differences among the Website interactions, and Plaintiff's failure to refute that his own interactions with the Website were limited to browsing and purchasing over-the-counter products, Plaintiff has no basis to assert claims involving vaccine appointments, MinuteClinic appointments, and managing prescriptions and they should be stricken. (Mot. 25.)

**IV. CONCLUSION**

CVS respectfully requests that this Court grant the Motion and dismiss all claims in the FAC, or in the alternative, enter an Order striking the class allegations.

DATED: September 12, 2025

Respectfully submitted,

By: /s/ Whitney M. Smith

Whitney M. Smith (*pro hac vice*)
**KELLEY DRYE & WARREN LLP**
Lauri A. Mazzuchetti (*pro hac vice*)
7 Giralda Farms, Suite 340
Madison, New Jersey 07940
Telephone: (973) 503-5900
Facsimile: (973) 503-5950
lmazzuchetti@kelleydrye.com
wsmith@kelleydrye.com

**KELLEY DRYE & WARREN LLP**
Rebecca Durrant (SBN 350444)
350 South Grand Avenue, Suite 3800
Los Angeles, CA 90071
Telephone: (212) 808-7551
Facsimile: (213) 547-4901
rdurrant@kelleydrye.com

**KELLEY DRYE & WARREN LLP**
Stephanie A. Carroll (*pro hac vice)*
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Telephone: (212) 808-7800
Facsimile: (212) 808-7897
scarroll@kelleydrye.com

*Counsel for CVS Health Corporation and CVS Pharmacy, Inc.*

**CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 11-6.1 and Section 6(c) of this Court's Standing Order, the undersigned counsel of record for Defendants CVS Health Corporation and CVS Pharmacy, Inc. certifies that the foregoing reply in support of Defendants' motion to dismiss, or in the alternative, to strike class allegations does not exceed 12 pages.

DATED: September 12, 2025

*/s/* Whitney M. Smith
Whitney M. Smith (*pro hac vice*)