**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
John J. Nelson (SBN 317598)
280 South Beverly Drive, Penthouse
Beverly Hills, California, 90212
Tel: (858) 209-6941
jnelson@milberg.com

**FREED KANNER LONDON AND MILLEN LLC**
Jonathan M. Jagher (pro hac vice)
923 Fayette Street
Conshohocken, PA 19428
(610) 234-6486
Jjagher@fklmlaw.com

*Counsel for Plaintiff and the Putative Class*

*Additional counsel listed on signature page*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **NEIL GETZ** and **JUSTIN BREWER**, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**CVS HEALTH CORPORATION, CVS PHARMACY, INC., CRITEO CORP.,** and **MEDALLIA, INC**.<br><br>Defendants. | Case No. 2:25-cv-04689-MWC-E<br><br>Hon. Michelle Williams Court<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT CRITEO CORP.'S MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(2) AND 12(b)(6) AND MOTION TO STRIKE UNDER FED. R. CIV. P. 12(f)**<br><br>Date: October 24, 2025<br>Time: 1:30 p.m.<br>Courtroom: 6A, 6th Floor |

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... ii

MEMORANDUM OF POINTS AND AUTHORITIES .......... 1

I. INTRODUCTION .......... 1

II. THE COURT HAS PERSONAL JURISDICTION OVER CRITEO. .......... 3

A. Legal Standard Under Rule 12(b)(2) .......... 3

B. The Court Has Specific Personal Jurisdiction Over Criteo. .......... 4

1. Criteo Purposely Directed Its Tracking Code to California. .......... 4

2. Plaintiff's Claims Arise Out of Criteo's Purposeful Direction of its Tracking Code to California. .......... 7

3. Jurisdiction Comports with Fair Play and Substantial Justice. .......... 8

III. PLAINTIFF STATES A CLAIM AGAINST CRITEO AS TO EACH CAUSE OF ACTION. .......... 9

A. Legal Standard Under Rule 12(b)(6) .......... 9

B. Plaintiff States a CIPA § 631(a) Claim. .......... 9

C. Plaintiff States a CIPA § 632(a) Claim. .......... 10

D. Plaintiff's Invasion of Privacy Claims Are Well-Pled. .......... 12

E. Plaintiff Alleges Criteo Acted Intentionally and Wilfully. .......... 16

F. Plaintiff's Negligence and Neglignece Per Se Claims Are Well-Pled. .......... 17

IV. THE NATIONWIDE CLASS ALLEGATIONS SHOULD NOT BE STRICKEN. .......... 18

V. THE TOLLING ALLEGATIONS SHOULD NOT BE STRICKEN. .......... 22

VI. CONCLUSION .......... 24

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Abels v. Bank of Am., N.A.*,
Case No.: 11-CV-208 YGR, 2012 U.S. Dist. LEXIS 28125 (N.D. Cal. Mar. 2, 2012) ........ 23

*Allen v. Hylands, Inc.*,
CV 12-01150 DMG (MANx), 2012 U.S. Dist. LEXIS 61606 (C.D. Cal. May 2, 2012) ........ 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 9, 11

*Balanzar v. Fid. Brokerage Servs., LLC*,
654 F. Supp. 3d 1075 (S.D. Cal. 2023) ........ 23

*Beal v. Lifetouch, Inc.*,
Case No. CV 10-8454-JST (MLGx), 2011 U.S. Dist. LEXIS 33758 (C.D. Cal. Mar. 15, 2011) ........ 19

*Briskin v. Shopify, Inc.*,
135 F.4th 739 (9th Cir. 2025) ........ 5, 6, 8

*Byars v. Goodyear Tire & Rubber Co.*,
654 F. Supp. 3d 1020 (C.D. Cal. 2023) ........ 11

*Calder v. Jones*,
465 U.S. 783 (1984) ........ 5

*Cholakyan v. Mercedes-Benz USA, LLC*,
796 F. Supp. 2d 1220 (C.D. Cal. 2011) ........ 19

*Clinton v. Montes*,
No. CV 11-10062-R (SH), 2012 U.S. Dist. LEXIS 195926 (C.D. Cal. July 16, 2012) ........ 6

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. Nov. 17, 2023) ........ 2

*Davis v. Facebook, Inc. (In re Facebook Inc. Internet Tracking Litig.)*,
956 F.3d 589 (9th Cir. 2020) .............................................................. 11, 12, 14, 15

*Doe v. Call-On Doc, Inc.*,
Case No.: 24cv2095-GPC(KSC), 2025 U.S. Dist. LEXIS 113269 (S.D. Cal. June 13, 2025) ....................................................................................................... 5, 10

*Doe v. Fullstory, Inc.*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) ........................................................... 23

*Doe v. GoodRx Holdings, Inc.*,
Case No. 23-cv-00501-AMO, 2025 U.S. Dist. LEXIS 140287 (N.D. Cal. July 22, 2025) ....................................................................................................... 11

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. Sept. 7, 2023) .......................................... 2, 17

*Doe v. Regents of Univ. of Cal.*,
672 F. Supp. 3d 813 (N.D. Cal. May 8, 2023) ................................................ 2

*Global Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*,
972 F.3d 1101 (9th Cir. 2020) .......................................................................... 4

*Gooden v. Suntrust Mortg., Inc.*,
Case No. 2:11-cv-02595-JAM-DAD, 2012 U.S. Dist. LEXIS 40267 (E.D. Cal. Mar. 23, 2012) ............................................................................................. 19

*Goodyear Dunlop Tires Ops., S.A. v. Brown*,
564 U.S. 915 (2011) .......................................................................................... 4

*Heiting v. Marriott Int'l*,
743 F. Supp. 3d 1163 (C.D. Cal. 2024) ............................................................ 7

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
72 F.4th 1085 (9th Cir. 2023) ........................................................................... 8

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) .............................................................................. 12, 15

*Hill v. Nat'l Collegiate Athletic Assn.*,
7 Cal. 4th 1 (1994) ........ 13, 15

*Howard v. Aspen Way Enters., Inc.*,
2017 WY 152, 406 P.3d 1271 (Wyo. 2017) ........ 21

*In re Apple, AT&T iPad Unlimited Data Plan Litig.*,
No. C-10-02553RMW, 2012U.S. Dist. LEXIS 88413 (N.D. Cal. June 26, 2012) .... 19

*In re Clorox Consumer Litig.*,
894 F. Supp. 2d 1224 (N.D. Cal. 2012) ........ 20

*In re GoodRx Holdings, Inc. Sec. Litig.*,
2025 U.S. Dist. LEXIS 140287 (C.D. Cal. Apr. 22, 2025) ........ 16

*In re Google RTB Consumer Privacy Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022) ........ 14, 15

*In re Grp. Health Plan Litig.*,
709 F. Supp. 3d 707 (D. Minn. Dec. 21, 2023) ........ 2

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ........ 10, 17

*In re Meta Healthcare Pixel Litig.*,
713 F. Supp. 3d 650 (N.D. Cal. 2024) ........ 2

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) ........ 11

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ........ 15

*Keilholtz v. Lennox Hearth Products Inc.*,
268 F.R.D. 330 (N.D. Cal. 2010) ........ 20

