**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
John J. Nelson (SBN 317598)
280 South Beverly Drive, Penthouse
Beverly Hills, California, 90212
Tel: (858) 209-6941
jnelson@milberg.com

**FREED KANNER LONDON AND MILLEN LLC**
Jonathan M. Jagher (pro hac vice)
923 Fayette Street
Conshohocken, PA 19428
(610) 234-6486
Jjagher@fklmlaw.com

*Counsel for Plaintiffs and the Putative Class*

*Additional counsel listed on signature page*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

NEIL GETZ and JUSTIN BREWER, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

CVS HEALTH CORPORATION, CVS PHARMACY, INC., CRITEO CORP., and MEDALLIA, INC.

Defendants.

Case No. 2:25-cv-04689-MWC-E
Hon. Michelle Williams Court

**PLAINTIFF'S OPPOSITION TO MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT MEDALLIA, INC.'S MOTION TO DISMISS**

Date: October 24, 2025
Time: 1:30 p.m.
Courtroom: 6A, 6th Floor

# TABLE OF CONTENTS


I. INTRODUCTION....................................................................................1

II. FACTUAL BACKGROUND......................................................................2

III. MOTION TO DISMISS.............................................................................6

A. Plaintiff Demonstrates Article III Standing...............................................6

B. Plaintiff Has Plausibly Alleged Actionable Claims Against Medallia.......14

1. Medallia's conduct constitutes a serious invasion of privacy........14

2. Plaintiff adequately alleges duty, breach, and harm.......................16

3. Plaintiff has statutory standing under CIPA..................................18

4. Plaintiff Plausibly Alleges Interception "While in Transit"..........19

IV. CONCLUSION.......................................................................................22

# TABLE OF AUTHORITIES


**Cases** **Page(s)**

*A.J. v. LMND Med. Grp., Inc.*, 2024 WL 4579143 (N.D. Cal. Oct. 25, 2024) ........ 17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........ 14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........ 14

*Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023) ........ 8

*Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) ........ 9

*Byars v. Goodyear Tire & Rubber Co.*, 2023 WL 1788553 (C.D. Cal. Feb. 3, 2023) ........ 19

*Campbell v. Facebook Inc.* 77 F. Supp. 3d 836 (N.D. Cal. 2014) ........ 19

*Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000 (N.D. Cal. 2018) ........ 19

*County of Los Angeles v. Superior Court*, 280 Cal.Rptr.3d 85 (Cal. Ct. App. 2021) ........ 16

*Deivaprakash v. Conde Nast Digital*, 2025 WL 2541952 (N.D. Cal. Sep. 4, 2025) ........ 12

*Doe v. Call-OnDOC, Inc.*, 2025 WL 1677632 (S.D. Cal. Jun. 14, 2025) ........ 11

*Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ........ 17

*Doe v. Microsoft Corp.*, 2023 WL 8780879 (W.D. Wash., Dec. 19, 2023) ........ 11

*Doe v. N. California Fertility Med. Ctr.*, 2024 WL 246178 (E.D. Cal. Jan. 23, 2024) ........ 17

*Doe v. Regents of Univ. of California*,

2023 WL 3316766 (N.D. Cal. May 8, 2023) .... 16

*Doe v. Tenet Healthcare Corp.*,
731 F. Supp. 3d 142 (D. Mass. 2024) .... 17

*Does v. Trump*,
328 F. Supp. 3d 1185 (W.D. Wash. 2018) .... 14

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) .... 10

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011) .... 11

*Frasco v. Flo Health, Inc.*,
349 F.R.D. 557 (N.D. Cal. 2025) .... 7

*Frasco v. Flo Health, Inc.*,
2025 WL 2680068 (N.D. Cal. Sept. 17, 2025) .... 18

*Gabrielli v. Haleon US Inc.*,
2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) .... 8, 9, 10

*Gabrielli v. Motorola*,
2025 WL 1939957 (N.D. Cal. Jul. 14, 2025) .... 8

*Gonzales v. Uber Techs., Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018), *on reconsideration*, 2018 WL 3068248 (N.D. Cal. June 21, 2018) .... 16

*Grafilo v. Wolfsohn*,
245 Cal.Rptr.3d 564 (Cal. Ct. App. 2019) .... 16

*Gray v. Luxottica of Am., Inc.*,
2024 WL 5689566 (C.D. Cal. Dec. 16, 2024) .... 11

*Greenley v. Kochava*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) .... 11

*Hazel v. Prudential Financial, Inc.*,
2023 WL 3933073 (N.D. Cal. Jun. 9, 2023) .... 11

*Hernandez v. Hillsides, Inc.*,
97 Cal.Rptr.3d 274 (2009) .... 15

*In re Facebook, Inc. Consumer Privacy User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) .... 8

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)............................................................6, 12, 15, 20

*In re Google RTB Consumer Priv. Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022)............................................................15

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014)............................................................19

*Jones v. Tonal Systems, Inc.*,
751 F. Supp. 3d 1025 (S.D. Cal. 2024)............................................................11

*Katz-Lacabe v. Oracle America Inc.*,
2023 WL 2838118 (N.D. Cal. April 6, 2023)............................................................15

*Krefting v. Kaye-Smith Enterprises Inc.*,
2023 WL 4846850 (W.D. Wash. Jul. 28, 2023)............................................................8

*Laub v. U.S Dep't of the Interior*,
342 F.3d 1080 (9th Cir. 2003)............................................................14

*Leonard v. McMenamins, Inc.*,
2022 WL 4017674 (W.D. Wash. Sep. 2, 2022)............................................................8

*Loder v. City of Glendale*,
927 P.2d 1200 (Cal. 1997)............................................................15

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021)............................................................10, 21

*Orchid Biosciences, Inc. v. St. Louis University*,
198 F.R.D. 670 (S.D. Cal. 2001)............................................................13

*Popa v. Microsoft Corp.*,
2025 WL 2448824 (9th Cir. Aug. 26, 2025)............................................................6, 9

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)............................................................19

*Ribas v. Clark*,
696 P.2d 637 (Cal. 1985)............................................................19

*Riganian v. LiveRamp Holdings, Inc.*,
2025 WL 2021802 (N.D. Cal. Jul. 18, 2025)............................................................20

