Matthew D. Pearson (SBN 294302)
Matthew.Pearson@wbd-us.com
Monique Matar (SBN 317145)
Monique.Matar@wbd-us.com
WOMBLE BOND DICKINSON (US) LLP
400 Spectrum Center Drive, Suite 1700
Irvine, California 92618
Telephone: (714) 557-3800
Facsimile: (714) 557-3347

Tomio B. Narita (SBN156576
Tomio.Narita@wbd-us.com
WOMBLE BOND DICKINSON (US) LLP
50 California St, Ste 2750,
San Francisco, CA 94111
Telephone: (415) 765-6274

*Attorneys for Defendant*
MEDALLIA, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

NEIL GETZ and JUSTIN BREWER, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

CVS HEALTH CORPORATION, CVS PHARMACY, INC., CRITEO CORP., and MEDALLIA, INC.

Defendants.

Case No.: 2:25-cv-04689-MWC-E

**REPLY IN SUPPORT OF DEFENDANT MEDALLIA, INC.'S MOTION TO DISMISS**

**DATE: OCTOBER 24, 2025**
**TIME: 1:30 P.M.**
**COURTROOM: 6A, 6TH FLOOR**

Complaint Served: July 9, 2025

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................ 1
II. PLAINTIFF HAS NOT ESTABLISHED ARTICLE III STANDING. ......... 3
III. PLAINTIFF FAILS TO STATE A CLAIM AGAINST MEDALLIA. ......... 9
a. Plaintiff's Negligence Claims Fail. ........................................ 9
b. There Has Been No "Serious Invasion" of Plaintiff's Privacy. .......... 10
c. Plaintiff Lacks Statutory Standing under CIPA. ........................ 11
d. Plaintiff's § 631 Claim Fails. ............................................ 12
IV. CONCLUSION ........................................................ 12

# TABLE OF AUTHORITIES


**Cases** **Page(s)**

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ........ 5

*Doe v. Regents of Univ. of California*,
2023 WL 3316766 (N.D. Cal. May 8, 2023) ........ 10

*Frasco v. Flo Health, Inc.*,
349 F.R.D. 557 (N.D. Cal. 2025) ........ 4, 5

*Gabrielli v. Haleon US Inc.*,
No. 25-CV-02555-WHO, 2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) ........ 5

*Gabrielli v. Motorola Mobility LLC*,
No. 24-CV-09533-JST, 2025 WL 1939957 (N.D. Cal. July 14, 2025) ........ 5

*Hill v. Nat'l Collegiate Athletic Assn.*,
7 Cal. 4th 1 (1994) ........ 11

*In re Svenhard's Swedish Bakery*,
No. 23-60045, 2025 WL 2627837 (9th Cir. Sept. 12, 2025) ........ 11

*Krefting v. Kaye-Smith Enters. Inc.*,
No. 2:23-CV-220, 2023 WL 4846850 (W.D. Wash. July 28, 2023) ........ 5, 6

*Leonard v. McMenamins, Inc.*,
No. 2:22-CV-00094-BJR, 2022 WL 4017674 (W.D. Wash. Sept. 2, 2022) ........ 5, 6

*Peredia v. HR Mobile Servs., Inc.*,
25 Cal. App. 5th 680 (2018) ........ 9

*Popa v. Microsoft Corp.*,
No. 24-14, 2025 WL 2448824 (9th Cir. Aug. 26, 2025) ........ 1, 3, 4

*Rodriguez v. Autotrader.com, Inc.*,
2025 WL 1085787 (C.D. Cal. Apr. 4, 2025) ........ 6

*Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty.*,
343 F.3d 1036 (9th Cir. 2003) ........ 8

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 1, 3

*User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) .......... 4, 5

*Valenzuela v. Nationwide Mut. Ins. Co.*,
686 F. Supp. 3d 969 (C.D. Cal. 2023) .......... 10