*Krantz v. Old Copper Co., Inc.*,
Case No. 2:24-cv-10031-SPG-BFM, 2025 U.S. Dist. LEXIS 155671 (C.D. Cal. Aug. 11, 2025) ........ 22

*Marsh v. First Bank of Del.*,
Case No. 11-cv-05226-WHO, 2014 U.S. Dist. LEXIS69368 (N.D. Cal. May 19,2014) .......... 21

*Matera v. Google Inc.*,
No. 15-cv-04062, 2016 U.S. Dist. LEXIS 107918 (N.D. Cal. Aug. 12, 2016).......... 17

*Mazza v. American Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) .......... 20

*McFall v. Perrigo Co.*,
2:20-cv-07752-FLA (MRWx), 2021 U.S. Dist.LEXIS 109451 (C.D. Cal. Apr. 15, 2021) .......... 22

*Mehta v. Robinhood Fin. LLC*,
No. 21-cv-01013-SVK, 2021 U.S. Dist. LEXIS 253790 (N.D. Cal. Sept. 8, 2021).. 18

*Moody v. Textron Inc.*,
2:25-cv-01032-MWC (Ex), 2025 U.S. Dist. LEXIS 140667 (C.D. Cal. July 2, 2025) (Court, J.) .......... 5

*Mosqueda v. Am. Honda Motor Co., Inc.*,
443 F. Supp. 3d 1115 (C.D. Cal. 2020) .......... 22

*Noe v. Realty*,
19-CV-1455 (JHR)(RFT), 2024 U.S. Dist. LEXIS 130049 (S.D.N.Y. July 22, 2024) .......... 21

*Noe v. Ray Realty*,
2025 U.S. Dist. LEXIS 60059 (S.D.N.Y. Mar. 31, 2025).......... 21

*Opperman v. Path, Inc., Case*,
No. 13-cv-00453-JST, 2016 U.S. Dist. LEXIS 92403 (N.D. Cal. July 15, 2016) .......... 15, 21

*Parkinson v. Hyundai Motor Am.*,
258 F.R.D. 580 (C.D. Cal. 2008).......... 20

*Pioneer Electronics (USA), Inc. v. Superior Court*,
40 Cal.4th 360, (2007) .......... 12, 13

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) .......... 16

*Retta v. Millennium Prods., Inc.*,
CV 15-1801 PSG (AJWx), 2015 U.S. Dist. LEXIS 200673 (C.D. Cal. Aug. 31, 2015) .......... 19

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
806 F.2d 1393 (9th Cir. 1986) .......... 24

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) .......... 3, 4

*Shein v. Canon U.S.A., Inc.*,
Case No. CV 08-07323 CAS (Ex), 2009 U.S. Dist. LEXIS 94109 (C.D. Cal. Sept. 22, 2009) .......... 20

*St. Aubin v. Carbon Health Techs., Inc.*,
No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067 (N.D. Cal. Oct. 1, 2024) .......... 16

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) .......... 9

*Stasi v. Inmediata Health Grp. Corp.*,
501 F. Supp. 3d 898 (S.D. Cal. 2020) .......... 18

*BellAtl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 9

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015) .......... 16

*Valenzuela v. Nationwide Mut. Ins. Co.*,
686 F. Supp. 3d 969 (C.D. Cal. 2023) .......... 10

*Wolf v. Hewlett Packard Co.*,
CV 15-01221-BRO (GJSx), 2016 U.S. Dist. LEXIS 199618 (C.D. Cal. Apr. 18, 2016) .......... 19

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. Aug. 25, 2023) .......... 2

*Zinser v. Accufix Rsch. Inst., Inc.*,
253 F.3d 1180 (9th Cir.) .......... 21

**Statutes**

Cal. Civ. Code § 1798.100 .......... 13

Cal. Penal Code § 632(c) .......... 10

Cal. Penal Code § 632(a) .......... 12

Cal. Penal Code § 1546 .......... 14

Cal. Penal Code § 1546(d) .......... 14

Cal. Penal Code § 1546(h) .......... 14

Cal. Penal Code § 1546.1(a)(1) .......... 14

Cal. Penal Code § 1546.1(b) .......... 14

Cal. Penal Code § 1546.4(a) .......... 14

**Rules**

Fed. R. Civ. P. 26(b) .......... 20

**Constitutional Provisions**

California Constitution Article I § 1 .......... 12

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant Criteo Corp.'s ("Criteo"), through code embedded on CVS' website ("Website"), intercepted and eavesdropped on Plaintiff Brewer's ("Plaintiff")[1] and Class Members' confidential communications without their knowledge or consent. Worse, the information Criteo intercepted and eavesdropped on included medical conditions, immunization and vaccine appointments, prescriptions, and other Private Information, including their activity searching for and purchasing sensitive medical and healthcare products. Criteo's embedded code ("Criteo Trackers") were used solely for marketing and advertising purposes and not for any type of healthcare purpose, despite protections of personally identifiable information ("PII") and protected health information ("PHI") (collectively "Private Information") provided by state law, federal law, and industry standards.

Criteo is in the business of monetizing personal information for marketing and advertising purposes, and describes itself as partnering with some of the largest and most sophisticated consumer brands, retailers, commerce companies and media owners in the world "to capture user activity on their websites and mobile applications." ¶ 5.[2] The Criteo Trackers are invisible pieces of code embedded in a webpage that track how a visitor moves through and interacts with a website. ¶¶ 27, 63. Both directly from the Website and via Adobe's tracking technology on the Website, Criteo purposefully and intentionally directs requests to CVS regarding Website users' data, which it then assimilates into datasets and builds user profiles to allow advertisers to "micro-target" them based on certain desired characteristics. ¶¶ 8, 34, 64-65.

The contents of the communications thereby disclosed to Criteo, an undisclosed

---

[1] Plaintiff Getz voluntarily dismissed his claims. ECF No. 51. Criteo's motion to dismiss is directed solely to Plaintiff Brewer. *See* ECF No. 57.

[2] References to "¶ __" or "¶¶ __" are references to the FAC unless otherwise noted.

third party, include (i) which buttons a patient clicks including to purchase medical products, (ii) the exact text of their search queries, (iii) the titles of webpages they visit and medical products they view, (iv) vaccine and "MinuteClinic" appointment scheduling information, including the name of the vaccine and the symptoms for which treatment is sought or the medical procedure requested, and (v) and information about prescriptions managed including the name of the drug involved. ¶¶ 44, 56, 67-68. As a result, each time a user visits the Website to manage their health, Criteo uniquely identifies that person, catalogs the details of sensitive health information about the user obtained from the user's Website activities, and uses that data as part of their advertising and marketing ecosystem.[3]