*Rodriguez v. Autotrader.com, Inc.*,

2025 WL 1085787 (C.D. Cal. Apr. 4, 2025) ........ 6, 9

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393 (9th Cir. 1986)........ 22

*Space Exploration Technologies, Corp. v. Cal. Coastal Commission,* 2025 WL 1862794 (C.D. Cal. Jul. 2, 2025) ........ 13

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011)........ 14

*Torres v. Prudential Financial, Inc.*, 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) ........ 2, 20, 21

*Toy v. Life Line Screening of Am. Ltd.*, 2024 WL 1701263 (N.D. Cal. Mar. 19, 2024)........ 17

*TransUnion LLC v. Ramirez,* 594 U.S. 413 (2021)........ 6

*Valenzuela v. Nationwide Mut. Ins. Co.*, 2023 WL 5266033 (C.D. Cal. Aug. 14, 2023)........ 18

*Williams v. Superior Court*, 220 Cal.Rptr.3d 472 (Cal. 2017)........ 16

*Yockey v. Salesforce, Inc.* 688 F. Supp. 3d 962 (N.D. Cal. 2023) ........ 20

*Yockey v. Salesforce, Inc.* 745 F. Supp. 3d 945 (N.D. Cal. 2024) ........ 20

**Statutes**

Cal. Penal Code. § 631(a) ........ 18, 19

Cal. Penal Code. § 637.2(c) ........ 18

**Regulations**

45 C.F.R. § 164.308(b)(1)........ 11

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Medallia, Inc. ("Medallia") does not dispute any of Plaintiff Justin Brewer's ("Plaintiff")[1] central allegations, including that it intercepted his and class members' Protected Health Information and Personally Identifiable Information ("Private Information") from his private communications with CVS Pharmacy, Inc. ("CVS") made through its website ("Website"). Importantly, the information Medallia intercepts includes, at a minimum, Website users' Private Information, including keyword searches, prescription medicine, and page views, including checkout pages. Nor does Medallia dispute that it processes the information to identify those users across different devices, visits, and touchpoints, creating a unique customer profile similar to Adobe's Identity Graph, or that it used the Private Information it intercepted for advertising on the Website or other CVS platforms. As set forth below, courts routinely find that the unauthorized interception of sensitive data in these circumstances violates applicable privacy safeguards.

Medallia's arguments to the contrary each fail. In arguing against Article III standing, Medallia concedes all of Plaintiff's core allegations but claims Plaintiff has not suffered sufficient injury because it did disclose his Private Information to additional unauthorized parties. Medallia raises a red herring because Courts do not require such a showing when the intercepted information is sensitive or otherwise relates to medical information, as Plaintiff's Private Information does here. Regardless, Medallia does not dispute that it processes Plaintiff's Private Information to create unique profiles, which also constitutes injury giving rise to standing regardless of the sensitivity of the intercepted information.

For similar reasons, Plaintiff's allegations also establish a serious invasion of

---

[1] Plaintiff Getz voluntarily dismissed his claims. ECF No. 51. Criteo's motion to dismiss is directed solely to Plaintiff Brewer. *See* ECF No. 57. Plaintiff also agreed to withdraw

privacy sufficient to sustain his invasion of privacy and intrusion upon seclusion claims, which, regardless, should not be addressed on the pleadings. Courts have also sustained negligence claims in the same circumstances, and Medallia's argument to the contrary ignores that, while Plaintiff may have consented to *CVS*'s receipt of his sensitive information, Plaintiff had no knowledge and gave no consent for Medallia, a third-party, to intercept those communications. Medallia's argument against standing under CIPA (as opposed to Article III) also fails under the statute's plain language, which expressly states that a plaintiff need not have suffered actual damages. Lastly, Plaintiff has sufficiently alleged Medallia's interception of his communications "while in transit" per the statute's plain text and as intercepted by courts in this Circuit. Medallia's authority to the contrary is based on distinguishable facts, and *Torres v. Prudential Financial, Inc.*, 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) was a summary judgment decision resolving a fact-intensive question only after a full evidentiary record.

## II. FACTUAL BACKGROUND

Medallia is a multi-faceted digital advertising and data analysis company that focuses on collecting, compiling, and processing its clients' customer and employee data. ¶6.[2] Medallia's clients, including CVS, use its software to "understand customer behaviors and intentions, and use that information to curate intuitive, personalized experiences in real time." *Id*. Medallia describes its digital solutions as permitting customers—such as CVS—to "identify who is visiting your digital property and what they want while powering individualized next/best actions across your organization." Medallia touts that its Total Experience Profile can "bring together data from every experience to create a complete timeline of every interaction a customer has with your company—whether online, by phone, via chat, or in person," empowering companies to "provide personalized service, orchestrate better omni-channel programs, and create

---

[2]Citations to "¶__" or "¶¶__" are citations to the First Amended Complaint ("FAC"), ECF No. 33, unless otherwise noted.

more relevant campaigns powered by experience-based segmentation." *Id*.

As part of the data collection and processing services Medallia offers to CVS, it offered the Medallia Trackers that CVS implemented onto its Website. ¶¶70-71. The Medallia Trackers are designed to surreptitiously track users' activity on the Website, together with unique identifiers that allow Medallia to identify those users across different devices, visits, and touchpoints, creating a unique customer profile similar to Adobe's Identity Graph. ¶70. Plaintiff and other Website users provided their PII, health information, and other sensitive data to CVS to obtain medical treatment and prescriptions without any knowledge these communications would be intercepted by Medallia. ¶70. In this way, Medallia intercepted, at a minimum, Website users' Private Information, including keyword searches, prescription medicine, and page views, including checkout pages. ¶¶71, 73-76.

Plaintiff used the Website several times over the past year to research over-the-counter medical products relating to a serious medical condition affecting him and relating to private sexual health products. ¶103. Specifically, he searched the Website for products related to his private medical condition and sexual health, viewed products that were responsive to those searches, purchased those sexual health products, and later saw advertisements both on CVS' Website and on other websites related to his activity on the Website. ¶¶103-04. Plaintiff used the Website as a "guest", meaning he did not log in or create an account, and was not aware of and did not consent to the Medallia Trackers operating in the background to intercept his private communications with CVS. ¶106.