**Statutes**

Cal. Penal Code § 631(a) .......... 12

Cal. Penal Code § 637.2 .......... 11

# I. INTRODUCTION

Plaintiff Justin Brewer's ("Plaintiff") Opposition proves Defendant Medallia, Inc.'s ("Medallia") argument. Plaintiff has not established that Medallia's alleged violation of the California Invasion of Privacy Act ("CIPA") ***caused*** him to suffer a concrete injury; he has, instead, claimed that Medallia's alleged violation of CIPA ***is*** his concrete injury. The Supreme Court's holdings in both *Spokeo* and *TransUnion* make clear, however, that an alleged violation of a statute, in and of itself, does not result in an injury-in-fact.

For example, Plaintiff argues that, by collecting information about him from www.cvs.com (the "Site") without his consent, Medallia necessarily invaded his privacy and that alleged invasion necessarily satisfies Article III's injury-in-fact requirement. [Dkt. No. 66, 8:1-4 ("Medallia's unauthorized interception of Plaintiff's sensitive communications relating to his medical condition and sexual health constitutes concrete harm giving rise to standing regardless of any subsequent use or disclosures of Plaintiff's misappropriated data.").] No so. As the Ninth Circuit recently held in *Popa v. Microsoft Corp.*, No. 24-14, 2025 WL 2448824 (9th Cir. Aug. 26, 2025), Plaintiff's "broad theory that the common law protected privacy rights—pitched at a high level of generality—does not align with the analysis adopted in *TransUnion*." *Id.* at *6. Plaintiff must "explain how" Medallia's collection of his information from the Site "caused h[im] to experience any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law." *Id.* The First Amended Complaint ("FAC") is devoid of such explanation as it relates to Medallia.

In the FAC, Plaintiff does not allege any instance when Medallia used the information to his detriment; it didn't. Plaintiff does not allege that Medallia sold or disclosed his information to third parties; it didn't. And Plaintiff does not allege that Medallia used his information for any purpose other than CVS's. In fact, Plaintiff repeatedly admits that, to the extent his information was used, it was used only on

CVS's behalf—the company Plaintiff voluntarily gave his information to in the first place. [Dkt. No. 66, 6:26-7:1 ("Plaintiff's sensitive communications, which [Medallia] collected and processed from his activity ***on the Website*** as an anonymous guest, was used for advertising ***on the Website***, such as the ads Plaintiff later saw ***on the Website*** concerning his sensitive searches, page views, and purchases." (emphasis added).]

Plaintiff's repeated references to Adobe in both his Opposition and his counsel's declaration do not change this fact. Claiming that Medallia, itself, creates a "unique customer profile ***similar to Adobe's Identity Graph***," [*id.* at 1:9-13, 3:3-7, 5:27-6:3, 12:24-27, 21:9-12 (emphasis added)], does not give rise to a plausible inference that Medallia ***shared*** information with Adobe. Neither does a ***CVS*** job posting that references "Medallia's implementation partners" without mentioning Adobe or explaining who these "implementation partners" are or what they do. [Dkt. No. 67, Ex. 4 (including as a job duty "[l]ead[ing] the migration of surveys, data, and processes from Qualtrics to Medallia, collaborating closely with Medallia implementation partners, internal technical teams, and survey product owners").]

Put simply, Plaintiff alleges that his privacy was invaded because instead of collecting and housing data from the website itself, CVS contracted to have Medallia do so. That is not an injurious invasion of privacy; it is the way most companies do business in an online world.

All of Plaintiff's other claims fail for the same reason. His two CIPA claims fail because Plaintiff cannot establish that he has been "injured by a violation" of CIPA and, therefore, lacks statutory standing to sue under CIPA. Both of his two invasion-of-privacy claims fail because he cannot show an invasion of privacy at all, let alone one "sufficiently serious" to assert a stand-alone invasion of privacy claim. And Plaintiff's negligence claims must be dismissed because he has failed to allege a breach of a duty by Medallia or any injuries resulting therefrom.