Criteo's motion to dismiss and strike class and tolling allegations and memorandum in support (ECF No. 57, "Motion" or "Mot.") ignores the allegations in the First Amended Class Action Complaint (ECF No. 33, the "FAC") and the recent wave of decisions of numerous courts in California and throughout the country that have sustained similar complaints at the motion to dismiss stage, including against the vendor intercepting the data. *See, e.g.*, *In Re Meta Healthcare Pixel Litig.*, 713 F. Supp. 3d 650 (N.D. Cal. 2024) ("*Meta Pixel III*"); *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707 (D. Minn. Dec. 21, 2023); *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967 (S.D. Cal. Nov. 17, 2023) ("*Cousin II*"); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064 (N.D. Cal. Sept. 7, 2023) ("*Meta Pixel II*"); *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 975, 977 (N.D. Cal. Aug. 25, 2023); *Doe v. Regents of Univ. of Cal.*, 672 F. Supp. 3d 813 (N.D. Cal. May 8, 2023). In addition, the U.S. Department of Health and Human Services ("HHS") and the Federal Trade Commission ("FTC") have independently

[3] Plaintiff himself used the public portion of the website to purchase products related to a medical condition as well as sexual health products, around both of which a reasonable expectation of privacy was created between Plaintiff and CVS, and which Criteo eavesdropped on without consent.

concluded that tracking technologies on healthcare websites share PHI, and therefore entities like Criteo may not intercept or share the information without the consent of the person to whom the PHI pertains.[4]

The FAC clearly and sufficiently alleges that: (1) the Criteo Trackers are embedded on CVS' Website; (2) the Criteo Trackers intercept patients' communications with CVS and force patients' web browsers to duplicate those communications and disclose them to Criteo, both via Adobe and directly from CVS; (3) Plaintiff used CVS' Website to communicate Private Information, including searching for specific products relevant to his specific medical conditions; (4) Criteo intercepted, recorded, and eavesdropped on Plaintiff's confidential Private Information; and (5) Criteo used the data to target ads to Plaintiff and Class Members, including knowingly targeting Plaintiff and California Subclass Members in California. CVS' Motion should be denied.

## II. THE COURT HAS PERSONAL JURISDICTION OVER CRITEO.

### A. Legal Standard Under Rule 12(b)(2)

When a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction is based only on the pleadings, the plaintiff need only make a prima facie showing of jurisdictional facts over a defendant. *Schwarzenegger v. Fred Martin Motor Co.*, 374

---

[4] *See Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates*, U.S. Health & Hum. Servs. https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html (last visited Oct. 1, 2025) ("Tracking technologies on a regulated entity's unauthenticated webpage that addresses specific symptoms or health conditions, such as pregnancy or miscarriage, or that permits individuals to search for doctors or schedule appointments without entering credentials may have access to PHI in certain circumstances."); *FTC-HHS Joint Letter re: Use of Online Tracking Technologies*, https://www.ftc.gov/system/files/ftc_gov/pdf/FTC-OCR-Letter-Third-Party-Trackers-07-20-2023.pdf (last visited Oct. 1, 2025). ("Impermissible disclosures of an individual's personal health information" include "where an individual seeks medical treatment"; disclosure of such information without a consumer's authorization violates FTC Act and FTC's Health Breach Notification Rule). ¶¶ 81-82.

F.3d 797, 800 (9th Cir. 2004). The Ninth Circuit's three-part test for specific personal jurisdiction is:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802.

California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution; therefore, the Court's exercise of jurisdiction must comport with federal due process. *Global Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1106 (9th Cir. 2020). Federal due process permits specific personal jurisdiction where the defendant has minimum contacts with the forum over "'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Id.* (quoting *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

**B. The Court Has Specific Personal Jurisdiction Over Criteo.**

**1. Criteo Purposely Directed Its Tracking Code to California.**

Although Plaintiff acknowledges Criteo's United States headquarters is not in California, ¶ 17, and therefore the Court does not have general personal jurisdiction over Criteo, Plaintiff clearly alleges the Court has specific personal jurisdiction over Criteo where it contracted with CVS and purposely directed its actions to CVS' Website to obtain data about the users of the Website nationwide, including in California. *See* ¶¶ 8, 34. Plaintiff alleges Criteo then assimilated his and Class Members' (including California Subclass Members') data into datasets and built user profiles to allow advertisers to "micro-target" them with advertisements based on certain desired

characteristics including geographic location. ¶¶ 64-65.

In the Ninth Circuit, the test for purposeful direction as to tort claims itself has three elements: that the defendant (1) committed an intentional act, that was (2) expressly aimed at the forum state, and (3) which caused harm that the defendant knew would be suffered in the forum state. *Briskin v. Shopify, Inc.*, 135 F.4th 739, 751 (9th Cir. 2025). This test originates in the U.S. Supreme Court decision *Calder v. Jones*, 465 U.S. 783 (1984), in which a California court was held to have specific personal jurisdiction over the out-of-state National Enquirer, due to an allegedly libelous story distributed in California regarding a well-known actress who resided in California and therefore harming her in California. *Id.* (citing *Calder*, 465 U.S. at 784-86). Accordingly, the Supreme Court held that "the defendants' intentional and allegedly tortious actions 'were expressly aimed at California.'" *Id.* (citing *Calder*, 465 U.S. at 789-90). This Court has employed the *Calder* effects "purposeful direction" test for privacy and data use violations. *Moody v. Textron Inc.*, 2:25-cv-01032-MWC (Ex), 2025 U.S. Dist. LEXIS 140667, at *8 (C.D. Cal. July 2, 2025) (Court, J.).

The first prong of the *Calder* test is clearly satisfied here because Criteo acted intentionally in contracting with CVS and in intercepting confidential communications of CVS Website users. *See id.* (stating the "standard focuses on the defendant's deliberate conduct, not the intent to cause harm" and holding the defendant website's fulfilment of GET requests were intentional so to satisfy the first prong of *Calder*); *Doe v. Call-On Doc, Inc.*, Case No.: 24cv2095-GPC(KSC), 2025 U.S. Dist. LEXIS 113269, at *23 (S.D. Cal. June 13, 2025) ("Plaintiff has made a prima facie showing that Defendant knowingly and internationally embedded and configured Google Analytics and TikTok Pixel on its website."). In the Motion, Criteo conflates the first prong of intentional conduct with the second prong of whether the intentional conduct is expressly aimed at the forum state, *see* Mot. at 3-5, which is also satisfied here.

Criteo's interception of the private data of CVS Website users from throughout

the country, including in California, in order to create audience maps of CVS' customers by their geographic location, satisfies the second *Calder* prong. Contrary to Criteo's argument that Criteo needed to specifically target California to expose itself to personal jurisdiction, the *en banc* Ninth Circuit in *Briskin* overruled the concept of "forum-specific focus" or "differential targeting." *Briskin*, 135 F.4th at 757. Instead, *Brisken* holds a defendant expressly aims wrongful conduct toward a forum state "even if that platform cultivates a nationwide audience for commercial gain." *Id.* (internal citations omitted). Criteo cultivates just such a nationwide audience. It collects Website users' precise geolocation data, both directly from CVS and via Adobe, and uses that location data to connect its advertising customers with "audiences," including in California.[5]

This is distinct from the situation in *Moody*, 2025 U.S. Dist. LEXIS 140667, where the defendant was the party "fulfilling GET requests to the Data Companies through its Website's embedded software." *Id.* at *8. In other words, the defendant contesting personal jurisdiction in *Moody* was the operator of the website, analogous to CVS in this case. Here, the situation is reversed. Criteo purposely directed the GET requests to a nationwide audience on CVS' website, including in California. It is not the party merely *fulfilling* GET requests, *see Moody*, 2025 U.S. Dist. LEXIS 140667, at *12 (quoting *Clinton v. Montes*, No. CV 11-10062-R (SH), 2012 U.S. Dist. LEXIS 195926 (C.D. Cal. July 16, 2012) ("[T]he mere availability of [a music] album to purchasers in California without more does not create personal jurisdiction.")), but rather the party directing the GET requests to Website users in California.