Despite relying on an extrinsic document—a one-page conclusory declaration of its general counsel— Medallia *does not dispute any of these allegations*. Instead, it relies on its counsel's declaration for the narrow assertion that it has an agreement with CVS that does not allow Medallia to "commercially exploit" the "CVS Data," disclose it to a

third party, or compromise its security. Dkt. 56-2, ¶ 5.[3] Nor does Medallia deny that it intercepts this sensitive Private Information and processes it, or that it uses it to target and advertise users on the Website or other CVS platforms. More importantly, Medallia does not deny that it disclosed any information it intercepted to third parties because the "CVS Data" is not defined to include all information Medallia intercepted from Plaintiff's interactions with the Website. "CVS Data" instead refers to a subset of that information—information which CVS "submitted for processing." Mot. at 4, n.12.

CVS is Medallia's second largest customer, and Medallia's platform contains, or has contained, approximately 17 million "pieces of feedback". Declaration of Nicholas R. Lange ("Lange Decl."), Ex. 1; Lange Decl. ¶3. Its own "Client Spotlight" on CVS, which Medallia removed after it was named in this lawsuit, summarizes the extent of its interception and processing of CVS' data: "This question to deliver more human-centered, personalized experiences required the CVS Health team to *continuously listen to their customers at key points along their journey*." Lange Decl., Ex. 2; Lange Decl. ¶3 (describing CVS' use of Medallia's platform to "get better" in real time); Lange Decl. Ex. 3 (describing CVS' use of Medallia "to continuously listen to their customers at key points along their journey [...] to achieve a long-term, positive impact on its customers and business. Medallia boasts that its work for CVS resulted in "Up to a 30% increase" in spend per visit" and underscores how its data interception and processing benefitted CVS "across all of its brands at all levels of its organization":

> It gave [CVS] the ability to perform prompt service recovery with unhappy customers—reducing churn and negative word-of-mouth—while inspiring and reinforcing preferred behaviors in happy ones, helping to increase brand loyalty and overall spend. The company now has the direct feedback and *insights—at size and scale*—to quickly identify and remedy pervasive issues and uncover new opportunities to improve and delight customers.

---

[3] Medallia's counsel's declaration stops short of averring that Medallia does not use the intercepted data for its own purposes, only that Medallia's counsel is "not aware" and does not have any "suspicion" of such use. *Id*. at ¶7.

*Id*. (emphasis added). In a discussion with CVS' Head of Enterprise Customer Experience that Medallia shared, CVS confirmed "we actually run it almost like a sales force platform where we hold ourselves accountable to the monthly active users" and that Medallia's platform is frequently discussed in sales meetings. Lange Decl., ¶3.

Further, contrary to Medallia's contention that it does not share "CVS Data" with any third parties (Garrod Decl., ¶7), CVS' job posting earlier this year indicates that CVS data Medallia collected is in fact shared with third parties—Medallia's "partners," which include players in the online advertising ecosystem such as Adobe. Lange Decl., Ex. 4 (CVS' job posting for position overseeing Medallia platform's administration, including collaborating closely with "Medallia implementation partners" and managing engagements with Medallia partners); Lange Decl., Ex. 5 (video referencing Adobe as a Medallia partner, explaining how Adobe partnership and enrichment of Medallia data with Adobe data provides a solution for the need "for deeper, data driven customer insights" such as "how she behaves, her intent, and needs, what's compelling her to move forward or drop out, or what's causing friction, or a costly customer service call, and whether the experience she gets is so great that she comes back for more and talks it up to her friends and family. Medallia provides deep insights into your customers intentions and feelings."). Evidence of Medallia's intercepted data being shared with third parties such as, potentially, Adobe, is particularly potent given the robust allegations concerning CVS' use of Adobe's similar tracking services. *See* ¶¶23-62.

Medallia's description of its relationship with CVS is entirely consistent with its stated practice of "bringing together data from every experience to create a complete timeline of every interaction a customer has" with your company—whether online, by phone, via chat, or in person", empowering companies like CVS to create more relevant and personalized campaigns in "real-time." ¶6. Medallia's statements further support Plaintiff's allegations that it uses identifiers and

intercepted information to "identify Website users across different devices, visits, and touchpoints, creating a unique customer profile similar to Adobe's Identity Graph." ¶70.

## III. MOTION TO DISMISS

### A. Plaintiff Demonstrates Article III Standing.

To establish standing under Article III, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). The Ninth Circuit has held that "[v]iolations of the right to privacy have long been actionable at common law," and that "[a] right to privacy 'encompasses[es] the individual's control of information concerning his or her person.'" *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) ("*In re Facebook*"). As Medallia concedes, harms that are remotely similar to those protected by intrusion upon seclusion can give rise to Article III standing. *Popa v. Microsoft Corp*., 2025 WL 2448824, at *6 (9th Cir. Aug. 26, 2025). To demonstrate standing to bring a claim for invasion of privacy under Section 631 of CIPA, "a plaintiff must show that: (1) a defendant improperly *accessed* or disclosed information that was "sensitive" and "could cause harm *if* disclosed"; and (2) the plaintiff "had a reasonable expectation of privacy when she shared that information." *See Rodriguez v. Autotrader.com, Inc.*, 2025 WL 1085787, at *1 (C.D. Cal. Apr. 4, 2025) (emphasis added).

Importantly, Medallia does not dispute that it intercepted and processed Plaintiff's sensitive communications without his knowledge or consent, including "identifying Website users across different devices, visits, and touchpoints, creating a unique customer profile similar to Adobe's Identity Graph." ¶70, *See also* ¶¶6, 71-76. Similarly, Medallia does not dispute that Plaintiff's sensitive communications, which it collected and processed from his activity on the Website as an anonymous guest, was used for advertising on the Website, such as the ads Plaintiff later saw on the Website concerning

his sensitive searches, page views, and purchases. ¶104. Nor does it deny that Plaintiff's intercepted communications were of a sensitive nature, relating to his serious medical condition and sexual health products that he searched for and purchased. ¶¶103-104, 194. Medallia only disputes that Plaintiff suffered no concrete injury simply because it claims it did not disclose his information to *additional* third parties. Mot. at 7-11. The Court should reject its argument for several reasons.