As Medallia stated in its Motion to Dismiss, Medallia was merely the means through which CVS collected and processed information that had been voluntarily provided to CVS by Site users, like Plaintiff. It did not use the information for its own or any non-CVS entities' purposes, and it did not disclose the information to any party other than CVS. Plaintiff has not pled facts to the contrary in the FAC, and his thinly veiled intimations in the Opposition fail to raise a plausible inference that Medallia misused his information or shared it with any non-CVS entity.

Plaintiff was no more injured by Medallia's collection and processing of his information than he would have been had CVS collected and processed his information on its own. In fact, the only difference between Medallia's and CVS's collection of Plaintiff's information is that Plaintiff claims that Medallia collected his information in violation of CIPA. But as the Supreme Court has held, "an injury in law is not an injury in fact." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021). Plaintiff's claims against Medallia must be dismissed.

## II. PLAINTIFF HAS NOT ESTABLISHED ARTICLE III STANDING.

Boiled down, the Article III standing dispute between Medallia and Plaintiff centers on one question: was Plaintiff injured because, acting as CVS's vendor, Medallia collected for CVS information about Plaintiff that Plaintiff had voluntarily provided to CVS? Contrary to Plaintiff's apparent position, the answer to that question has nothing to do with the manner in which Medallia collected the information or whether it violated CIPA. Plaintiff must "demonstrate more than just a statutory violation." *Popa*, 2025 WL 2448824, at *7.

Plaintiff attempts to demonstrate "more" by claiming that "Medallia's interception of Plaintiff['s] PII, health data, and other highly sensitive information without [his] consent is an invasion of [his] privacy." [Dkt. No. 33, ¶ 72.] But, after the Ninth Circuit's decision in *Popa*, a claimed privacy invasion, unadorned by any facts showing harm resulting therefrom, does not satisfy Article III's requirements. *Popa*, 2025 WL 2448824, at *5; *see also In re Facebook, Inc., Consumer Priv. User*

*Profile Litig.,* 402 F. Supp. 3d 767, 786 (N.D. Cal. 2019) ("*In re Facebook*") ("[A] plaintiff cannot get into court by simply intoning that she suffered an intangible privacy injury."). Instead, to establish standing, Plaintiff must allege facts showing a harm that is both "particularized to…[his] circumstances and benchmarked to" one of four "discrete" invasion-of-privacy torts: "intrusion upon seclusion, appropriation of another person's name or likeness, publicity given to another person's private life, and publicity that places one in a false light." *Popa*, 2025 WL 2448824, at **5, 6.

Plaintiff's opposition spends much ink on how Medallia's alleged violation of CIPA ***is*** his concrete injury, in lieu of specifically showing, or at least attempting to show, how he suffered harm similar to the harm protected against by the four discrete invasion of privacy torts set forth above, and for good reason. Plaintiff has identified no harm resulting from Medallia's collection of his information. He therefore has no harm that he could liken to "the 'highly offensive' interferences or disclosures that were actionable at common law." *Popa*, 2025 WL 2448824, at *5.

In lieu of following the injury-in-fact analytical framework outlined in *Popa*, Plaintiff compares this case to *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557 (N.D. Cal. 2025), hoping that the *Frasco* court's statement that "the privacy injury occurs at the point of interception without consent" eliminates the need for him to allege anything beyond Medallia's collection of his information in order to show injury-in-fact. [Dkt. No. 66, pp. 7-8.][1] Plaintiff misconstrues *Frasco's* holding.

*Frasco* does not stand for the proposition that a plaintiff whose information is intercepted suffers an injury-in-fact based on the interception alone. Instead, it stands for the proposition that if a plaintiff loses control over his information as a result of an interception, that loss of control can cause an injury-in-fact. *Frasco*, 349 F.R.D.