Satisfying the third prong of the *Calder* test, Criteo then uses the data of Plaintiff

---

[5] Corroborating its precise knowledge of users' locations, Criteo states its product allows advertisers to target individuals in any specific radius around any specific location in the United States. *See* https://help.criteo.com/kb/guide/en/about-audiences-0EJNOqUqYu/Steps/842036,1683194,1683197#:~:text=Location%20segments%20are%20based%20on%20a%20variety,business%20while%20also%20respecting%20user%20privacy%20settings.

and other California Website users, which it knows at that point to originate from individuals who reside in California, to inflict harm on them in California, by matching them with Criteo's advertiser customers based on their characteristics and subjecting them to targeted advertising where they live. *See, e.g.*, ¶ 104 ("Plaintiff Brewer received targeted advertisements as he browsed online webpages, both on the Website and on other websites, relating to his private activity on the Website."). In contrast, in this Court's most recent opinion in the *Moody* case, on the motion to dismiss the SAC, the Court pointed out the out-of-state defendant in question did not subsequently use the data it provided to another party to do anything, let alone to inflict harm:

> Even though Defendant fulfills the Data Companies' GET requests, it is not clear that Defendant does anything further with Plaintif's data. Without more, Plaintiff has not satisfied the third element of the purposeful direction test.

*Moody*, ECF No. 34, at 9. Here, Plaintiff clearly alleges Criteo *does* use his and Class Members' data to offer its advertiser customers the ability to "target new customers whose browsing and purchasing behaviors resemble its existing users." ¶ 64. And Criteo knows this will result in harm to California citizens, like Plaintiff, including in the form of targeted advertising.

**2. Plaintiff's Claims *Arise Out of* Criteo's Purposeful Direction of its Tracking Code to California.**

Plaintiff's claims all arise out of the Criteo Trackers on CVS' Website. Criteo argues this case is like *Heiting v. Marriott Int'l*, 743 F. Supp. 3d 1163 (C.D. Cal. 2024), where the court held Marriott's physical hotel locations in California did not create a basis for personal jurisdiction as to claims regarding Marritott's *website*. However, Plaintiff is not basing his personal jurisdiction on Criteo's offices in California or any other of its contacts with California unrelated to his claims for Criteo's website tracking. Thus, the first two prongs to show specific personal jurisdiction under *Schwarzenegger* are met.

**3. Jurisdiction Comports with Fair Play and Substantial Justice.**

Plaintiff also satisfies the third *Schwarzenegger* prong to show specific personal jurisdiction, that exercising jurisdiction over Criteo comports with fair play and substantial justice. The Ninth Circuit has set out the following balancing test for this analysis:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Briskin*, 135 F.4th at 761 (citing *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1096 (9th Cir. 2023)). Criteo does not engage with any of these factors in the Motion, relying on its (incorrect) contention that Plaintiff fails to meet his burden on the first two prongs to show specific personal jurisdiction. Mot. at 6. This is the same as in *Briskin*, where "Shopify [did] not ague that it would be burdensome to defend [the] case in California; that jurisdiction [there] would create any conflict with the sovereignty of New York or Delaware [the same states where Criteo has general personal jurisdiction] . . .; that California lacks an interest in the enforcement of laws it enacted to protect California consumers' privacy and data security rights and from deceptive or unfair practices;[6] or that California would not or could not provide an efficient resolution of this dispute." *Briskin*, 135 F.4th at 761 (concluding that the balancing factors "weigh in favor of holding that the exercise of personal jurisdiction in California is reasonable" and commenting that, even if the exercise of specific jurisdiction in California led to specific jurisdiction in all 50 states, it would still not be unfair to exercise that jurisdiction, to the extent those

---

[6] In fact, Criteo already engages with California's data privacy laws in a number of ways, including in maintaining a separate privacy policy under the California Consumer Privacy Act. *See* https://www.criteo.com/privacy/ccpa-privacy-policy/.

states have similar data privacy laws as California). This Court should conclude the same here as to Criteo.

Plaintiff has met his burden to show personal jurisdiction under the Ninth Circuit's tests, and Criteo's Rule 12(b)(2) motion should be denied.

## III. PLAINTIFF STATES A CLAIM AGAINST CRITEO AS TO EACH CAUSE OF ACTION.

### A. Legal Standard Under Rule 12(b)(6)

To survive a motion to dismiss, a complaint must contain sufficient factual matter, "accepted as true," to "state a claim of relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility, however, is not certainty or probability. It "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *BellAtl. Corp. v. Twombly,* 550 U.S. 544, 555-56 (2007).

In other words, a complaint may advance even if it appears that "actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* Thus, plaintiffs do not need to substantiate their claims at the pleadings stage, and the complaint "may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *implausible*." *Starr v. Baca*, 652 F.3d 1202, 1216-1217 (9th Cir. 2011) (emphasis in original).

### B. Plaintiff States a CIPA § 631(a) Claim.

Criteo argues Plaintiff does not allege that "Criteo read or attempted to read his communications while they were in transit." Mot. at 7-9. To be sure, the communications *were* intercepted while in transit. *See* Pl.'s Opp. to CVS Mot. to Dismiss, Sec. III(C)(1)(b). However, Criteo ignores several other bases that can each independently establish a violation of CIPA Section 631(a). *See* ¶ 20. Specifically, Criteo ignores

Plaintiff's allegations that it "used, or attempted to use" the information "for any purpose," and that it aided, agreed or conspired with CVS to do so, which provide independent grounds to state a claim against Criteo under Section 631(a). *Id.* Quite simply, whether Criteo "read" the intercepted information "while in transit" is immaterial to whether Plaintiff has stated a claim. *Call-On Doc Inc.*, 2025 U.S. Dist. LEXIS 113269, at *33-34; *Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 978 (C.D. Cal. 2023); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022).

Criteo also argues Plaintiff fails to state a CIPA § 631(a) claim because he has suffered no injury "as argued by CVS." Mot. at 9. Plaintiff incorporates his response to CVS' argument on this point, and addresses Criteo's "no intent" argument in Section III(E), *supra*.