**First,** courts in the Ninth Circuit routinely recognize that invasion of privacy claims involving the unauthorized access of sensitive information give rise to Article III standing, regardless of alleged use of that sensitive data. In discussing the harms implicated with the unauthorized access of sensitive information, the court in *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557 (N.D. Cal. 2025) recently summarized the law in this circuit:

> Individuals have a time-honored right to control access to their private information and affairs. 'The common law secures to each individual the right of determining, ordinarily, to what extent his thoughts, sentiments, and emotions shall be communicated to others.' Consequently, the legal injury at the heart of plaintiffs' case -- the capture of personal information without a user's consent -- occurs when the personal information is obtained in the first instance.

*Id*. at 579. (citations omitted). The court emphasized that, with respect to intrusion upon seclusion, it is the "intrusion itself [that] makes the defendant subject to liability," such as "the use of the defendant's senses, with or without mechanical aids, to oversee or overhear the plaintiff's private affairs, as by ... tapping his telephone wires." *Id*. (citation omitted). Summarizing the standing analysis in the Ninth Circuit, the court explained that "[p]ut in terms of standing, the loss of control over one's personal information is the "concrete" harm, whether from stealing access to a personal diary in 1916 or obtaining user information in a healthcare app in 2016. In each case, a person has lost control over her private information because of another's intentional actions." *Id*.

Just like in *Fasco*, where the unauthorized receipt of sensitive information relating to users' menstrual cycles, without more, gave rise to standing "irrespective of whether

the misappropriated data is anonymized," Medallia's unauthorized interception of Plaintiff's sensitive communications relating to his medical condition and sexual health constitutes concrete harm giving rise to standing regardless of any subsequent use or disclosures of Plaintiff's misappropriated data. Medallia's contention otherwise strains credulity and would lead to absurd results: a peeping Tom who did not distribute photographs is still liable for invasion of privacy, as is an eavesdropper recording a couple's private conversation, regardless of whether he shared the tape with his friends.

Other courts are in accord, focusing standing inquiries on the sensitive nature of the information and the fact that a third-party's receipt of that information deprives the plaintiff of control over it. Contrary to Medallia's implication, there is no requirement that a defendant who intercepted sensitive information without consent must disclose it to *another* third-party. *See, e.g. Gabrielli v. Haleon US Inc.*, 2025 WL 2494368, at *6 (N.D. Cal. Aug. 29, 2025) (plaintiff's "allegations that [website owner] deprived him [of] control of personal information regarding his digital activity and profile are enough to show a concrete injury to his right to privacy and, subsequently, Article III standing."); *Gabrielli v. Motorola*, 2025 WL 1939957, at *6-7 (N.D. Cal. Jul. 14, 2025) (same); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 925 (N.D. Cal. 2023) (plaintiffs established standing where they alleged that defendants had collected their data without consent, thereby violating 'concrete privacy interests' that statutes like […] CIPA protected); *Krefting v. Kaye-Smith Enterprises Inc.*, 2023 WL 4846850, at *3 (W.D. Wash. Jul. 28, 2023) ("the theft and loss of control over PII is akin to traditional claims for invasion of privacy and intrusion upon seclusion"); *Leonard v. McMenamins, Inc.*, 2022 WL 4017674, at *5 (W.D. Wash. Sep. 2, 2022) ("Numerous courts, including the Ninth Circuit, have found allegations concerning the interference with plaintiffs' control over their personal data to be sufficient for standing"); *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019) ("courts have often held that this particular type of intangible injury—disclosure of sensitive private information, *even without further consequence*—gives rise to Article III standing.") (emphasis added);

*Rodriguez*, 2025 WL 1085787, at *1 (standing under Section 631 requires a plaintiff to show a defendant improperly *accessed* or disclosed sensitive information that could cause harm *if* disclosed.); *C.f. Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023) ("Plaintiff does not allege that she disclosed any sensitive information to Defendant [...]. She therefore has not identified any harm to her privacy.").

**Second,** Medallia's authority on this point does not compel a different result because none of those cases involve the interception of sensitive health information. *Popa* nowhere suggests that third-party interceptions of private communications are harmless absent additional sharing. Instead, *Popa* held that where there is no interception of sensitive data, standing does arise under the tort of intrusion upon seclusion because the intrusion of non-sensitive data, absent more, is not the kind of intrusion that would be highly offensive to a reasonable man. *Popa*, 2025 WL 2448824, at *5. (rejecting plaintiff's analogy to the tort of intrusion upon seclusion because "Popa identifies no embarrassing, invasive, or otherwise private information collected by [the defendant]"). The court elaborated:

> [The defendant's] conduct in this case does not implicate a similarly sensitive sphere. At most, *Popa* alleges that [the trackers] gathered her pet-store preferences and her street name. To the extent [the defendant's] tracking software *could* be offensive in particular circumstances (e.g., *involving sensitive medical* or financial information), the plaintiff does not plausibly allege the infringement of any such privacy interest.") (emphasis added).

*Id*. (emphasis added).

As such, *Popa* was expressly premised on distinguishable facts. Medallia intercepted Plaintiff's searches and page views for products related to his private medical condition and sexual health, as well as purchase of sexual health products, ¶¶103-04— not pet stores preferences and street names. Courts have already declined to follow *Popa* on allegations that sensitive information was intercepted. For example, in *Haleon*, 2025 WL 2494368, at *7, the court declined to follow *Popa*, noting that "whatever information

users' input into [healthcare websites][4] is likely more sensitive than what the plaintiffs in *Popa* inputted into those websites."[5]

Nor did *Popa* overturn *Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017) and *In re Facebook*. *Popa*, 2025 WL 2448824, at *8 ("More important, we need not revisit *Eichenberger* and *In re Facebook* in reaching our decision today. Despite the broad statements made therein, those decisions still accounted for the individual circumstances giving rise to the plaintiffs' alleged injuries rather than simply greenlighting a per se rule for privacy statutes"; *see also Haleon*, 2025 WL 2494368, at *7 (finding standing for interception of sensitive data and noting "[m]y decision here is not inconsistent with the opinion in *Popa*).