[1] Plaintiff, himself, does not even believe that the mere interception of a communication is an invasion of privacy because, if he did, he would not have alleged that Medallia was under "a duty to maintain the privacy of Plaintiffs' and Class Members' sensitive and protected medical information when working with CVS to intercept their communications." [Dkt. No. 33, ¶ 208.] Under Plaintiff's theory, the interception alone constituted the invasion of privacy.

at 580 (stating that "the loss of control over one's personal information is the 'concrete' harm"). That the loss of control in *Frasco* coincided with the interception merely resulted from the fact that the "[e]vidence show[ed]" that the information intercepted by "Google and Meta…was used by both defendants to enhance their machine learning technologies." *Id.* at 573.

The cases Plaintiff cites in his Opposition are all consistent with this analysis. For example, in both *Gabrielli v. Haleon US Inc.,* No. 25-CV-02555-WHO, 2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) and *Gabrielli v. Motorola Mobility LLC,* No. 24-CV-09533-JST, 2025 WL 1939957, at *16 (N.D. Cal. July 14, 2025), the courts found that because the third parties intercepting the information used the information for their own purposes, the plaintiff lost control over the information the minute it was intercepted. *See Haleon US Inc.,* 2025 WL 2494368 (alleged "loss of control" where the plaintiff alleged that the third-party interceptors "'analyze and aggregate this user data ... for their own purposes and financial gain,' and 'share user data and/or user profiles to unknown parties to further their financial gain'"); *Motorola Mobility LLC*, 2025 WL 1939957, at *16 (third-party interceptors allegedly used the information "for their own purposes and financial gain" and shared the information "to unknown third parties to further their financial gain," [Dkt. No. 1, ¶ 4]).

Neither *Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023), *In re Facebook*, *Krefting v. Kaye-Smith Enters. Inc.*, No. 2:23-CV-220, 2023 WL 4846850 (W.D. Wash. July 28, 2023), nor *Leonard v. McMenamins, Inc*., No. 2:22-CV-00094-BJR, 2022 WL 4017674 (W.D. Wash. Sept. 2, 2022) reaches a different conclusion. In *Brown*, the plaintiffs alleged Google "s[old] the [collected] information" to others. 685 F. Supp. 3d at 920. In *In re Facebook*, the plaintiffs alleged "that Facebook disseminated sensitive user information…to tens of thousands of app developers and business partners." 402 F. Supp. 3d at 787. And, in both *Krefting* and *Leonard*, the courts found, albeit under a very different set of facts, that the plaintiff had Article

III standing based on the plaintiffs' loss of control over their information ***following a data breach***. *Krefting*, 2023 WL 4846850, *3; *Leonard,* 2022 WL 4017674, *5. [2]

What these cases demonstrate is that injury-in-fact is not established by the way in which the information is obtained or by the party in whose possession the information rests. If any injury is established, it comes from the loss of control over the information the individual experiences once it is in the interceptor's possession.

Here, Plaintiff has not and cannot allege any loss of control over his information as a result of Medallia's interception because Medallia was contractually prohibited from using the information for any purpose other than CVS's. That is to say, Plaintiff had no less control over his information when it was in Medallia's possession than he would have had it remained with CVS only.

In his Opposition, Plaintiff attempts to argue either that Medallia's use of the information resulted in a sufficient loss of control to injure him or, based on assumptions drawn from information not in the FAC, that Medallia ***may*** have used the information, in a manner that injured him. Neither argument holds water.

First, the question is not whether Medallia used the information it collected; it is whether Medallia used the information it collected for any purpose other than CVS's. For example, no one would claim an invasion of privacy arising from a loss of control over information if CVS provided consumer information (i.e., name, address, and product purchased) to a third party with whom CVS contracted to package and ship items purchased on the Site and who, like Medallia, was contractually obligated to protect and contractually prevented from sharing the information. The third party clearly would have to *use* the information to package and ship the items, but so long as that use was limited to CVS's purposes, the CVS customers who made the purchases would have suffered no injury.

[2] Plaintiff also cites to *Rodriguez v. Autotrader.com, Inc*., 2025 WL 1085787, at *1 (C.D. Cal. Apr. 4, 2025), but in *Rodriguez*, the Court actually found that the Plaintiff lacked Article III standing and dismissed the case.