**C. Plaintiff States a CIPA § 632(a) Claim.**

Criteo argues Plaintiff fails to allege he engaged in any confidential communications as defined by Section 632(a). Mot. 10-13. While Criteo suggests that any privacy expectation Plaintiff had in his communications was not "objectively reasonable," under Cal. Penal Code 632(c) a "confidential communication" is "any communication carried on in circumstances as may reasonably indicate that any party to the communication desired it to be confined to the parties thereto." Here, Plaintiff does not rely on a subjective expectation of privacy as to his Website communications but supports his allegations with objective facts that he used the Website to "research over-the-counter medical products relating to a serious medical condition affecting [him]," "searched for these over-the-counter products on the Website and viewed the corresponding product pages after performing his searches," and later "saw advertisements for medications relating to that medical condition and related symptoms." ¶¶ 104-05. In addition, he used the Website to search for and purchase sexual health products and later saw advertisements for similar products. *Id.*

These allegations more than meet Plaintiff's pleading burden to show his

communications were reasonably confidential.[7] *See Doe v. GoodRx Holdings, Inc.*, Case No. 23-cv-00501-AMO, 2025 U.S. Dist. LEXIS 140287, at *40 (N.D. Cal. July 22, 2025) ("Plaintiffs' interactions with the GoodRx platform—by seeking discounts on specific prescriptions, seeking treatment for specific conditions, and disclosing symptoms—constitute confidential communications."). Plaintiff need not name at the pleading stage the specific health-related condition or specific products he allegedly browsed or purchased on the Website to meet his pleading burden of "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678; *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 956 (N.D. Cal. 2023) (citing *Byars v. Goodyear Tire & Rubber Co.*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023) ("There is no requirement that [plaintiff] specifically allege the exact contents of her communications with Goodyear": "Plaintiff merely needs to show that the contents were not record information such as her name and address.")) Plaintiff has thus plausibility alleged a reasonable expectation of privacy in this personal health information. *Davis v. Facebook, Inc. (In re Facebook Inc. Internet Tracking Litig.)*, 956 F.3d 589, 604 (9th Cir. 2020) ("[V]iewing the allegations in the light most favorable to Plaintiffs, as we must at this stage, the allegations that Facebook allegedly compiled highly personalized profiles from sensitive browsing histories and habits prevent us from concluding that the Plaintiffs have no reasonable expectation of privacy.").

Plaintiff also alleges that this information was disclosed directly to Criteo. ¶ 8 ("CVS disclosed Plaintiffs' and Class Members' Private Information . . . directly to Criteo"). This information was specific enough to permit third parties, including Criteo, to target ads specifically at Plaintiff and other class members. ¶¶ 34 ("Adobe's Demdex server also synchronizes users' unique identifiers with third-party advertising partners

---

[7] Plaintiff has also demonstrated he was injured for the reasons stated in his opposition to CVS' Motion to Dismiss, at Section III(C)(c). Plaintiff addresses Criteo's "no intent" argument in Section III(E), *supra*

like Criteo . . . ensuring that even non-logged-in users see targeted ads based on their browsing behavior"); 44 ("upon information and belief, Adobe shares information it intercepts with Criteo, including but not limited to these keyword searches and unique identifiers, permitting Criteo to further enhance its own customer profiles by synchronizing and cross referencing Criteo's data with information Adobe collects and stores in its ad ecosystem"); 63 ("Criteo offered snippets of code to CVS and other tracking services ('Criteo Trackers'), which were designed to track users' activity on the Website, unbeknownst to those users, *together with unique identifiers capable of identifying them*, for Criteo's and other third-parties' marketing uses") (emphasis added). Criteo simply ignores these allegations. *See* Mot. at 13.

Plaintiff has stated a claim under CIPA § 632(a).

**D. Plaintiff's Invasion of Privacy Claims Are Well-Pled.**

Plaintiff pleads two cognizable causes of action for invasion of privacy. The first, intrusion on seclusion at common law, requires Plaintiff to allege facts showing that (1) Defendants "intentionally intrude[d] into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy"; and (2) the intrusion "occur[red] in a manner highly offensive to a reasonable person." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009). The second, violation of the right to privacy provided by Article I, section 1 of the California Constitution, requires Plaintiff to allege (1) "a legally protected privacy interest"; (2) a reasonable expectation of privacy; and (3) an intrusion "constitut[ing] an egregious breach of the social norms" that is "highly offensive." *Id.* at 287.

Given the similarity of these legal theories, "courts consider the claims together when both are invoked and ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) ("*Facebook Tracking*"). Both branches of this inquiry are mixed questions of law and fact. *Pioneer Electronics (USA), Inc. v.*

*Superior Court*, 40 Cal.4th 360, 370, (2007) (citing *Hill v. Nat'l Collegiate Athletic Assn*., 7 Cal. 4th 1, 40 (1994)). Only if the allegations "show no reasonable expectation of privacy or an insubstantial impact on privacy interests, the question of invasion may be adjudicated as a matter of law." *Id*. at 370 (citing *Hill*, 7 Cal.4th at 40).

Criteo's challenge to Plaintiff's invasion of privacy claims comes down to its contention that he did not have a reasonable expectation of privacy in the use and collection of his IP address and other personal health data that Defendants collected without his consent. But under any reading of the Complaint, Plaintiff's allegations compel the conclusion at the pleading stage that he had a reasonable expectation of privacy in the totality of data Defendants tracked and disclosed. *See, e.g.*, ¶¶ 26-27, 66, 77-85, 182-86. Specifically, Plaintiff alleges the Trackers collect from him and other Website visitors, *inter alia*, the user's IP address and other routing and signaling data as well as "information about Plaintiffs' and Class Members' medical conditions, immunizations and vaccines, prescriptions, and other Private Information, including their activity searching for and purchasing sensitive healthcare products." ¶ 7. Importantly, IP addresses reveal the geographic location of the internet user, often including information about the country, city, county, approximate latitude and longitude coordinates, or even the internet service provider associated with the IP address. ¶ 67, 83. Plaintiff also alleges how IP addresses and other information collected by the Trackers, such as cookies and unique identifiers, are compiled into a unique fingerprint used to link multiple IP addresses to the same user over time, creating a comprehensive record of the user's geographic locations and Website activities across different devices, which Defendants uses to enhance their marketing and advertising capabilities, prioritizing its commercial interests at the expense of users' privacy rights. FAC ¶¶ 31-32, 63, 85.

First, California law has expressly recognized a legally protected privacy interest in IP addresses. For example, in 2018, the California Legislature enacted into law the California Consumer Privacy Act of 2018 ("CCPA"), Cal. Civ. Code § 1798.100 et seq.,

which recognizes that "[i]dentifiers such as a[n] Internet Protocol address," constitute a consumer's "personal information," (Civ. Code § 1798.140(v)(1)(A)). Defendants conveniently ignore that the CCPA's recognition supports a reasonable expectation of privacy in such personal information.[8] *See In re Google RTB Consumer Privacy Litig.*, 606 F. Supp. 3d 935, 946-47 (N.D. Cal. 2022) ("[P]laintiffs allege that Google sells sensitive personal information such as plaintiff's IP address . . . Google argues that such information is routinely shared and thus cannot support a reasonable expectation of privacy. Not so. First, such information is personal information under California law and parties generally maintain a reasonable expectation in their personal information."). The court in *In re Google RTB* also recognized a reasonable expectation of privacy in the collective information Defendants gathered, which can be compiled into unique profiles linking users across geographic locations and devices. *Id*. (citing *Facebook Tracking*, 956 F.3d at 603) (reasonable expectation of privacy where Facebook allegedly collected and created "highly personalized profiles from [plaintiffs'] sensitive browsing histories and habits.").