Medallia's reliance on *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129 (E.D. Cal. 2021) is misplaced for the same reason *Popa* is distinguishable.[6] *Mastel* does not stand for the proposition that there can be no standing (or claim for intrusion upon seclusion) when a third party intercepts sensitive communications without authorization absent a subsequent disclosure to other third parties. It stands only for the unsurprising notion that intercepting *non-sensitive* data, without more, is insufficient. *Id.* at 1141-42 (noting that "some courts have held that the information obtained by the defendant may itself be so

---

[4] There, the defendant operated websites including tums.com, advil.com, centrum.com, Theraflu.com, caltrate.com, flonase.com, Sensodyne.com, and emergenc.com, which the plaintiff used to browse products. *Id.* at *1-2.

[5] The court also noted that, while the session-replay technology was not alleged to track anything beyond the website she chose to visit and the information gathered was only alleged to be used by the owner of the that website, the plaintiff there alleged—similar to Plaintiff's allegations—that the cookies allow third parties to "track and collect data in real time regarding" search queries and other information.

[6] *Mastel* also held that publication is not required for standing because the invasion itself harms Plaintiff's ability to control his private information. *Id.* at 1138-39. Medallia cannot dismiss the holding as relying on *In re Facebook* and *Eichenberger* (Mot. at 10, n.14) because, as noted above, *Popa* does not impact their application to this case, particularly where Plaintiff has alleged interception of his sensitive data.

sensitive or private that the alleged intrusion alone suffices to state a claim. However, these cases almost always involve information which is clearly more private or sensitive that at issue in this case.") *Mastel* explicitly dealt with no medical or sexual health information, or any other sensitive information. *Id*. (The Plaintiff "does not specify what the content of any of those messages were, what contact information [defendant] had access to, which friends or relatives' contact information was obtained [...]. *He provides no indication of the sensitivity of the communications at issue*") (emphasis added).

Had *Mastel* dealt with the interception of sensitive information like that at issue here, the conduct would have been sufficiently egregious. *See e.g.*, *Doe v. Call-OnDOC, Inc.*, 2025 WL 1677632, at *17 (S.D. Cal. Jun. 14, 2025) (disclosure of PII egregious when including medical information); *Gray v. Luxottica of Am., Inc.*, 2024 WL 5689566, at *9-12 (C.D. Cal. Dec. 16, 2024) (same); *Hazel v. Prudential Financial, Inc.*, 2023 WL 3933073, at *4-5 (N.D. Cal. Jun. 9, 2023) (same, and considering cases reasoning that highly offensive intrusion cannot occur where offensive "use" is not pled); *Greenley v. Kochava*, 684 F. Supp. 3d 1024, 1046-47 (S.D. Cal. 2023) (interception of information that could reveal, *inter alia*, a person's medical condition was egregious); *c.f. Jones v. Tonal Systems, Inc.*, 751 F. Supp. 3d 1025, 1043 (S.D. Cal. 2024) (following *Mastel* where "there is no supporting allegation that Plaintiff's engagement with the Drift chat feature conversations produced or transferred content likely to be embarrassing.").

*Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986 (2011), which considered allegations that the defendant's "conduct of obtaining his ZIP code" for marketing purposes, is also far afield for not involving the interception of sensitive medical and sexual health information. *See Doe v. Microsoft Corp.*, 2023 WL 8780879, at *10 (W.D. Wash., Dec. 19, 2023) (refusing to follow *Folgestrom* where the data at issue is personal health information, calling it "a case that other courts have distinguished where 'the data at issue is more private than a person's mailing address and this kind of intrusion is not routine commercial behavior'").

Medallia's reliance on 45 C.F.R. § 164.308(b)(1) (Mot. at 9), which deals with

security safeguards and assurance requirements when a covered entity is permitted to disclose patient data, is easily disposed of as Plaintiff does bring a cause of action under the Health Insurance Portability and Accountability Act. More importantly, this section does not override the limits on disclosure found elsewhere in HIPPA and does not permit an entity to share Private Information with a third party without the patient's knowledge or consent, as Plaintiff alleges Medallia as done.

**Third**, Medallia's use of the intercepted data, which it does not deny, separately gives rise to Article III standing regardless of the sensitivity of the data. *See, e.g.*, *Deivaprakash v. Conde Nast Digital*, 2025 WL 2541952, at *4 (N.D. Cal. Sep. 4, 2025) ("Deivaprakash sufficiently alleges that he suffered an injury in the form of an invasion of privacy. Specifically, as discussed above, Deivaprakash describes how the trackers allow the third parties to generate profiles that reflect users' geographic locations, incomes, and preferences, among other characteristics, and hinder users' ability to remain anonymous as they browse the Internet, and he alleges that the third parties did so with respect to him") (collecting authority); *In re Facebook*, 956 F.3d at 598-99 (the Ninth Circuit held that allegations of data collection performed "in order to receive and compile [the plaintiffs'] personally identifiable browsing history ... no matter how sensitive or personal" constituted sufficient allegations of injury for purposes of Article III standing.)

As summarized above, Plaintiff describes how Medallia's platform can "identify who is visiting your digital property and what they want while powering individualized next/best actions across your organization" and can "bring together data from every interaction [...] whether online, by phone, via chat, or in person", empowering its customers to "create more relevant campaigns powered by experience-based segmentation." ¶6. Medallia's collection of Plaintiff's information was necessary to target CVS' specific users, and the unique identifiers and information it intercepted allowed Medallia to identify Website users across different devices, visits, and touchpoints, creating a unique customer profile similar to Adobe's Identity Graph. ¶70.

While Medallia describes its motion as raising a factual attack, it does not

categorically dispute any of these allegations. *See* Garrod Decl., ¶6 (stating that Medallia's contract does not permit it to use "CVS Data" for *third-party* targeted advertising, but not disputing that this data is used for advertising on the Website or other CVS platforms); ¶7 (declarant not aware of Medallia's use of "CVS Data" for any purpose *other than CVS'* purposes, but not disputing that Medallia processes the data it intercepts for use identifying Website users, associating their data to create unique identity profiles, and to assist in advertising on the Website or other CVS platforms).[7] On a facial attack, then, these allegations are accepted as true and all reasonable inferences from them are drawn in Plaintiff's favor. *Space Exploration Technologies, Corp. v. Cal. Coastal Commission,* 2025 WL 1862794, at *5 (C.D. Cal. Jul. 2, 2025).