Second, Plaintiff never alleges that Medallia used the information it collected from the Site for any purpose other than CVS's. In fact, all of his allegations suggest the exact opposite. Plaintiff alleges that "Medallia… focuses on collecting, compiling, and processing ***its clients' customer and employee data***" so that "***Medallia's clients***" can better understand their "customer behaviors and intentions." [Dkt. No. 33, ¶ 6 (emphasis added).] He further claims that "Medallia offers ***data collection and processing services***" to its clients, including CVS, and that "Medallia's collection of Website users' private information was necessary to target ***CVS' specific users***." [*Id.* at ¶ 70 (emphasis added).] Finally, he alleges that "[t]he web images and traffic depicted in Figures 14 and 15," which he claims show information being collected by Medallia, "reflect the activities of Website users proceeding as guests" ***on the Site***. [*Id.* at ¶ 75.]

Taken together, these allegations mean that Medallia collects for its clients, like CVS, data that the users of the clients' website voluntarily provided to its clients so those clients can target specific users of the client's website. Had CVS had the desire and/or technical capabilities to do what Plaintiff claims Medallia did on the Site, it could have, and no one would be claiming an invasion of privacy. That it was Medallia who was doing it on behalf of CVS does not convert otherwise routine e-commerce activities into privacy invasions.

Third, Plaintiff's focus on the alleged "sensitivity" of the information at issue is misplaced. For purposes of this motion, Medallia has not questioned the alleged "sensitivity" of the information because, for purposes of Plaintiff's claims against Medallia, the "sensitivity" of the information is immaterial. Where, as here, the third party collecting the information (Medallia) only uses it for the intended recipient's (CVS) purpose and does not disclose it to any other party, there can be no invasion of privacy regardless of whether the information is as mundane as grocery-store website browsing or as sensitive as detailed medical information. For all intents and purposes, Medallia is merely an extension of CVS, and, certainly, Plaintiff would not

claim that CVS violated his privacy by collecting information he voluntarily provided to it.

Finally, Plaintiff attempts to create injury where none exists by suggesting that Medallia may have actually used the information it collected from the Site for its own purpose. [Dkt. No. 66, pp. 13]. That suggestion, as discussed, has no basis in the allegations in the FAC and is pure speculation. But, more importantly, it seeks to improperly shift the burden on Medallia to prove Plaintiff has not been injured. When a defendant, like Medallia, mounts a factual attack on jurisdiction "by presenting affidavits or other evidence properly brought before the court, the…[plaintiff] must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty*., 343 F.3d 1036, 1040 n. 2 (9th Cir. 2003).

Here, Medallia filed the Declaration of David Garrod, which explained both that Medallia is contractually prevented from disclosing or using for its own purposes any of the information collected on the Site and that Medallia adheres to those contractual limitations. [*See* Dkt. No. 56-2, ¶¶ 4-5, 7.] The burden then shifted to Plaintiff to offer the "evidence necessary" to show that his information was used or sold by Medallia. He failed to do so. Instead, he argued that Medallia "potentially" shared his information. [Dkt. 66, 5:20-22.] And he offered his counsel's declaration that purports to quote a discussion between employees of Medallia and CVS on how Medallia ***helps CVS*** leverage the data Medallia collects ***from the Site***. Specifically, Plaintiff quotes a CVS employee stating that CVS "[is] getting the data to ***our*** store managers, we're getting them to or contact center reps, ***they're*** learning, ***they're*** getting better in real time." [Dkt. No. 67, ¶ 3 (emphasis added).] This does not rebut anything Medallia has said and actually supports it. Medallia collects information ***on behalf of CVS*** so that ***CVS*** can use that information to ***its*** advantage.