Here, not only was Criteo intercepting Plaintiff's IP address but his personal health information, including medications and sexual health issues, which is far more personal and sensitive than the IP addresses courts and other governmental entities have already determined qualify as personal information. ¶ 83 (HHS's definition of individually identifiable health information includes "IP address or geographic location"); 104 ("after

---

[8] Additionally, in 2015, California's Legislature enacted California's Electronic Communications Privacy Act ("CECPA"), Cal. Penal Code § 1546 *et seq.*, which precludes the government from compelling internet service providers to provide a user's IP addresses without a warrant or other limited exception. (Penal Code §§ 1546(d) & (h), 1546.1(a)(1) & (b), 1546.4(a) (2015) (stating that government's violation of CECPA by compelling production of or access to IP address of individual or device participating in electronic communication without warrant or other limited exception can result in suppression of evidence at trial).

searching on the Website for products related to his medical condition, Plaintiff saw advertisements for medications relating to that medical condition and related symptoms. He also saw advertisements for similar sexual health products as those he purchased on the Website").

Plaintiff has thus alleged a "highly offensive" intrusion, and Criteo's contention otherwise is merely its own opinion. Courts inform their assessment of an intrusion's offensiveness with "a holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive." *Hernandez*, 47 Cal. 4th at 287. This calculus "focuses on the degree to which the intrusion is unacceptable as a matter of public policy." *Id.*

Criteo's conduct in surreptitiously collecting IP addresses and personal medical, sexual, and health data from millions of unsuspecting users and then sharing that data is indeed "highly offensive." *See, e.g., Hill*, 7 Cal. 4th at 25 (holding that an individual has "the right to define one's circle of intimacy—to choose who shall see beneath the quotidian mask. Loss of control over which 'face' one puts on may result in literal loss of self-identity, and is humiliating beneath the gaze of those whose curiosity treats a human being as an object."). Here, Criteo's treatment of Plaintiff and Class Members as sources of data to be exploited is highly offensive, particularly given the sensitive nature of the information at issue.

Regardless, given the fact-intensive inquiry, the question of "[w]hether the conduct was highly offensive can rarely be resolved at the pleading stage." *In re Google RTB Consumer Privacy Litig.*, 606 F. Supp. 3d 935, 946 (N.D. Cal. 2022) (citing *Facebook Tracking*, 956 F. 3d at 606 (9th Cir. 2020)); *Opperman.*, 205 F. Supp. 3d at 1079 (noting that customs and habits are very much in flux, tracking technology is still changing, and "a judge should be cautious before substituting his or her judgment for that of the community"); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 943 (N.D. Cal.

2023) ("Under California law, courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is.").[9]

**E. Plaintiff Alleges Criteo Acted Intentionally and Wilfully.**

In order to allege that Criteo acted with the necessary intent under CIPA, Plaintiff need only plead facts showing that it "acted consciously and deliberately with the goal of intercepting wire communications." *United States v. Christensen*, 828 F.3d 763, 775 (9th Cir. 2015). As another court in this District has found under similar circumstances:

> Plaintiffs allege that Defendant intentionally utilized tracking technologies to collect, use, and distribute Plaintiffs' sensitive information to third parties like Facebook. Plaintiffs specifically allege that Defendant intentionally configured the Pixels to capture the 'characteristics' of users' communications with Defendant's websites, including their IP addresses and Facebook IDs, as well as the 'content' of users' communications, which includes the links, pages, and tabs users click and view and the search terms they employ. These allegations, taken as true and viewed in the light most favorable to Plaintiffs, demonstrate that Defendant 'acted consciously and deliberately with the goal of intercepting wire communications.'

*R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024) (internal citations omitted); *see also St. Aubin v. Carbon Health Techs., Inc.*, No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067, at *21 (N.D. Cal. Oct. 1, 2024) (finding plaintiff sufficiently pled intent by alleging that Defendant "aided, agreed with, employed, or conspired with Facebook" to track users' communications, as Plaintiff pleads Criteo does here); *GoodRx Holdings, Inc.*, 2025 U.S. Dist. LEXIS 140287, at *22 ("Plaintiffs allege the Moving Defendants knew the incorporation of their tracking technologies on websites and mobile apps resulted in the interception of sensitive health information, that they did not take any

---

[9] Plaintiff addresses Criteo's "no intent" argument in Section III(E), *supra*. Furthermore, contrary to Criteo's suggestion that Plaintiff only seeks monetary damages for his constitutional privacy claim, Plaintiff specifically requests "such other relief as the Court may deem just and proper," ¶ 191, and requests "injunctive relief as pleaded or as the Court may deem proper," ¶ 213.

steps to prevent the interception of this data, that this conduct was intentional despite knowing about the resulting privacy violations to Plaintiffs, and that the Moving Defendants proceeded to generate billions in advertising revenue based on the information intercepted by its tracking technologies. These facts are sufficient to plausibly plead intent") (internal citations omitted). Here, Plaintiff has adequately pled that Criteo's actions were not accidental or mistaken but that the Trackers did exactly what they were supposed to do, and that Criteo acted intentionally by employing them. ¶¶ 130, 133, 149, 195.

Criteo's intent is, however, ultimately a question of fact not appropriate for pre-discovery adjudication. *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1076 (N.D. Cal. 2023) ("What Meta's true intent is, what steps it actually took to prevent receipt of health information, the efficacy of its filtering tools, and the technological feasibility of implementing other measures to prevent the transfer of health information, all turn on disputed questions of fact that need development on a full evidentiary record"). Nevertheless, Plaintiff has pled facts sufficient to show that Criteo acted with the necessary intent to support his statutory and common law claims.

### F. Plaintiff's Negligence and Neglignece *Per Se* Claims Are Well-Pled.

Criteo argues that the negligence claim fails because it has no duty safeguard and protect Plaintiff's PHI from disclosure, it did not breach any duty if it existed, and Plaintiff has not been injured.

First, Plaintiff has alleged Criteo's duty to safeguard Private Information sufficient for a common law negligence claim or negligence *per se* claim under California law, and subsequent breach of that duty. ¶¶ 176, 206-07. This duty arose under CIPA itself. ¶¶ 19-22 (citing *Matera v. Google Inc.*, No. 15-cv-04062, 2016 U.S. Dist. LEXIS 107918, at *61-64 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *In re Meta*

*Pixel Healthcare Litig.*, 647 F. Supp. 3d at 795. And, while Criteo may not be a covered "health care provider" under HIPAA, its breach of the duties identified in HIPAA are evidence of its breach of industry standards with respect to protecting health information and further support Plaintiff's negligence allegations. *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 914 (S.D. Cal. 2020) ("Plaintiffs repeatedly, and in a variety of ways, allege that Inmediata owed them a duty to safeguard their personal and medical information as consistent with medical privacy statutes and industry standards . . . District courts have found comparable allegations sufficient to survive motions to dismiss negligence claims.").