Similarly, for the same reasons, Medallia cannot dodge liability or distinguish Plaintiff's allegations from those at issue in Plaintiff's authority by contending that it did not "use" the information it intercepted, including for processing, creating unique identities, or for advertisement.[8]

Moreover, although the court need not consider Medallia's disclosure of the intercepted information to other third parties, to the extent Medallia factually contest its transmission to third parties, and to the extent the Court finds this question necessary to rule on the Motion, the Court should allow discovery to confirm whether Medallia does in fact process this data as alleged and transmit this information to third parties. *See Orchid Biosciences, Inc. v. St. Louis University*, 198 F.R.D. 670, 672-73 (S.D. Cal. 2001) (collecting authority, noting that, where pertinent facts bearing on the question of jurisdiction are in dispute, discovery should be allowed, and permitting jurisdiction

---

[7] Moreover, Medallia's denials fall short because, as noted *supra*, "CVS Data" does not include all information that Medallia intercepted from Plaintiff's use of the Website. *See* Mot. at 4, n.12.

[8] Further, any attempts to distinguish Plaintiff's authority on this basis would be futile because, as set forth *supra*, the sensitivity of the data Medallia intercepted is sufficient to give rise to Article III standing.

discovery where pertinent facts bearing on the question of jurisdiction are controverted); *Laub v. U.S Dep't of the Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (the court should ordinarily grant discovery "where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory of the facts is necessary"). Based on publicly available information, as described *supra*, CVS' job posts indicate that information Medallia intercepts is in fact shared with third parties—Medallia's "partners", which includes, among others, Adobe. *See* Section II; Lange Decl., Exs. 4-5; Lange Decl. ¶8; *Does v. Trump*, 328 F. Supp. 3d 1185, 1201-02 (W.D. Wash. 2018) (denying motion to dismiss to allow plaintiffs opportunity to conduct limited jurisdictional discovery on contested issue).

**B. Plaintiff Has Plausibly Alleged Actionable Claims Against Medallia.**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, "accepted as true," to "state a claim of relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility, however, is not certainty or probability. It "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

In other words, a complaint may advance even if it appears that "actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id*. Thus, plaintiff does not need to substantiate his claim at the pleadings stage, and the complaint "may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible." *Starr v. Baca*, 652 F.3d 1202, 1216-1217 (9th Cir. 2011) (emphasis in original).

**1. Medallia's conduct constitutes a serious invasion of privacy.**

Medallia first argues that Plaintiff's privacy claims (invasion of privacy and intrusion upon seclusion) should be dismissed because the alleged conduct is not

sufficiently "offensive" or "serious." Mot. at 11-13. These privacy claims are plausibly alleged where "(1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *In re Facebook*, 956 F.3d at 601. Only if the allegations "show no reasonable expectation of privacy or an insubstantial impact on privacy interest, the question of invasion may be adjudicated as a matter of law." *Id*.

First, as Medallia concedes (Mot. at 12 (citing *Mastel*, 549 F. Supp. 3d at 1139) whether conduct is "egregious" or "offensive" is a question of fact ill-suited for resolution at the pleading stage. Courts use "a holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive." *In re Facebook*, 956 F.3d at 604 (citing *Hernandez v. Hillsides, Inc.,* 97 Cal.Rptr.3d 274, 286 (2009)). This calculus "focuses on the degree to which the intrusion is unacceptable as a matter of public policy." *Id*. Given this fact-intensive inquiry, the question of "[w]hether the conduct was highly offensive can rarely be resolved at the pleading stage." *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 946 (N.D. Cal. 2022) (citing *In re Facebook*, 956 F. 3d at 606); *Katz-Lacabe v. Oracle America Inc.*, No. 22-cv-04792-RS, 2023 WL 2838118, at *8 (N.D. Cal. April 6, 2023). Regardless, Medallia argues that Plaintiff's claims should be "weeded out" because Medallia's actions had an insubstantial impact on his privacy interests.[9]

Here, Plaintiff alleges that Medallia, acting in concert with CVS, intercepted and contemporaneously collected sensitive and confidential health-related communications through tracking technology embedded in CVS's website. ¶¶70-76. Those

[9] Defendants cite *Loder v. City of Glendale*, 927 P.2d 1200 (Cal. 1997) for this proposition, but *Loder* stated that conduct which "significantly affects a privacy interest protected by the state Constitution" must take into consideration "the legitimacy or strength of the defendant's justification for the conduct" before being rejected. Here, Medallia is silent on any justification for its interception of private and confidential health related communications.

communications included individually identifiable medical information relating to Plaintiff's and class members' prescription activity and/or searches, page views, and purchases of health-related products on the CVS website. ¶¶71, 73, 74, 76. There can be no serious dispute that individuals interacting with a pharmacy to search for and purchase, *inter alia*, healthcare products relating to their serious medical conditions and sexual health enjoy an objectively reasonable expectation of privacy in such exchanges. California courts have long recognized that medical and health information lies at the core of constitutionally protected privacy interests because patients "have a bona fide interest in the confidentiality of their medical information." *County of Los Angeles v. Superior Court*, 280 Cal.Rptr.3d 85, 102 (Cal. Ct. App. 2021) (quoting *Williams v. Superior Court*, 220 Cal.Rptr.3d 472, 491 (Cal. 2017)); *Grafilo v. Wolfsohn*, 245 Cal.Rptr.3d 564, 571 (Cal. Ct. App. 2019) (collecting cases).

Medallia attempts to downplay the severity of its conduct by claiming it did not sell, disclose, or misuse Plaintiff's private information – this misses the point. Plaintiff here alleges the clandestine interception of communications revealing prescription and health-related information – exactly the type of conduct that courts have found to be paradigmatic privacy violations. *Doe v. Regents of Univ. of California*, 2023 WL 3316766, at *6 (N.D. Cal. May 8, 2023) ("Personal medical information is understood to be among the most sensitive information that could be collected about a person, and I see no reason to deviate from that norm.").

Medallia's reliance on cases involving trivial commercial behavior, such as the unsolicited mailing of coupons, *Folgelstrom*, or the simple collection of name and home address, *Gonzales v. Uber Techs., Inc.,* 305 F. Supp. 3d 1078, 1092 (N.D. Cal. 2018), *on reconsideration*, 2018 WL 3068248 (N.D. Cal. June 21, 2018), stands in stark contrast to this case where Plaintiff contends that Defendant secretly captured communications containing prescription and medical information. ¶¶70-76.