In truth, the only allegation in the FAC that relates to any alleged misconduct by Medallia is that, in collecting information from the Site, it violated CIPA. But,

again, Article III standing does not turn on an alleged violation of law; it turns on the injury resulting therefrom. And just as no person could be injured by the disclosure of information to a shipping contactor, Plaintiff was not and could not have been injured by Medallia's collection of his information. Plaintiff has failed to allege injury-in-fact. His claims against Medallia must be dismissed.

## III. PLAINTIFF FAILS TO STATE A CLAIM AGAINST MEDALLIA.

### a. Plaintiff's Negligence Claims Fail.

There can be no dispute that, in order to state a negligence claim under California law, the plaintiff must allege a cognizable injury resulting from the defendant's breach of a duty it owed to the plaintiff. *Peredia v. HR Mobile Servs., Inc.*, 25 Cal. App. 5th 680, 687 (2018) ("The elements of any negligence cause of action are duty, breach of duty, proximate cause, and damages.").

Plaintiff claims that Medallia had "a duty to safeguard and not disclose or intercept Plaintiffs' and Class Members' sensitive and protected medical information and individually identifiable information as described above without Plaintiffs' knowledge or consent." [Dkt. No. 66, ¶ 206]. He also alleges that Medallia had a duty to "maintain the privacy of Plaintiffs' and Class Members' sensitive and protected medical information when working with CVS to intercept their communications." [*Id.* at ¶ 208.]

Even assuming that Medallia was under any of these supposed duties, Plaintiff's negligence claims would still fail because he either does not allege that Medallia breached the duty or that, if it did, Plaintiff was injured by the breach. For example, even if Medallia was, as Plaintiff claims, under a duty not to intercept his information and even if Medallia violated that duty, what injury has Plaintiff suffered? As explained in detail above, none.[3]

[3] In the Opposition, Plaintiff cites to *Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 980 (C.D. Cal. 2023), for the proposition that "[w]hether the third party's use was purely for [intended recipient's] benefit, rather than for its own benefit, is immaterial under" § 631." [Dkt. No. 66, 18:8-11.] But, in citing to this case, Plaintiff fails to appreciate the difference between the "party" exception to

As to Medallia's alleged duty to "maintain the privacy of Plaintiffs' and Class Members' sensitive and protected medical information," Plaintiff has alleged nothing to suggest that Medallia breached this duty. He does not allege any facts showing that Medallia used the information for its own purposes or that Medallia disclosed the information to anyone but CVS—its intended recipient.

Plaintiff has failed to allege the requisite elements of this negligence claims against Medallia. Those claims must be dismissed.

**b. <u>There Has Been No "Serious Invasion" of Plaintiff's Privacy.</u>**

Plaintiff admits that, in order to state a stand-alone claim for invasion of privacy, he must allege facts to demonstrate that the invasion was "highly offensive." [Dkt. No. 66, 15:1-3.] Conveniently, though, in discussing the offensiveness of the alleged invasion here, he focuses exclusively on the type of information at issue and not what was done with it. For example, Plaintiff argues that "[t]here can be no serious dispute that individuals interacting with a pharmacy to search for and purchase, inter alia, healthcare products relating to their serious medical conditions and sexual health enjoy an objectively reasonable expectation of privacy in such exchanges." [Dkt. No. 66, 16:3-6.] And as to that limited point, Plaintiff is correct; courts have held that "'medical information is understood to be among the most sensitive information that could be collected about a person.'" [*Id.* at 16:17-20 (*quoting Doe v. Regents of Univ. of California*, 2023 WL 3316766, at *6 (N.D. Cal. May 8, 2023)).]

But while private information is a necessary element of an invasion-of-privacy claim, it is not the only element. Plaintiff must also allege facts to show that the "defendant's ***conduct***" would be deemed "highly offensive to a reasonable person."

---

CIPA and lack of damages arising from an alleged CIPA violation. In *Valenzuela*, the defendant was arguing that there was no violation of CIPA because the third party was a party to the conversation. Here, Medallia is arguing that Plaintiff has not been injured by an alleged violation of CIPA because the information was only used for CVS's purposes and not disclosed to any party but CVS. The defendant in *Valenzuela* did not challenge the Plaintiff's standing.

*Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 26 (1994). Plaintiff has alleged nothing to suggest that a reasonable person, knowing that Medallia was collecting the information on behalf of CVS, was doing so only for CVS's benefit, and was not disclosing it to anyone but CVS, would find Medallia's collection of the information "highly offensive." As noted above, Medallia's conduct was no more "offensive" than if CVS had outsourced its packaging and shipping duties to a third party—a commonplace activity in modern-day business.

**c. Plaintiff Lacks Statutory Standing under CIPA.**

Plaintiff misunderstands Medallia's CIPA statutory-standing argument. Plaintiff assumes that Medallia is asserting that Plaintiff must suffer "pecuniary harm" to bring suit under California Penal Code § 637.2. [Dkt. No. 66, 15-16.] That is not what Medallia is arguing. Instead, what Medallia is arguing is that by deliberately including in CIPA's private-right-of-action provision—California Penal Code § 637.2—an "injury" requirement, the Legislature clearly intended to impose on plaintiffs an injury requirement above and beyond a mere violation of CIPA. To hold otherwise would render the phrase "injured by a violation" in California Penal Code § 637.2 superfluous, which this Court cannot do. *In re Svenhard's Swedish Bakery*, No. 23-60045, 2025 WL 2627837, at *4 (9th Cir. Sept. 12, 2025) (courts must "give effect to every word of a statute wherever possible").

Shed of Plaintiff's misinterpretations, the question reverts to: did Plaintiff allege in the FAC any harm resulting from Medallia's alleged interception of his communications with CVS? The answer remains no. Even beyond the FAC, having had months between filing the FAC and opposing Medallia's Motion, the most Plaintiff could find to suggest that Medallia shared his information is a ***CVS*** job post that never once mentions Adobe or any third party with whom Medallia allegedly shares information. Plaintiff lacks statutory standing to sue under CIPA, and his CIPA claims against Medallia must be dismissed.

///

**d. <u>Plaintiff's § 631 Claim Fails.</u>**

Again, Plaintiff misapprehends the arguments Medallia made in its motion. Plaintiff argues at length in his Opposition that by focusing on the "in transit" requirement under § 631, Medallia improperly excludes the possibility that it violated § 631 by "intercepting" his communications "[while they are] being sent from, or received at any place within this state." [Dkt. No. 66, 19:11-16.] That is not what Medallia did.

Medallia argued that "Plaintiff must allege that Medallia "***read[] or learn[ed] the content of [his] communications*** [with CVS], 'while' the communication is 'in transit ... or is being sent from, or received' within California." [Dkt. No. 56-1, 17:17-19 (emphasis in original).] Under the plain language of § 631, and contrary to Plaintiff's arguments, it does not matter when Medallia ***intercepted*** the communication. What matters is when Medallia ***read or learned*** the contents of the communication intercepted. Unless Plaintiff alleges that Medallia, itself, "read[], or attempt[ed] to read, or to learn the contents or meaning of any…communication ***while*** the same is in transit…or is being sent from, or received at any place within this state," Cal. Penal Code § 631(a)(emphasis added), there is no violation. And there are no allegations in the FAC that even mention Medallia reading or learning the contents of Plaintiff's communications with CVS, let alone that it did so while those communications were being sent from Plaintiff's device, in transit to CVS, or being received by CVS. Plaintiff has failed to allege a violation of § 631. His claim against Medallia must be dismissed.

## IV. <u>CONCLUSION</u>

Defendant Medallia, Inc. respectfully requests that the Court grant this motion and either dismiss, without leave to amend, Plaintiff's claims for lack of injury-in-fact or dismiss them, with prejudice, for failure to state a claim.

///

///

DATED: October10, 2025

**WOMBLE BOND DICKINSON (US) LLP**

By: */s/Matthew D. Pearson*
Matthew D. Pearson
Tomio B. Narita
Monique Matar

Attorney for Defendant
MEDALLIA, INC.