Criteo is also incorrect that no damage has been done to Plaintiff cognizable for a negligence claim, where his intangible property (his PHI) has been accessed without his consent. *See, e.g.*, *Mehta v. Robinhood Fin. LLC*, No. 21-cv-01013-SVK, 2021 U.S. Dist. LEXIS 253790, at *20-21 (N.D. Cal. Sept. 8, 2021) (loss of sensitive personal information and loss of control over such information establish negligence damages). Beyond this, Plaintiff also alleges he has suffered actual harm where his PHI has *already plausibly been misused* by third parties including Adobe, Criteo, and/or Medallia. ¶¶ 26, 38, 104 (PHI used for targeted advertising). These are sufficient injuries to support Plaintiff's negligence claim, and Criteo's motion to dismiss this claim should be denied.

## IV. THE NATIONWIDE CLASS ALLEGATIONS SHOULD NOT BE STRICKEN.

Criteo's request (Mot. at 20-24) to strike Plaintiffs' nationwide class allegations for invasion of privacy and negligence under Rule 12(f) is improper.[10] Motions to strike are disfavored and rarely granted because they require courts to resolve fact-intensive issues better addressed on a full record, and courts in this Circuit accordingly repeatedly

---

[10] Criteo also incorporates CVS' arguments on striking nationwide class allegations. Mot. at 20-21. In response, Plaintiff incorporates his arguments in opposition to CVS. *See* Pl.'s Opp. to CVS Mot., Sec. IV.

hold that class allegations should not be stricken at the pleading stage unless it is clear that no class can be certified. Indeed, only if this Court is "convinced that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed" may the allegations be stricken. *See In re Apple, AT&T iPad Unlimited Data Plan Litig.*, No. C-10-02553 RMW, 2012 U.S. Dist. LEXIS 88413, at *7 (N.D. Cal. June 26, 2012); *see also Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1245 (C.D. Cal. 2011) (citing cases). That is not the case here.

Criteo argues applying California law to non-California resident class members would violate due process and California's presumption against extraterritorial application, even Plaintiff is a resident of California, ¶ 14, and accessed Defendants' website and provided his Private Information, including viewing of sensitive health-related products, while in California, ¶ 102. In addition, it has been alleged that a substantial part of the events giving rise to Plaintiff's claims occurred in California, ¶ 11.

Criteo's arguments as to non-California residents are premature, requiring factual determinations about where Defendants' conduct occurred, how their business practices were managed, and the extent of their contacts with California. Courts consistently reject efforts to strike or dismiss class allegations at the pleading stage, recognizing that such challenges are premature before a factual record and discovery are developed. *See, e.g.*, *Wolf v. Hewlett Packard Co.*, CV 15-01221-BRO (GJSx), 2016 U.S. Dist. LEXIS 199618, at *19-20 (C.D. Cal. Apr. 18, 2016) (collecting cases); *Retta v. Millennium Prods., Inc.,* CV 15-1801 PSG (AJWx), 2015 U.S. Dist. LEXIS 200673, at *34-35 (C.D. Cal. Aug. 31, 2015); *Gooden v. Suntrust Mortg., Inc.*, Case No. 2:11-cv-02595-JAM-DAD, 2012 U.S. Dist. LEXIS 40267, at *21-22 (E.D. Cal. Mar. 23, 2012); *Beal v. Lifetouch, Inc.*, Case No. CV 10-8454-JST (MLGx), 2011 U.S. Dist. LEXIS 33758, at *20-21 (C.D. Cal. Mar. 15, 2011).

Additionally, courts in California routinely find due process not violated and the application of California law to nationwide classes proper where defendants have

contacts with California and a non-insignificant number of class members are harmed in California. *See, e.g.*, *Parkinson v. Hyundai Motor Am.,* 258 F.R.D. 580, 589 (C.D. Cal. 2008) (nationwide class applying California law permitted given defendant's California presence and concentration of class members in the state); *Keilholtz v. Lennox Hearth Products Inc.,* 268 F.R.D. 330, 339–40 (N.D. Cal. 2010) (applying California law to a nationwide class where nearly one-fifth of sales occurred in California).[11]

Criteo next leans heavily on *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012). But *Mazza* was decided at class certification, not on the pleadings. Courts across this Circuit recognize that *Mazza* does not create a *per se* bar to nationwide claims at the outset of litigation. *See Allen v. Hylands, Inc.,* CV 12-01150 DMG (MANx), 2012 U.S. Dist. LEXIS 61606, at *5 (C.D. Cal. May 2, 2012) ("[*Mazza*] does not categorically rule out application of California law to out-of-state class members."). For example, in *In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1237 (N.D. Cal. 2012), the court rejected the defendant's reliance on *Mazza*, explaining that *Mazza* was decided at class certification, not on a motion to strike, and that "a detailed choice-of-law analysis would be inappropriate" absent a factual record. Indeed, the choice of law analysis put forward by Criteo, and buttressed with its citations to *Mazza*, requires a fact-intensive "governmental interest" analysis that cannot be properly conducted on the bare pleadings. *See Shein v. Canon U.S.A., Inc.*, Case No. CV 08-07323 CAS (Ex), 2009 U.S. Dist. LEXIS 94109, at *34 (C.D. Cal. Sept. 22, 2009) ("The Court finds that [conducting a choice of law analysis about the propriety of the application of California law is] more properly decided on a motion for class certification, after the parties have had an opportunity to conduct class discovery and develop a record."). Thus, the Court should

[11] Criteo's arguments that nationwide class allegations should be struck now to avoid the burdens of classwide discovery are also misguided because the Federal Rules already contain adequate tools to ensure discovery remains proportional. *See* Fed. R. Civ. P. 26(b).

reject Criteo's attempt to have it engage in a lengthy choice-of-law analysis (which is tantamount to Criteo short-circuiting to class certification before discovery) and deny the motion to strike.

In the event the Court does choose to entertain Criteo's improper and premature arguments to strike the nationwide class allegations against it, those arguments still fail. Criteo argues that variations in state negligence and privacy laws are a basis to strike the nationwide class allegations, but its cited case law is inapposite. For example, *Marsh v. First Bank of Del.*, Case No. 11-cv-05226-WHO, 2014 U.S. Dist. LEXIS 69368 (N.D. Cal. May 19, 2014) and *Zinser v. Accufix Rsch. Inst., Inc.,* 253 F.3d 1180, 1197 (9th Cir.), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001) were decided at class certification after in-depth choice of law analyses and lend no support for the notion of striking the allegations on a Rule 12 motion. In *Opperman v. Path, Inc.,* Case No. 13-cv-00453-JST, 2016 U.S. Dist. LEXIS 92403 (N.D. Cal. July 15, 2016) (cited by Criteo) another decision on class certification not at the motion to dismiss stage, after initially finding that there existed differences in the state laws on invasion of privacy/intrusion on seclusion, the court went on to certify a nationwide class for invasion of privacy/ intrusion on seclusion under California law because Defendants failed to carry their burden of establishing, "except at the greatest level of generality," the interests of other jurisdictions. *Id*. at *33.[12]

In addition, slight differences in state laws do not preclude certification as a matter