**2. Plaintiff adequately alleges duty, breach, and harm.**

Medallia next contends that Plaintiff has failed to allege the elements of negligence

because he has not identified a breach of a duty attributable to Medallia. As Medallia concedes, Plaintiff has alleged that Medallia owed duties to safeguard Plaintiff's private medical information, to refrain from disclosing or intercepting such information, and to maintain its confidentiality when processing it on CVS's behalf. ¶¶206, 208. Plaintiff further alleges that Medallia breached those duties by embedding tracking technologies designed to contemporaneously intercept users' communications with CVS's website, including communications containing sensitive health information, without notice or consent. ¶¶7, 72, 99, 108, 129-30, 133, 139, 152, 177, 210. And that such a breach caused injury to Plaintiff in the form of loss of the right to maintain the privacy of their medical information. ¶¶211-12.

As other courts in this circuit have held that similar allegations in this type of case suffice at the motion to dismiss stage. *See A.J. v. LMND Med. Grp., Inc.*, 2024 WL 4579143, at *3 (N.D. Cal. Oct. 25, 2024); *Doe v. Kaiser Found. Health Plan, Inc.,* 2024 WL 1589982, at *23 (N.D. Cal. Apr. 11, 2024) (denying motion to dismiss negligence claim based on statutory violation);[10] *Toy v. Life Line Screening of Am. Ltd.*, 2024 WL 1701263, at *4 (N.D. Cal. Mar. 19, 2024) (holding that plaintiff adequately pled a negligence claim by alleging deprivation of the right to keep her medical information private when an unauthorized third party accessed it, a harm analogous to intrusion upon seclusion); *Doe v. N. California Fertility Med. Ctr.*, 2024 WL 246178, at *5 (E.D. Cal. Jan. 23, 2024) (same); *see also Doe v. Tenet Healthcare Corp.,* 731 F. Supp. 3d 142, 149 (D. Mass. 2024) (denying motion to dismiss negligence claim and finding that allegations of unauthorized disclosure of sensitive health data constituted sufficient damages).

---

[10] This case also rejected the argument that negligence *per se* is not recognized in California stating "the argument elevates form over substance. Even if negligence per se is not a separate cause of action, negligence is, and [Defendant] fails to explain why the claim cannot simply be construed as a negligence claim." The same is true of Medallia's footnote argument, which should be rejected by this Court for the same reason. Mot. at 14 n.15.

Medallia's suggestion that no breach occurred because Plaintiff's information was destined for CVS in any event (Mot. at 14) misapprehends the nature of the claim. There is a critical legal distinction between a patient choosing to disclose sensitive health information to his pharmacy (here CVS) and that same information being intercepted by an undisclosed third party (here Medallia) with whom the patient has no relationship and to whom he never consented disclosure. Courts have consistently recognized that the latter – the unauthorized expansion of the audience for a private communication – constitutes harm in itself. *See e.g., Valenzuela v. Nationwide Mut. Ins. Co.*, 2023 WL 5266033, at *7 (C.D. Cal. Aug. 14, 2023) ("Whether the third party's use was purely for [the intended recipient's] benefit, rather than for its own benefit, is immaterial under" § 631.)

Plaintiff has therefore alleged duty, breach, and harm sufficient to state a claim for negligence.

**3. Plaintiff has statutory standing under CIPA.**

Medallia also asserts, by way of bizarre analogy to Cal. Civ. Code 1798.84, that Plaintiff cannot pursue a claim under CIPA because he has not alleged pecuniary harm. This argument is contrary to the statute's text and controlling precedent. CIPA is violated when any person "aids, agrees with, employs, or conspires with any person" to (1) "intentionally tap[]" a "wire, line, cable, or instrument", (2) "willfully . . . attempt[] to read, or learn the contents or meaning of any . . . communication", or (3) "attempt[] to use . . . any information so obtained." CIPA § 631(a). CIPA expressly provides that a plaintiff "need not have suffered, or be threatened with, actual damages" to bring a civil action. Cal. Penal Code § 637.2(c). The statute instead makes actionable the injury of having one's confidential communications unlawfully intercepted without consent. *See Frasco v. Flo Health, Inc.*, No. 21-CV-00757-JD, 2025 WL 2680068, at *12 (N.D. Cal. Sept. 17, 2025) ("Under Section 637.2, there is no requirement of an injury independent of the privacy injury caused by an unconsented recording.").

Plaintiff alleges precisely that injury: his private medical communications with

CVS were intercepted by Medallia. Contrary to Medallia's contention, interception of private information and concomitant loss of control over the secrecy of sensitive health information constitutes a distinct and palpable harm sufficient to satisfy both Article III standing and CIPA. *See supra* Section III.A.

**4. Plaintiff Plausibly Alleges Interception "While in Transit".**

Finally, Medallia argues that Plaintiff has failed to allege a violation of CIPA § 631(a) because he does not plead facts showing that Medallia "read" or "learned" the contents of communications *while* they were "in transit" (Mot. at 16-19). In other words, Medallia suggests that § 631 expressly mandates that communications be read while "in transit." This hyper-technical reading of § 631(a) ignores the plain text and accompanying caselaw. CIPA § 631(a) imposes liability where communications are intercepted either "while … in transit … or [while they are] being sent from, or received at any place within this state." Cal. Penal Code § 631(a). The California Supreme Court has explained, the statute is written in the disjunctive: liability attaches where a communication is intercepted while in transit or is being sent from, or received at any place within California. *Ribas v. Clark*, 696 P.2d 637, 639-40 (Cal. 1985). Courts have further emphasized that "the particulars of the eavesdropping mechanism are of little consequence," because § 631's protections explicitly extend to the beginnings and ends of communications. *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019).[11]

---

[11] Here Medallia puts into contention whether an interception occurred, but courts consistently hold that, where the precise nature of the technology determines whether communications were "intercepted," allegations of interception must be accepted as true at the pleading stage. *See Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1048 (N.D. Cal. 2018) (allegations of interception must be accepted as true at pleading stage); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014) (same);*In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1028 (N.D. Cal. 2014) (same); *Byars v. Goodyear Tire & Rubber Co.*, 2023 WL 1788553, at *4 (C.D. Cal. Feb. 3, 2023) (same).