---

[12] The additional out-of-circuit cases cited by Criteo have no bearing on the question of whether a motion to strike class allegations is proper here. One case asked the court to recognize a common law cause of action for intrusion upon seclusion in Wyoming, *Howard v. Aspen Way Enters., Inc.*, 2017 WY 152, ¶ 8, 406 P.3d 1271, 1273 (Wyo. 2017), and the other found New York does not recognize this cause of action, *Noe v. Realty,* 19-CV-1455 (JHR) (RFT), 2024 U.S. Dist. LEXIS 130049, at *51-52 (S.D.N.Y. July 22, 2024), *report and recommendation adopted sub nom. Noe v. Ray Realty*, 2025 U.S. Dist. LEXIS 60059 (S.D.N.Y. Mar. 31, 2025), *appeal dismissed* (June 5, 2025).

of law, especially where (as here) claims are substantially similar from state to state. *See Krantz v. Old Copper Co., Inc.*, Case No. 2:24-cv-10031-SPG-BFM, 2025 U.S. Dist. LEXIS 155671, at *44-45 (C.D. Cal. Aug. 11, 2025) (denying motion to strike nationwide claim as to breach of contract because those claims "exhibit substantial uniformity from state to state"). Finally, to the extent variations exists—at class certification or trial—courts have long managed such variations through subclasses, special jury instructions, or limiting common issues.

Finally, Criteo's arguments as to the impairment of other states interests as a result of applying California law are premature and cursory, exactly what was rejected in *Opperman*. Criteo cites *McFall v. Perrigo Co.*, 2:20-cv-07752-FLA (MRWx), 2021 U.S. Dist. LEXIS 109451 (C.D. Cal. Apr. 15, 2021), which had materially different facts from the instant case. In *McFall*, there were *no facts* constituting any connection between California and Defendants' conduct, and Plaintiffs conceded at oral argument that non-California putative class members may not be able to assert valid claims under California law. Here, the complaint details the connection to California, and no such admission has been made by Plaintiffs. In *Mosqueda v. Am. Honda Motor Co., Inc.*, 443 F. Supp. 3d 1115, 1125 (C.D. Cal. 2020), the court was convinced because Defendant "went to great lengths to analyze and substantiate the material differences between the relevant state laws." Here, however, Criteo has not conducted any such analysis.

Therefore, Plaintiffs' nationwide class allegations should remain in the case and be evaluated at the proper stage—class certification—on a full evidentiary record.

## V. THE TOLLING ALLEGATIONS SHOULD NOT BE STRICKEN.[13]

Plaintiff sufficiently alleges that Class Members could not have discovered their information was disclosed until the action commenced. ¶¶ 111-14. Plaintiff alleges that

---

[13] Plaintiff notes that his individual claims would not be barred even absent the application of the discovery rule because he visited the Website within the year prior to filing the complaint. ¶ 102.

he did not know, and did not have reason to know, of Criteo's unauthorized tracking and disclosure of his personal information when he visited the Website. *See e.g.*, ¶¶ 40 (The trackers intercept users' communications "without the Website users' knowledge or consent."); 113 ("Plaintiffs had no reason to believe their personal information was being intercepted."); 184 (Defendants "secretly intercept[ed]" the communications.). Plaintiff could not and did not learn of these hidden activities until he was informed of them by counsel, ¶ 112, based on their own investigation and review of the underlying code and technology, as detailed throughout the Complaint. It is not reasonable to expect a layperson like Plaintiff or Class Members to be aware of Defendants' highly technical tracking scheme simply by visiting the Website. ¶ 106 ("Plaintiff Brewer was not aware of the tracking technology operating on the Website and did not consent to CVS' disclosure of his Private Information as described above.").

Plaintiff has thus alleged facts sufficient to show that tolling is appropriate here. Although a plaintiff bringing a time-barred claim is required to "allege specific facts explaining the failure to learn of the basis for the claim," the plaintiff is not required to prove those facts or plead with particularity each and every allegation. *Abels v. Bank of Am., N.A.*, Case No.: 11-CV-208 YGR, 2012 U.S. Dist. LEXIS 28125, at *11-12 (N.D. Cal. Mar. 2, 2012). Any remaining questions about the timing and scope of the class period (or about whether Plaintiff was shown disclosures on the Website regarding the tracking in question) must be answered only following appropriate discovery. *Balanzar v. Fid. Brokerage Servs., LLC*, 654 F. Supp. 3d 1075, 1083 (S.D. Cal. 2023) ("Whether Plaintiff exercised reasonable diligence or was alerted to the fact her voiceprint was subject to recordation and examination prior to September 11, 2021 is another question that should be addressed after discovery"); *Doe v. Fullstory, Inc.*, 712 F. Supp. 3d 1244, 1255 (N.D. Cal. 2024) ("While defendants argue that plaintiff cannot invoke the discovery rule unless she alleges the specific 'time and manner' of her discovery, that argument is not persuasive given the type of case this is—based on defendants' use of

highly technical proprietary software—and given plaintiff's clear statement that 'the earliest' plaintiff could have known of her injury was shortly before filing. That is sufficient for now") (internal record citation omitted).

## VI. CONCLUSION

For the above reasons, Plaintiff respectfully submits that Criteo's Motion should be denied in full. However, if the Court deems any of the claims inadequately pleaded, Plaintiff requests leave to amend. There has been no prior judicial evaluation of the pleadings and Criteo cannot demonstrate bad faith, dilatory motive, or prejudice. *Schreiber Distrib. Co. v. Serv-Well Furniture Co*., 806 F.2d 1393, 1401 (9th Cir. 1986).

Dated: October 3, 2025

By: */s/ John J. Nelson*

JOHN J. NELSON (SBN 317598)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
280 South Beverly Drive, Penthouse
Beverly Hills, California, 90212
Tel: (858) 209-6941
jnelson@milberg.com

William J. Edelman (SBN 285177)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: (866) 252-0878
wedelman@milberg.com

Jonathan M. Jagher (*pro hac vice*)
**FREED KANNER LONDON & MILLEN LLC**
923 Fayette St.
Conshohocken, PA 19428
Telephone: (224) 632-4500
Facsimile: (224) 632-4521
jjagher@fklmlaw.com

Nicholas R. Lange (*pro hac vice*)
**FREED KANNER LONDON & MILLEN LLC**
100 Tri-State International Drive, Suite 128
Lincolnshire, IL 60069
Telephone: (224) 632-4510
Facsimile: (224) 632-4521
nlange@fklmlaw.com

Steve Sukert (*pro hac vice forthcoming*)
**KOPELOWITZ OSTROW P.A.**
1 W. Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Telephone: (925) 332-4200
Facsimile: (954) 525-4300
sukert@kolawyers.com

*Counsel for Plaintiff and the Putative Classes*

**Certificate of Compliance**

The undersigned counsel certifies that this memorandum contains 8,116 words and is under 25 pages. Therefore, it complies with the word limit of L.R. 11-6.1, and Section 6(c) of the Court's Standing Order.

Dated: October 3, 2025

MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC

By: */s/ John J. Nelson*
JOHN J. NELSON
Attorneys for Plaintiff