Medallia cites *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962 (N.D. Cal. 2023) for support, but that case supports Plaintiff. First, the Court found that even though Defendant did not share, disclose, or sell the intercepted information to anyone, Plaintiff still had Article III standing. Second, although the Court initially dismissed the CIPA claims, its reasoning was that there was no reasonable inference from Plaintiff's allegations that Defendant could use the communications for anything other than furnishing them to their client, who was the intended recipient of the communications. *Id* at. 973. Here, however, Plaintiff alleges that Medallia uses the information it has intercepted to craft unique customer profiles (¶70) and for its own commercial benefit (¶71).[12]

Medallia also heavily relies on *Torres*, a case decided at summary judgment with the benefit of a full factual record. *See Riganian v. LiveRamp Holdings, Inc.*, 2025 WL 2021802, at *10 (N.D. Cal. Jul. 18, 2025) ("whether communication are 'read' in transit or only after storage is a fact-intensive question that depends on how the challenged technology and processes actually work—a question *Torres* decided only after a full evidentiary record at summary judgment."). Importantly, that factual record demonstrates that *Torres* is an example of a "session replay" case wherein a party intercepts certain information from a website user such as mouse movements, clicks, scrolling, page views, and navigation paths to then use this data to construct a video-like playback recording for the website owner of what an individual user actually did on its website. *Id*. at * 6. The *Torres* court cited *In re Facebook*, 956 F.3d at 596 as a textbook example of a CIPA violation stating: "[i]n that case, Facebook used plug-ins to track users' browsing

[12] It bears noting that Medallia cites the motion to dismiss opinion in *Yockey* from August 2023 in which the Court granted leave for Plaintiff to amend. After amendment and the addition of allegations regarding Defendant's actions while in possession of the intercepted communications, akin to those already in Plaintiff's FAC, the renewed motion to dismiss was denied in its entirety. *See Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 948 (N.D. Cal. 2024).

histories, which it then used to create personal profiles that could be sold to advertisers." In granting summary judgment, the *Torres* court stated: "the session replays … are nothing more than a rote list of the actions that … users took while filling out the form. The act of reassembling events like keystrokes, mouse movements, and clicks into a session replay (for the convenience of a party to the communication itself) is not analogous to creating personal profiles that can then be marketed to third-party advertisers." *Id*.

Here, Medallia's actions are much more akin to *Facebook* then that are to the Defendant's actions in *Torres*. ¶70 ("The Medallia Trackers are designed to surreptitiously track users' activity on the Website, together with unique identifiers that allow Medallia to identify those users across different devices, visits, and touchpoints, creating a unique customer profile similar to Adobe's Identity Graph."); ¶¶71, 73-76 ("Medallia intercepted, at a minimum, Website users' Private Information, including keyword searches, prescription medicine, and page views, including checkout pages." ¶¶103-04 ("Plaintiff…searched the Website for products related to his private medical condition and sexual health, viewed products…purchased those sexual health products, and later saw advertisements both on CVS' Website and on other websites related to his activity on the Website.")

Finally, Medallia also erroneously relies on *Mastel*, 549 F. Supp. at 1136, to answer the "crucial question" regarding § 631: whether a communication was read while still in transit. However, *Mastel* is worlds apart factually from this case. In *Mastel*, Plaintiff's complaint did "not contain any allegations that [Defendant] intercepted any communications while they were 'in transit,' in fact "the complaint alleges, text ends up in the Pasteboard because the user copies it from another application." 549 F. Supp. 3d at 1136. The court in *Mastel* found that no violation of § 631 occurred because the communications in question were stuck in storage on a user's computer and were not in transit when they were captured by a third party. In other words, they were not "intercepted" "in transit" within the meaning of CIPA. Here, however, Plaintiff has

alleged that Medallia's tracking technologies were designed so that each user action and communication was intercepted by Medallia contemporaneously with the user making the communication, and before it reached CVS's server. ¶138.

## IV. CONCLUSION

For all the above reasons, Plaintiff respectfully submits that Medallia's Motion should be denied in full. However, if the Court deems any of the claims inadequately pleaded, Plaintiff requests leave to amend. There has been no prior judicial evaluation of the pleadings and Medallia cannot demonstrate bad faith, dilatory motive, or prejudice, particularly where, as here, an early amendment would disrupt completed briefing on CVS' pending motion to dismiss and coordinated motion to dismiss hearings. *See Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

Dated: October 3, 2025

By: */s/ Nicholas R. Lange*

NICHOLAS R. LANGE (*pro hac vice*)
FREED KANNER LONDON & MILLEN LLC
100 Tri-State International Drive, Suite 128
Lincolnshire, IL 60069
Telephone: (224) 632-4510
Facsimile: (224) 632-4521
nlange@fklmlaw.com

Jonathan M. Jagher (*pro hac vice*)
FREED KANNER LONDON & MILLEN LLC
923 Fayette St.
Conshohocken, PA 19428
Telephone: (224) 632-4500
Facsimile: (224) 632-4521
jjagher@fklmlaw.com

John J. Nelson (SBN 317598)
MILBERG COLEMAN BRYSON

PHILLIPS GROSSMAN PLLC
402 West Broadway Suite 1760
San Diego, CA 92101
Telephone: 868-209-6941
Facsimile: (865) 522-0049
jnelson@milberg.com

William J. Edelman (SBN 285177)
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC
227 W. Monroe Street, Ste 2100
Chicago, IL 60606
Telephone: (771) 474-1121
Facsimile: (865) 522-0049
wedelman@milberg.com

Jeff Ostrow (*pro hac vice*)
KOPELOWITZ OSTROW P.A.
1 W. Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Telephone: (925) 332-4200
Facsimile: (954) 525-4300
ostrow@kolawyers.com

*Counsel for Plaintiffs and the Putative Classes*

**L.R. 11-6.2 Certificate of Compliance**

The undersigned counsel certifies that this memorandum contains 7340 words and is under 25 pages. Therefore, it complies with the word limit of L.R. 11-6.1 at Section 6(c) of the Court's Standing Order

Dated: October 3, 2025

FREED KANNER LONDON & MILLEN LLC

By: */s/ Nicholas R. Lange*
NICHOLAS R. LANGE
Attorney for Plaintiffs